117.    Neither Hassan nor any other Pfizer team member informed plaintiffs, the other patients who received treatment from Pfizer, or their guardians, that Pfizer was offering an experimental treatment.

118..    Further, no Pfizer representative offered or read any informed consent document to plaintiffs.

119.    Plaintiffs and their families were never informed that the treatment the children were to receive was experimental or that they had the option of receiving alternative treatment provided by MSF, which was available only a few steps from where Pfizer's treatment was being given.

120.    The children treated by Pfizer were taken alone, without their parents, to the IDH ward run by Pfizer. The windows on that ward were covered and a screen erected so that the parents and the guardians of the children being treated could not see what the Pfizer team was doing to their children. After treatment was completed, a Pfizer team member brought the child back to his or her parents and provided them with a card, which set forth a number corresponding to the patient's identification number in the Trovan experiment. No data indicating what treatment the child had received was provided to the plaintiffs.[7]

121.    Pfizer "treated" approximately 200 Nigerian children in its Kano Trovan Test. Five patients who were given Trovan died. Six patients in the control group, who were given inadequate doses of ceftriaxone, died.

---

[7]Many of these cards have been lost due to the passage of time, local custom (following a person's death in Nigeria, all of his or her belongings, including clothing and personal effects, are given away), or by giving the cards to other doctors at a later date when seeking treatment for the ill-effects of the Kano Trovan Test.

122.    After approximately two weeks of compiling data to be used in the United States, Pfizer's team left the IDH Hospital and Kano. Pfizer's employees never returned and did no follow-up evaluation of the participants in its experiment.

123.    As described above, Pfizer's conduct in carrying out the Kano Trovan Test constituted cruel, inhuman and degrading treatment of Plaintiffs and the other study enrollees, and violated the law of nations and treaties of the United States.

## C.    Pfizer's Deviation From its Own Protocol and Violation of International Law

### 1.    The Company's Deviation from the Protocol

124.    Pfizer's Kano Trovan Test protocol called for half of the patients to get Trovan. The other half were to receive an injection of ceftriaxone, an effective meningitis drug FDA-approved for children, which was manufactured by Hoffman-La Roche. According to its prescribing guidelines, ceftriaxone should be injected in a vein or muscle.

125.    However, during the Kano Trovan Test, Pfizer did not administer the ceftriaxone as recommended. The Company reduced the amount of ceftriaxone it dispensed to one third of the recommended dosage. After learning of Pfizer's decision to sharply deviate from the recommended dosage, Hoffman-La Roche's medical director stated that "a high dose is essential" and that "*clinical failures . . .and perhaps deaths of children could have resulted from the low dosing.*"

126.    Pfizer's protocol called for children enrolled in the experiment to have their blood tested on arrival and five days thereafter, and called for the children in the Kano Trovan Test receiving Trovan to be switched to ceftriaxone if such children did not respond well to the Trovan. However, during the actual experiment, Pfizer did not regularly analyze blood samples from patients.

- 45 -

Thus, Pfizer could not accurately determine which patients were not responding well to Trovan until such patients suffered visible, permanent injuries.

127.    Pfizer's protocol called for Pfizer to obtain signatures of witnesses attesting to the oral consent of the patients that chose to participate in the trial. Further, Pfizer researchers had crafted a consent form to be used to secure the consent of the parents of the children enrolled in its experiment. The form was never used. Pfizer now contends that the children were too young to sign the forms and their parents could not speak or read English.

128.    Pfizer's protocol called for patients arriving at the facility to be informed of their option to take part in the study, and to be given the option of choosing alternative treatment. Pfizer did not inform patients that it was conducting an experiment and their participation was optional or that alternative treatment was available on site from MSF.

129.    Pfizer's protocol called for patients to be informed that the Kano Trovan Test involved comparing two different treatments for meningitis, one of which was experimental. However, Pfizer did not inform patients that they would be given one of two treatments, one of which was experimental.

### 2.    Pfizer's Violation of International Law

130.    In violation of Principle 1 of the Nuremberg Code, the Declaration of Helsinki, article 7 of the ICCPR, and FDA regulations, Pfizer failed to obtain informed consent, in either Hausa or English, from patients or their guardians before enrolling the children in the Kano Trovan Test. In addition, Pfizer failed to explain to the children enrolled in the Kano Trovan Test and their parents and/or guardians the nature of the Kano Trovan Test, its purpose, and the risks, benefits, hazards, and inconvenience likely to be associated with the experiment, and failed to ensure that the

- 46 -

subjects of the test understood they were free to refuse to participate in the study. Medical personnel, including a physician who participated in the Kano Trovan test, have acknowledged that the patients enrolled in the Kano Trovan study did not understand that they were being enrolled in a medical experiment. A Kano laboratory technician who took part in the Kano Trovan Test has specifically stated that, "[t]he patients did not know if it was research or not. They just knew they were sick."

131.    Pfizer violated the Declaration of Helsinki, and FDA regulations, by failing to have an IRB review and approve its experimental protocol. Pfizer contends that the Company sought and received approval for the Kano Trovan Test from the Nigerian government and from an ethics committee at Kano Hospital where it intended to carry out the test. The letter Pfizer allegedly secured for this purpose from the Amino Kano Teaching Hospital was dated March 28, 1996.

132.    However, contrary to Pfizer's version of events, according to the Aminu Kano Teaching Hospital's medical director, Dr. Sadiq Wali, the March 28, 1996 letter was back-dated and, in fact, at the time its approval was supposedly granted, the Hospital had no ethics committee. According to published reports, the so-called "approval" letter was not created until years later. Further, Dr. Wali has stated that the stationery bearing his name and the letterhead of the ethics committee was not created until months after the "date" of the Pfizer letter.

133.    In fact, Dr. Abdulhamid Isa Dutse, a Nigerian physician whom Pfizer says was its principal investigator for the Test, has admitted that his office created the backdated ethics approval document that Pfizer used to respond to a 1997 FDA audit. Dr. Dutse contends that the letter reflected the informal approval of three Nigerian physicians who had reviewed Pfizer's test plans and had no objections to them. However, Dr. Idris Mohammed, one of the three Nigerian physicians

- 47 -

whom Dr. Dutse contends provided such approval, has publicly denied providing such approval, but rather states that he tried to stop the Kano Trovan Test.

134.    Pfizer violated Principle 1 of the Nuremberg Code, the Declaration of Helsinki, article 7 of the ICCPR, and FDA regulations by failing to inform plaintiffs of the possible effects upon health from participation in the experiment, particularly the risks of joint damage and liver damage which Pfizer knew to be associated with drugs in Trovan's class and the risk associated with inadequate doses of ceftriaxone.

135.    Pfizer violated Principle 4 of the Nuremberg Code, and the Declaration of Helsinki, by failing to provide testing to evaluate joint and liver damage in patients enrolled in the Kano Trovan Test, both before and after treatment. As described above, Pfizer was aware that Trovan had the potential to cause serious liver injury. Yet Pfizer failed to evaluate patients for liver damage prior to or after enrollment in the Kano Trovan Test. Also, because quinolone antibiotics are known to have the potential to cause joint problems and arthritis, researchers conducting studies involving these drugs have used joint specialists to search for damage. Specifically, Pfizer has required MRI examinations of joints and examinations by orthopedic specialists in trials of quinolone antibiotics in the United States. However, Pfizer did no such evaluation of the Nigerian children enrolled in its experiment. Although Pfizer's report concludes that Trovan did no harm to enrolled children's joints, Pfizer's own report states that children who were given Trovan showed signs of joint pain three times the rate of children who took the control drug. Further, a European Union report concluded that this three times higher rate for arthralgia cannot be explained by mere chance or disbalanced study groups. While a Pfizer spokeswoman has since stated that a Nigerian ethics committee decided that there was no need to warn Nigerian parents that young lab animals given

- 48 -

Trovan-class antibiotics had suffered joint damage, as discussed above, it is now evident that there was no such Nigerian ethics committee.

136.    Pfizer violated Principles 4, 5, 6 and 10 of the Nuremberg Code, and the Declaration of Helsinki, which, inter alia, prohibit the continuation of an experiment that will likely result in injury, and the Hippocratic oath, which directs physicians to "first, do no harm." During the Kano Trovan Test Pfizer did not change the drug or dosage given to children whose condition worsened and failed to administer sufficient ceftriaxone in safe and efficacious amounts to patients to combat their disease. For example, one child, referred to as No. 0069, whose strength evaporated and whose one eye froze in place a day after being administered 56 milligrams of Trovan, died on the third day after treatment began. Pfizer's records indicate "Action taken: Dosage continued unchanged, Outcome: Death."

137.    Pfizer violated, inter alia, Principles 4, 5, 6 and 10 of the Nuremberg Code, and the Declaration of Helsinki, by failing to provide alternative treatments to patients who did not respond to the drug administered, and by failing to provide all patients with the best proven diagnostic and therapeutic methods relevant to treating bacterial meningitis, including chloramphenicol, the drug recommended by the World Health Organization for treatment of epidemic bacterial meningitis.

138.    Pfizer violated Principles 7 and 8 of the Nuremberg Code and the Declaration of Helsinki by: (1) failing to design and conform the Kano Trovan Test to a clearly formulated experimental protocol in compliance with generally accepted scientific principles; (2) failing to secure guidance on such protocol from a specially appointed independent committee; (3) carrying out the Kano Trovan Test in an inadequate facility lacking proper sanitation, electricity, and medical

- 49 -

supplies; and (4) carrying out the experiment with improperly trained, inexperienced, and inadequate staff.

139.    Pfizer violated article 7 of the ICCPR, the Nuremberg Code and the Declaration of Helsinki by, inter alia, subjecting the children to cruel or inhuman treatment by: (1) administering painful medical treatments without first obtaining consent; (2) administering only a third of the recommended dosage of ceftriaxone to patients in the control group, enabling such patients' meningitis to continue unabated; (3) administering Trovan, a drug known to cause liver damage and joint problems, to unsuspecting children; and (4) failing to conduct adequate follow-up examinations to determine the injuries caused by the Kano Trovan Test.

140.    Pfizer violated Principle 3 of the Nuremberg Code and the Declaration of Helsinki by failing to have sufficient experience or knowledge related to the natural history of the strain of bacterial meningitis present in Kano prior to undertaking the Kano Trovan Test.  In fact, Pfizer prepared its study protocol in just six weeks after learning of the epidemic.

### 3.    Pfizer's Own Experts Corroborate Pfizer's Violations of International Law and Federal Regulations

141.    Pfizer's failure to comply with international law, FDA regulations and medical ethics has been publicly recognized by one of Pfizer's own pediatric infectious diseases specialist who was involved in the Kano Trovan Test.

142.    In a complaint filed in Federal Court in the District of Connecticut, on May 18, 1998,[8] Dr. Juan Walterspiel, a pediatric infectious disease specialist who was employed by Pfizer during the relevant time and oversaw the pediatric trials of Trovan, has asserted that the Kano Trovan Test

_____

[8] *Walterspiel v. Pfizer, Inc.*, No. 3:98CV917 (JCH) (D. Conn. filed May 18, 1998) (complaint).

- 50 -

violated international law, and that he had so informed Pfizer. In his complaint, Dr. Walterspiel stated that he informed Pfizer senior management, on numerous occasions before, during, and after the Kano Trovan Test, that the experiment was violative of international law, federal regulations and ethical standards, and that Pfizer's methods could result in life-threatening illnesses and deaths to the children enrolled.

143.    Specifically, Dr. Walterspiel complained that Pfizer failed to obtain proper informed consent, failed to provide adequate follow-up care, failed to conduct proper initial screening tests, failed to screen patients for kidney failure and hemolylitic anemia, utilized inexperienced staff unable to provide adequate patient care, and, in a conflict of interest, Pfizer physicians participated in the trial.

144.    Dr. Juan Walterspiel detailed his objections to the Kano Trovan Test in a letter to Pfizer's Chairman and President of its Research Facility, in which he stated:

- the [Kano-Trovan] study conducted on children in Nigeria (154 149) was in violation of ethical rules for the conduct of medical experiments in humans.

- The oral formulation had never been given to children before.

- Some of the children were in critical condition and most of them malnourished, which made oral absorption even more unpredictable. At least one died after a single oral dose; such a patient in critical condition should never have received an experimental antibiotic orally.

- The *N.meningitidis* serogroup A strain that caused the epidemic was not tested for its sensitivity before the first child was exposed to a **live or die experiment.**

- Quinolones are known to cause chrondrotoxicity [joint problems] in juvenile animals, especially in those with nutritional Mg deprivation (see our review in CID 1997; 25:i196-1204). Nevertheless, children exhibiting joint symptoms were not excluded from entry into the study, nor was trovafloxacin

discontinued when joint symptoms developed under the treatment with trovafloxacin. The potential additive effect of immuncomplex disease and quinolone induced cartilage lesions have never been examined.

- Almost one hundred children were exposed to an experimental agent within a very short period of time, extending the risk for unknown short or long term adverse events to an unacceptably large number of human beings, that predictably could not be followed.

- Inexperienced staff, *e.g.* coma score reversed, lack of experience in pediatric joint evaluation, blood drawing, placing iv lines, insufficient facilities and the vagaries for follow up, should have been obvious at the onset of the study, limiting any meaningful scientific data to be obtained.

 The 15% incidence of arthralgia in the trovafloxacin arm, versus 5% with ceftriaxone, now poses the dilemma that the drug indeed might have an arthropathic effect in children, or that these numbers are just the results of bad science and unreliable medical assessment.

- It is objectionable that Pfizer employees were allowed to participate in a medical study themselves. The potential for conflict of interest is obvious and a physician-patient relationship forced into existence under such circumstances is in opposition to the Hippocratic tradition.

- Apart from omissions in the consent form (*e.g.* the oral formulation has never been tested in children before, and when one's child is randomized to receive ceftriaxone, she/he will experience considerabl[y] more pain, the forms were NOT signed by the translators/witnesses). This raises the question whether the physicians looked at the form to confirm consent before administering an experimental drug, or worse, it makes one wonder what parents were told for expediency's sake.

 I expect no less from Pfizer Inc. and its employees than to adhere to the ethical and scientific rules of medical research as clearly laid down in the Declaration of Helsinki.

Letter from Juan Walterspiel M.D. to William C. Steere, Jr., Chairman & CEO Pfizer, Inc. and Dr. George M. Milne, Jr., President, Central Research, Pfizer, Inc. (Dec. 18, 1997) (Ex. A to the *Walterspiel* Complaint) (emphasis added).

- 52 -

145.    As described by Dr. Walterspiel, Pfizer violated the Nuremberg Principles, article 7 of the ICCPR, and the Declaration of Helsinki, for the reasons set forth above.

146.    Not only did Pfizer fail to take appropriate action in response to the ethical and legal violations in the Kano Trovan study raised by Dr. Walterspiel, Pfizer fired Dr. Walterspiel in retaliation for his whistleblowing related to the Kano Trovan Test.

147.    Physicians who worked on site at the Kano Trovan Test have publicly agreed with Dr. Walterspiel's indictment of Pfizer's conduct.  For example, Dr. Amir Imam Yola, a Nigerian physician, characterized the Kano Trovan Test as "a bad thing."  However, Dr. Yola explained that he did not object to the study because the test seemed to have the backing of the Nigerian government and as a result, he "could not protest. The system you have in America and the system we have here, there is a wide gap. Freedom of speech is still not here [in Nigeria]."

148.    In addition, Dr. Abdulhamid Isa Dutse, Pfizer's principal investigator on the project, has voiced concern about Pfizer's behavior in Kano.  In an interview, he explained that Pfizer's conduct in the Kano Trovan Test "opened our eyes. . . . You are dealing with human beings, whether they are American children or they are Nigerian children.  They are entitled to the best."

### 4.    MSF's Criticism of Pfizer's Kano Trovan Test

149.    In addition to Pfizer's own employees, other medical professionals have publicly condemned Pfizer's conduct in Kano, including medical personnel associated with the Nobel Prize-winning MSF.  For example, Karen De Jonge, a Belgian nurse and the Kano field coordinator for MSF, has denounced Pfizer's decision to conduct an experiment during an epidemic, stating "[I]n an epidemic, where you have a very high number of cases who will die, you don't go and experiment. You are talking about human lives."  De Jonge also pointed out that Pfizer took over the best

- 53 -

maintained hospital wards at IDH, and stated that because of Pfizer's conduct, "[v]ery, very sick people were outside who could have had a bed inside." Further, according to De Jonge, Pfizer procured the most experienced doctors and nurses for its experiment, leaving the humanitarian relief organization with fewer resources.

150.    De Jonge was not alone in her criticism of Pfizer, nor was she the Company's harshest critic. Dr. Evariste Lodi, the MSF physician who headed the charity's humanitarian mission in Kano, has harshly characterized Pfizer's decision to fail to change treatment for patients not responding to the initial drug offered, stating, "[i]t could be considered murder." Further, Dr. Lodi stated, "[i]f I had the power, I would take away their medical licenses."

151.    Dr. Lodi's comments were echoed by another MSF official, Marc Gastellu-Etchegorry,  who characterized Pfizer's failure to offer other alternate treatment to non-responsive patients as a "mistake." He continued, "When the patient is declining step-by-step, you try to give them a fighting chance. It can look like murder if you don't."

## VI.    PLAINTIFFS SUFFERED INJURIES PROXIMATELY CAUSED BY PFIZER'S KANO TROVAN TEST

152.    As described above, Pfizer gave an unproven oral suspension or tablet formula of Trovan to critically-ill Nigerian children, despite the availability of alternative drugs that have been shown to be safe and effective to treat bacterial meningitis. Moreover, children in the control group were given dangerously inadequate doses of ceftriaxone, which could prevent the drug from working effectively and cause serious injury and death. Many of these children died or became blind, paralyzed, brain-damaged and/or deaf. Further, Pfizer did not alter the therapy provided to children

- 54 -

who did not respond to Trovan, despite the availability of alternative treatments, such as those being dispensed by MSF.

153.    As described more specifically below, the following children were each enrolled in the Kano Trovan Test and suffered injuries as a result.

154.    Lubabatu Abdullahi was an infant in or about April 1996 when she was brought by her parents to the IDH hospital to seek treatment for a high fever.  While waiting for treatment, Lubabatu Abdullahi was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH.  Lubabatu Abdullahi was separated from her parents and was enrolled by Pfizer in the Kano Trovan Test without her family's consent or knowledge.  Upon information and belief, Pfizer did not conduct sufficient testing on Lubabatu Abdullahi to accurately diagnose her with bacterial meningitis.  Pfizer did not provide Lubabatu Abdullahi or her parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment.  Lubabatu Abdullahi and her family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

155.    Neither Lubabatu Abdullahi nor her parents, including her mother Rabi Abdullahi, were informed that Pfizer was offering experimental treatment or consented to such treatment. Lubabatu Abdullahi died soon after her treatment.

156.    Abdullahi (Manufi) Salisu was an infant in or about April 1996 when he was brought by his parents to the IDH hospital to seek treatment for a high fever.  While waiting for treatment, Abdullahi was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH.  Abdullahi (Manufi) Salisu was separated from his parents and was enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge.  Upon information and belief, Pfizer

- 55 -

did not conduct sufficient testing on Abdullahi (Manufi) Salisu to accurately diagnose him with bacterial meningitis. Pfizer did not provide Abdullahi (Manufi) Salisu or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Abdullahi (Manufi) Salisu and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

157.    Neither Abdullahi (Manufi) Salisu nor his parents, including his father Salisu Abullahi, were informed that Pfizer was offering experimental treatment or consented to such treatment. Abdullahi (Manufi) Salisu became paralyzed after receiving the experimental Pfizer treatment. A year later, Abdullahi (Manufi) Salisu died from complications of his paralysis. Abdullahi (Manufi) Salisu received no follow up treatment from Pfizer.

158.    Firdausi Abdullahi was an infant in or about April 1996 when she was brought by her parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Firdausi Abdullahi was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Firdausi Abdullahi was separated from her parents and was enrolled by Pfizer in the Kano Trovan Test without her family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Firdausi Abdullahi to accurately diagnose her with bacterial meningitis. Pfizer did not provide Firdausi Abdullahi or her parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Firdausi Abdullahi and her family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

159.   Neither Firdausi Abdullahi nor her parents, including her father Abdullahi Alasan, were informed that Pfizer was offering experimental treatment or consented to such treatment. Firdausi Abdullahi died soon after her treatment.

160    Suleiman Ali was a 4 year old girl in or about April 1996 when she was taken by her parents to IDH for treatment of a fever. While waiting for treatment, Suleiman was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. She was separated from her parents and was enrolled by Pfizer in the Kano Trovan Test without her family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Suleiman Ali to accurately diagnose her with bacterial meningitis. Pfizer did not provide Suleiman Ali or her parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for her participation in the experiment. Suleiman Ali and her family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

161.   Neither Suleiman Ali nor her parents, including her father Ali Hashimu, were informed that Pfizer was offering experimental treatment or consented to such treatment. Shortly after the Kano Trovan team took Suleiman Ali from her parents and gave her treatment outside of their view, Suleiman Ali died.

162.   Abdullahi M. Inuwa was an infant in or about April 1996 when he was brought by his parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Abdullahi M. Inuwa was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Abdullahi M. Inuwa was separated from his parents and enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge. Upon information and belief, Pfizer did not

- 57 -

conduct sufficient testing on Abdullahi M. Inuwa to accurately diagnose him with bacterial meningitis. Pfizer did not provide Abdullahi M. Inuwa or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Abdullahi M. Inuwa and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

163.    Neither Abdullahi M. Inuwa nor his parents, including his father Muhammadu Inuwa, were informed that Pfizer was offering experimental treatment or consented to such treatment. Abdullahi M. Inuwa died soon after his treatment.

164.    Kabiru Isyaku was an infant in or about April 1996 when he was brought by his parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Kabiru Isyaku was chosen for the Kano Trovan Test by Pfizer from a line of people seeking care at IDH. Kabiru Isyaku was separated from her parents and enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Kabiru Isyaku to accurately diagnose him with bacterial meningitis. Pfizer did not provide Kabiru Isyaku or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Kabiru Isyaku and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

165.    Neither Kabiru Isyaku nor his parents, including his father Magaji Alh Ladan, were informed that Pfizer was offering experimental treatment or consented to such treatment. Kabiru Isyaku died shortly after receiving treatment from Pfizer.

- 58 -

166.    Buhari Suleiman was a 3 year old boy in or about April 1996 when he was taken by his parents for treatment of a fever. While waiting for treatment, Buhari was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Buhari Suleiman was separated from his parents and was enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Buhari Suleiman to accurately diagnose him with bacterial meningitis. Pfizer did not provide Suleiman or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for his participation in the experiment. Buhari Suleiman and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

167.    Neither Buhari Suleiman nor his parents, including his father Suleiman Umar, were informed that Pfizer was offering experimental treatment or consented to such treatment. Soon after his treatment by Pfizer, Suleiman lost consciousness. Buhari Suleiman died a day after arriving at IDH, after receiving a single treatment from Pfizer.

168.    Zainab Abdu was 11 years old in or about April 1996 when she was brought by her parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Zainab Abdu was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Zainab Abdu was separated from her parents and enrolled by Pfizer in the Kano Trovan Test without her family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Zainab to accurately diagnose her with bacterial meningitis. Pfizer did not provide Zainab or her parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent to participation in the experiment. Zainab and her

- 59 -

family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

169.    Neither Zainab nor her parents including her mother, Hajia Abdullahi, were informed that Pfizer was offering experimental treatment, nor did they consent to such treatment. Zainab became deaf and mute after her treatment. These conditions are permanent. Zainab received no follow-up treatment from the Pfizer team.

170.    Firdausi Abdullahi was an infant in or about April 1996 when she was brought to IDH after fainting and suffering from a high fever. While waiting for treatment, Firdausi Abdullahi was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Firdausi Abdullahi was separated from her parents and enrolled by Pfizer in the Kano Trovan Test without her family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Firdausi Abdullahi to accurately diagnose her with bacterial meningitis. Pfizer did not provide Firdausi Abdullahi or her parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the Kano Trovan Test. Plaintiff Firdausi Abdullahi and her family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

171.    Neither Firdausi Abdullahi nor her parents, including her father Abdullahi Madawaki, were informed that Pfizer was offering experimental treatment nor did they consent to such treatment. Shortly after being subjected to the Kano Trovan Test, Firdausi became a quadriplegic, losing all ability to move her limbs. She also suffered brain damage and became deaf and mute. These injuries are permanent. Firdausi Abdullahi received no follow-up treatment from the Pfizer

- 60 -

team. Instead, the Kano Trovan Test team gave her only a card with a number on it and referred her to another hospital for further treatment.

172.   Sani Abdullahi was 6 years old in or about April 1996 when he was taken by his parents to IDH hospital to seek treatment for a fever a few days after his sister Firdausi was admitted to that hospital. While waiting for treatment, Sani Abdullahi was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Sani Abdullahi was separated from his parents and enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Sani Abdullahi to accurately diagnose him with bacterial meningitis. Pfizer did not provide Sani Abdullahi or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Sani Abdullahi and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

173.   Neither Sani Abdullahi nor his parents, including his father Abdullahi Madawaki were informed that Pfizer was offering experimental treatment or consented to such treatment. Shortly after being subjected to the Kano Trovan Test, Sani Abdullahi lost the ability to use his right arm and leg. These injuries are permanent. Sani Abdullahi received no follow-up treatment from the Pfizer team.

174.   Abdullahi Ado was 4 years old in or about April 1996 when he was taken by his parents to IDH for treatment of a fever. While waiting for treatment, Abdullahi Ado was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Abdullahi Ado was separated from his parents and enrolled by Pfizer in the Kano Trovan Test without his family's

- 61 -

consent or knowledge.  Upon information and belief, Pfizer did not conduct sufficient testing on Abdullahi Ado to accurately diagnose him with bacterial meningitis.  Ado was treated for two weeks at IDH.  Pfizer did not provide Ado or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment.  Ado and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

175.    Neither Abdullahi Ado nor his parents, including his mother Aisha Ado, were informed that Pfizer was offering experimental treatment or consented to such treatment.  Shortly after being subjected to the Kano Trovan Test, while he was being treated at IDH, Abdullahi Ado lost his hearing, his sight and his ability to walk.  Although there has been some improvement in his condition, Abdullah Ado remains deaf.  Abdullahi Ado received no follow-up treatment from the Pfizer team.

176.    Abdulmajid Ali was 3 years old in or about April 1996 when he brought by his parents to the IDH hospital to seek treatment for a high fever.  While waiting for treatment, Abdulmajid was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH.  Abdulmajid was separated from his parents and enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge.  Abdulmajid was treated by both white and black medical personnel acting under the direction of Pfizer.  Upon information and belief, Pfizer did not conduct sufficient testing on Abdulmajid to accurately diagnose him with bacterial meningitis.  Pfizer did not provide Abdulmajid or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the

- 62 -

experiment. Abdulmajid and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

177. Neither Abdulmajid nor his parents, including his father Alh. Yusuf Ali, were informed that Pfizer was offering experimental treatment or consented to such treatment. Abdulmajid Ali received no follow-up treatment from the Pfizer team. While Abdulmajid apparently recovered subsequent to his participation in the Kano Trovan Test, he may nonetheless have sustained serious physical injuries therefrom as Trovan has been shown to cause arthritis and liver damage in children. However, the existence of such conditions cannot be diagnosed without expensive medical testing which is unavailable to Abdulmajid Ali. Further, the information as to whether Trovan or ceftriaxone, the study's control, was administered to Abdulmajid during the Kano Trovan Test is solely in Pfizer's possession.

178. Nura Muhammed Ali was 7 years old in or about April 1996, when he was brought by his parents to IDH hospital for treatment of a fever. While waiting for treatment, Nura was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. He was separated from his parents and was enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Nura Muhammed Ali to accurately diagnose him with bacterial meningitis. Pfizer did not provide Nura Muhammed Ali or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent to participation in the experiment. Nura Muhammed Ali and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

- 63 -

179.    Neither Nura Muhammed Ali nor his parents, including his father Muhammad Ali,
were informed that Pfizer was offering experimental treatment, nor did they consent to such
treatment. Nura Muhammed Ali received no follow-up treatment from the Pfizer team. While Nura
Muhammed Ali apparently recovered subsequent to his participation in the Kano Trovan Test, he may
nonetheless have sustained serious physical injuries therefrom as Trovan has been shown to cause
arthritis and liver damage in children. However, the existence of such conditions cannot be diagnosed
without expensive medical testing which is unavailable to Nura. Further, the information as to
whether Trovan or ceftriaxone, the study's control, was administered to Nura during the Kano Trovan
Test is solely in Pfizer's possession.

180.    Umar Badamasi was 4 years old  in or about April 1996 when he was brought by his
parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Umar
was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Umar
was separated from his parents and enrolled by Pfizer in the Kano Trovan Test without his family's
consent or knowledge. Umar was treated by white medical personnel acting under the direction of
Pfizer. Upon information and belief, Pfizer did not conduct sufficient testing on Umar to accurately
diagnose him with bacterial meningitis. Pfizer did not provide Umar or his parents with basic
information, either through a written consent form or orally, about the Kano Trovan Test, or seek their
informed consent for participation in the experiment. Umar and his family were not informed that
safe and effective alternative treatments were available at IDH, without charge, through MSF.

181.    Neither Umar nor his parents, including his father Malam Badamasi Zubairu, were
informed that Pfizer was offering experimental treatment or consented to such treatment. Umar
received no follow-up treatment from the Pfizer team. While Umar apparently recovered subsequent

- 64 -

to his participation in the Kano Trovan Test, he may nonetheless have sustained serious physical injuries therefrom as Trovan has been shown to cause arthritis and liver damage in children. However, the existence of such conditions cannot be diagnosed without expensive medical testing which is unavailable to Umar Badamasi. Further, the information as to whether Trovan or ceftriaxone, the study's control, was administered to Umar during the Kano Trovan Test is solely in Pfizer's possession.

182.    Muhammadu Fatahu Danladi was 8 years old in or about April 1996 when he was brought by his parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Muhammadu was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Muhammadu was separated from his parents and enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge. Muhammadu was treated by white medical personnel acting under the direction of Pfizer. Upon information and belief, Pfizer did not conduct sufficient testing on Muhammadu to accurately diagnose him with bacterial meningitis. Pfizer did not provide Muhammadu or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Muhammadu and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

183.    Neither Muhammadu nor his parents, including his father Alhaji Danladi Ibrahim, were informed that Pfizer was offering experimental treatment or consented to such treatment. Muhammadu received no follow-up treatment from the Pfizer team. While Muhammadu apparently recovered subsequent to his participation in the Kano Trovan Test, he may nonetheless have sustained serious physical injuries therefrom as Trovan has been shown to cause arthritis and liver damage in

- 65 -

children. However, the existence of such conditions cannot be diagnosed without expensive medical testing which is unavailable to Muhammadu. Further, the information as to whether Trovan or ceftriaxone, the study's control, was administered to Muhammadu during the Kano Trovan Test is solely in Pfizer's possession.

184.    Dalha Hamza was an infant in or about April 1996 when she was brought by her parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Dalha was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Dalha Hamza was separated from her parents and enrolled by Pfizer in the Kano Trovan Test without her family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Dalha Hamza to accurately diagnose her with bacterial meningitis. Pfizer did not provide Dalha Hamza or her parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Dalha Hamza and her family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

185.    Neither Dalha Hamza nor her parents, including her father Mala Hamza Gwammaja, were informed that Pfizer was offering experimental treatment or consented to such treatment. Dalha Hamza became deaf and mute after her treatment. These conditions are permanent. Dalha Hamza received no follow-up treatment from the Pfizer team.

186.    Tasiu Haruna was a 5 year old boy in or about April 1996 when he was taken by his parents to IDH hospital to obtain treatment for a fever and neck stiffness. While waiting for treatment, Tasiu was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Tasiu Haruna was separated from his parents and enrolled by Pfizer in the Kano Trovan Test

- 66 -

without her family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Tasiu Haruna to accurately diagnose him with bacterial meningitis. Pfizer did not provide Tasiu Haruna or his parents with basic information, in oral or written form, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Tasiu Haruna and her family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

187. Neither Tasiu Haruna nor his parents were informed that Pfizer was offering experimental treatment or consented to such treatment. Tasiu Haruna became deaf and mute after his treatment. These conditions are permanent. Tasiu Haruna received no follow-up care from the Pfizer team.

188. Muhyiddeen Hassan was an infant in or about April 1996 when he was brought by his parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Muhyiddeen was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Muhyiddeen Hassan was separated from his parents and enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Muhyiddeen Hassan to accurately diagnose him with bacterial meningitis. Pfizer did not provide Muhyiddeen Hassan or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Muhyiddeen Hassan and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

189. Neither Muhyiddeen Hassan nor his parents, including his father Tijjani Hassan, were informed that Pfizer was offering experimental treatment or consented to such treatment.

Muhyiddeen Hassan became deaf and mute after his treatment. These conditions are permanent. Muhyiddeen Hassan received no follow-up treatment from the Pfizer team.

190.   Kawu Adamu Ibrahim was an infant in or about April 1996 when he was brought by his parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Kawu was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Kawu Adamu Ibrahim was separated from his parents and enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Kawu Adamu Ibrahim to accurately diagnose him with bacterial meningitis. Pfizer did not provide Kawu Adamu Ibrahim or his parents with basic information, either through a written consent form or orally, about the Kano Trovan Test, or seek their informed consent for participation in the experiment. Kawu Adamu Ibrahim and his family were not informed that safe and effective alternative treatments were available at IDH, without charge, through MSF.

191.   Neither Kawu Adamu Ibrahim nor his parents, including his father Malam Abamus Ibrahim Adamu, were informed that Pfizer was offering experimental treatment or consented to such treatment. Kawu Adamu Ibrahim became deaf and mute after his treatment. These conditions are permanent. Kawu Adamu Ibrahim received no follow-up treatment from the Pfizer team.

192.   Sunusi Alh. Ibrahim was an infant in or about April 1996 when he was brought by his parents to the IDH hospital to seek treatment for a high fever. While waiting for treatment, Sunusi was chosen for the Kano Trovan Test by Pfizer from among the people seeking care at IDH. Sunusi Alh. Ibrahim was separated from his parents and enrolled by Pfizer in the Kano Trovan Test without his family's consent or knowledge. Upon information and belief, Pfizer did not conduct sufficient testing on Sunusi Alh. Ibrahim to accurately diagnose him with bacterial meningitis. Pfizer did not

- 68 -