ORIGINAL

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------x

AJUDU ISMAILA ADAMU,

                     Plaintiff,     :      No. 02 CV 2104 (GLG)

v.

PFIZER INC.,

                  Defendant.   :     October 24, 2003

------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO TRANSFER PROCEEDING UNDER 1404(a)

        Defendant Pfizer Inc. ("Pfizer") submits this memorandum in support of its motion pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Southern District of New York. Transfer should be granted in the "interests of justice" and for the "convenience of parties and witnesses" because a previously filed action, *Abdullahi v. Pfizer Inc.*, No. 01-8118 (S.D.N.Y.) ("*Abdullahi*"), is pending in the Southern District of New York. 28 U.S.C. § 1404(a). Combining the two actions would conserve the parties and the Court's resources, by requiring identical issues to be litigated only once instead of twice. As the Second Circuit has held, "there is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplic[ative] litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968). Hence, "the existence of a related action pending in the transferee court weighs heavily towards transfer." *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999).

30737405.WPD

Transfer is further warranted because the judge in *Abdullahi*, the Honorable William H. Pauley III, "has developed a familiarity with the relevant [issues]" common to both actions. *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992). It makes sense that both actions be before Judge Pauley so that he can "consider the appropriateness of consolidation," *Computer Assistance, Inc. v. Morris*, 564 F. Supp. 1054, 1058 (D. Conn. 1983), and to ensure that "duplic[ative] litigation" and "inconsistent results [are] avoided." *Wyndham Assocs.*, 398 F.2d at 619.

## FACTS

In August 2001, 52 Nigerian plaintiffs filed *Abdullahi* in the Southern District of New York, claiming to be (or to be the parents\guardians of) thirty of the approximately 200 Nigerians who participated in an antibiotic treatment program sponsored by Pfizer in 1996 at the Kano Infectious Disease Hospital in Kano, Nigeria during a severe outbreak of epidemic meningitis (the "Kano treatment program").

In November, 2002 – a year and three months after the filing of *Abdullahi* – this action was commenced by 76 Nigerian plaintiffs who claim to be (or to be the parents\guardians of) 55 of the approximately 200 Nigerians who participated in the same Kano treatment program in Nigeria.

Given that both actions concern the same Kano treatment program, it is not surprising that the factual allegations in the two actions are nearly identical. In both cases, plaintiffs contend that Pfizer led a six person team to the Kano Infectious Disease Hospital in Kano, Nigeria in 1996 during an epidemic of meningitis, cholera and measles. Complaint ¶ 11; *Abdullahi v. Pfizer Inc.*, No. 01-8118, 2002 WL 31082956, at *1 (S.D.N.Y. Sept. 17, 2002) (Herschlein Aff., Ex. B), *vacated in part by*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003) (Herschlein Aff., Ex. C). In both actions,

plaintiffs allege that Pfizer failed to obtain their informed consent (Complaint ¶ 12-13, *Abdullahi*, 2002 WL 31082956, at *1), and that they were intentionally "low-dosed" with an improperly administered control drug (Complaint ¶ 13, *Abdullahi*, 2002 WL 31082956, at *2).

Both cases allege claims pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, alleging that Pfizer's conduct violated international law, as set forth in the Nuremberg Code of 1947, the Declaration of Helsinki, the International Covenant on Civil and Political Rights, FDA regulations, as well as other international guidelines. Complaint ¶ 8; *Abdullahi*, 2002 WL 31082956, at * 3. In both actions, Pfizer has moved or will move for dismissal on the grounds of *forum non conveniens,* as well as for failure to state a claim under the ATS upon which relief may be granted.[1]

*Abdullahi* is far more advanced than this action. In *Abdullahi*, Judge Pauley is already intimately familiar with Pfizer's motion to dismiss on the grounds of *forum non conveniens* and for failure to state a claim under the ATS; he has reviewed lengthy memoranda of law; has heard oral argument; and has written a 34-page opinion dismissing the *Abdullahi* case on the grounds of *forum non conveniens*, while denying Pfizer's Rule 12(b)(6) motion to dismiss. *Abdullahi,* 2002 WL 31082956, at *11-12. Here, this case is in a preliminary stage; Pfizer has not yet moved for dismissal, and this Court has had little opportunity to familiarize itself with the facts and legal issues in the case.

---

[1]     Plaintiffs in this action additionally allege supplemental claims under Connecticut law. These claims also will be subject to a motion to dismiss for failure to state a claim because claims by Nigerian citizens who allege to have been injured in Nigeria as a result of medical treatment received in Nigeria are governed by Nigerian (and not Connecticut) law. *Northern Tankers Ltd. v. Backstrom*, 934 F. Supp. 33, 38 (D. Conn. 1996) (Goettel) (applying New York over Connecticut law where "[t]he place of the injury" was New York).

In *Abdullahi*, Judge Pauley recently has been asked by the Second Circuit to address two narrow issues on remand: (1) "what precipitated the dismissal in *Zango*" – a related action in Nigeria that is allegedly the predecessor action to this case – "and to evaluate whether that impacts the District Court's *forum non conveniens* analysis"; and (2) to address "whether the conduct alleged qualifies as a violation of 'customary international law' under the [ATS]" in light of the Second Circuit's recent decision in *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140 (2d Cir. 2003) (*see Abdullahi v. Pfizer Inc.*, 2003 WL 22317923, at *3 (2d Cir. Oct. 8, 2003).[2] If the Court does not transfer this action, both of these issues will also have to be decided in this case.

In bringing this transfer motion, Pfizer does not concede that this case could be conveniently tried in the United States. Nor does Pfizer waive its contention that Nigeria is a more appropriate forum to hear this controversy. However, only one federal court should decided that issue, and that court is the Southern District of New York.

## ARGUMENT

### I.    THE LEGAL STANDARD FOR TRANSFER UNDER 1404(A)

The Supreme Court has held that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer on an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). *Accord, Lescare Kitchens, Inc. v. Home Depot U.S.A., Inc.*, 1998 WL 720536, at *2 (D. Conn. Sept. 29, 1998) (Goettel). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice a district court may transfer any civil action to any other district or division where it might have been brought.

---

[2]    For the convenience of the Court, all opinions not published in the federal reporter but cited herein are attached hereto in alphabetical order as Exhibit 1.

28 U.S.C. §1404(a). Thus, under 1404(a), the moving party has the burden of showing: (1) that the transferor district is one in which the action "might have been brought" originally; and (2) the transfer of the action will enhance the "convenience of parties and witnesses" and is "in the interest of justice." *Id.*

As discussed below, this case "might have been brought" in the Southern District of New York, and the transfer of this action to the Southern District of New York will serve "the interest[s] of justice" and the "convenience of parties and witnesses."

## II.    THIS ACTION COULD HAVE ORIGINALLY BEEN BROUGHT IN THE S.D.N.Y.

This action originally could have been brought in the Southern District of New York. Pfizer is subject to personal jurisdiction in the Southern District of New York because its headquarters are located in Manhattan (Herschlein Aff. ¶ 5), and therefore it is "doing business" in that district and subject to jurisdiction under C.P.L.R. § 301. *Laufer v. Ostrow*, 55 N.Y.2d 305, 309-310, 434 N.E.2d 692, 694 (1982).

Venue also is proper in the Southern District of New York. 28 U.S. § 1391(b). A civil action may be brought in "a judicial district where any defendant resides." "[A] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S. § 1391(c).

Thus, because Pfizer is headquartered in Manhattan, jurisdiction and venue are proper in the Southern District of New York. That is all that is required to satisfy the "might have been brought" requirement under § 1404(a). *Hoffman v. Blaski*, 363 U.S. 335 (1960) (holding that if transferee court can exercise personal jurisdiction and venue over defendant, transfer is permissible under 1404(a)).

The fact that *Abdullahi* is subject to a *forum non conveniens* motion does not affect whether this action might have been brought originally in the Southern District of New York. This action – like *Abdullahi* – is likewise subject to *forum non conveniens* dismissal, but that does not mean that the action could not have been brought in this district. As the Supreme Court and Second Circuit have held, the doctrine of *forum non conveniens* presumes that "jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), quoted in *Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 497 (2d Cir. 2002). Accordingly, a dismissal for *forum non conveniens* is not a finding that there is no jurisdiction or venue in the district, but merely a finding that there is a more convenient forum for the resolution of the dispute.

## III. THE BALANCE OF CONVENIENCES AND THE INTERESTS OF JUSTICE FAVOR TRANSFER OF THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK

### A. The Related Action Pending in the Southern District of New York "Weighs Heavily In Favor Transfer"

Transfer to the Southern District of New York should be granted because the related *Abdullahi* action already is pending there.

The Second Circuit has held that "there is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplic[ative] litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968). Thus, where there were "actions already pending in [another district court]", the Second Circuit affirmed the transfer of several actions that involved "basic charges . . . common to all of [the] suits" to that court. *Id.* at 617.

The District of Connecticut has likewise held that where there is a related "action presently pending in [another district]," "the interests of judicial economy [are] served by having the two actions before the same court, which [can] then consider the appropriateness of consolidation." *Computer Assistance, Inc. v. Morris*, 564 F. Supp. 1054, 1058 (D. Conn. 1983). Indeed, district courts in the Second Circuit have overwhelmingly held that "the existence of a related action pending in the transferee court weighs heavily towards transfer." *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999); *River Road Int'l, L.P. v. Josephthal Lyton & Ross Inc.*, 871 F. Supp. 210 (S.D.N.Y. 1995). *Accord, Jacobs v. Happiness Exp., Inc.*, 1996 WL 537825, at *1 (E.D.N.Y. Sept. 16, 1996) ("transfer is particularly appropriate where there is a prior lawsuit pending in the transferee district involving the same facts, transactions, or occurrences"); *National Union Fire Ins. Co. of Pittsburgh v. Turtur*, 743 F. Supp. 260, 263 (S.D.N.Y. 1990) (granting transfer where there was an "overlap of the issues raised in [two cases]" and "all of the evidence [in one case would] necessarily duplicate the evidence in the [related] action" ); *Delaware Credit Corp. v. Aronoff*, 1992 WL 170896, at *6 (W.D.N.Y. July 10, 1992) (transfer granted where the "parties [were] nearly identical" and "the facts and issues in the [related] suits [were] closely tied with the facts and issues in the case at bar").[3]

---

[3]     *Accord, Everest Capital Ltd. v. Everest Funds Management, L.L.C.*, 178 F. Supp. 2d 459, 469 (S.D.N.Y. 2002); *Reliance Ins. Co. v. Bend'n Stretch, Inc.*, 935 F. Supp. 476, 478 (S.D.N.Y. 1996); *Equipos Nucleares v. Fairfield Energy Venture, L.P.*, 1989 WL 6628, at*2 (S.D.N.Y. Jan. 23, 1989); *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd.*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982); *Williams Gold Refining Co. v. Semi-Alloys Inc.*, 434 F. Supp. 453, 457 (W.D.N.Y. 1977); *Pesin v. Goldman, Sachs & Co.*, 397 F. Supp. 392, 393 (S.D.N.Y. 1975); *Faigenbaum Mach., Inc. v. Scott & Williams, Inc.*, 344 F. Supp. 1267, 1270-71 (S.D.N.Y. 1972); *Unico Indus. Corp. v. S.S. Andros City*, 323 F. Supp. 896, 897 (S.D.N.Y. 1971); *Duplan Corp. v. Deering Milliken, Inc.*, 324 F. Supp.
(continued...)

It makes sense that one judge should address both *Abdullahi* and this case. Indeed, the Second Circuit has recently directed Judge Pauley to consider the factual and legal issues that apply to *Abdullahi* and this case – including why many of the plaintiffs in this case chose to voluntarily dismiss their related case in Nigeria.  There is no reason why two courts should decide the motions to dismiss for *forum non conveniens* and for failure to state a claim. Nor – if both cases survive dismissal – should there be separate discovery and separate trials of these virtually identical actions.  "[T]ime and expense for both parties and witnesses" are saved, "inconsistent results are avoided," and "the interests of judicial economy [are] served by having the two actions before the same court, which [can] then consider the appropriateness of consolidation."  *Wyndham Assocs.*, 398 F.2d at 619; *Computer Assistance, Inc.*, 564 F. Supp. at 1058.  Accordingly, this Court should grant Pfizer's motion to transfer this case to the Southern District of New York.

**B.    Transfer Should Be Granted Because Judge Pauley Is Already Familiar With the Facts and Legal Issues In This Action**

Another factor favoring transfer is that Judge Pauley of the Southern District of New York is already familiar with the facts and legal issues of this case.  There is no reason why this Court should have to reinvent the wheel, and starting from scratch, immerse itself and delve into the complex factual and legal issues raised by these cases when Judge Pauley has already become familiar with these issues.

---

[3]    (...continued)
102, 103 (S.D.N.Y. 1970); *Wolf v. Ackerman*, 308 F. Supp. 1057, 1061 (S.D.N.Y. 1969); *Farrell v. Piedmont Aviation, Inc.*, 295 F. Supp. 228, 233 (S.D.N.Y. 1968); *Sweatheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 267 F. Supp. 938, 933-34 (S.D.N.Y. 1967); *Atlantic City Elec. Co. v. I-T-E Circuit Breaker Co.*, 247 F. Supp. 950, 956 (S.D.N.Y. 1965); *Winsor v. United Air Lines, Inc.*, 153 F. Supp. 244, 247 (E.D.N.Y. 1957).

The Second Circuit has held in affirming a transfer under §1404(a) that "[i]t would be a disservice to the [transferor court], as well as the litigants, to permit the litigation to remain" in the transferor court where the Judge in the transferee court has a "familiarity with the legal problems, attorneys, witnesses, and exhibits relating to the [case]." *Wyndham Assocs.*, 398 F.2d at 620. Likewise, "the preservation of judicial resources and the prevention of duplicative litigation mandate that [a] case be transferred" where the judge in the transferee court "has developed familiarity with the relevant [issues] in [the] suit." *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992) (Goettel). *Accord, Dahl v. HEM Pharms. Corp.*, 867 F. Supp. 194, 197 (S.D.N.Y. 1994) (transfer granted where "it would be a patent misuse of judicial resources to require another Federal District Court . . . to review and become familiar with the facts and circumstances already extensively excavated by another Federal District Court").

Judge Pauley is already intimately enmeshed in the facts and legal issues regarding these cases, having reviewed extensive briefing, heard oral argument, and issued a decision dismissing the case on *forum non conveniens* and denying dismissal for failure to state a claim. Moreover, the Second Circuit has asked Judge Pauley to address two narrow issues on remand: (1) the relevance of the *Zango* dismissal and (2) the relevance of the Second Circuit's decision in *Flores*. Absent transfer, this Court would have to duplicate this effort and address these issues as well. Manifestly, Judge Pauley is in the best position to address both cases and to ensure that inconsistent results are avoided. Accordingly, "[i]t would be a disservice to [this Court], as well as the litigants" in this case, "to permit the litigation to remain" in Connecticut. *Wyndham Assocs.*, 398 F.2d at 620.

**C.    The Interest Factors Favor Transfer to the Southern District of New York**

The related action pending in the Southern District of New York and Judge

Pauley's familiarity with the facts and legal issues in question in this suit each independently

weigh in favor of transfer to the S.D.N.Y.  Additionally, these two factors bear on several of the

other criteria identified by this Court as relevant to a transfer motion.  These factors include:

> (1) the location of the events giving rise to the suit; (2) the
> convenience of the parties; (3) the convenience of witnesses; (4)
> the relative ease of access of proof; (5) the availability of process
> for unwilling witnesses; (6) plaintiff's choice of forum; (7) a
> forum's familiarity with the governing law; (8) trial efficiency; and
> (9) the interest of justice.

*Lescare Kitchens, Inc.*, 1998 WL 720536, at *2.  *Accord, United States Surgical Corp. v.*

*Imagyn Med. Techs., Inc.*, 25 F. Supp. 2d 40 (D. Conn. 1998); *Lever Bros. Co. v. Proctor &*

*Gamble Co.*, 23 F. Supp. 2d 208, 210 (D. Conn. 1998); *Aetna Life & Cas. Co. v. Christie*, 1997

WL 280520 (D. Conn. May 21, 1997); *MedNet, MPC Corp. v. Spectera, Inc.*, 1997 WL 205764

(D. Conn. Mar. 11,1997); *Jones v. Trump*, 919 F. Supp. 583, 588-589 (D. Conn. 1996).

At the outset, it is worth noting that if Judge Pauley upholds his dismissal of

*Abdullahi* on the grounds of *forum non conveniens*, and this case is likewise dismissed on *forum*

*non conveniens* grounds, the above quoted transfer factors will be irrelevant.  But if both cases

remain in the United States, these factors would also favor transfer.

As discussed extensively above, the factors of trial efficiency and the interests of

justice plainly favor transfer of this action to the Southern District of New York.  This case is

virtually identical to *Abdullahi*, as plaintiffs in both actions allege they are part of the same Kano

treatment program and bring identical claims under international law.  Accordingly, "the interests

of judicial economy [are] served by having the two actions before the [Southern District of New

York], which [can] then consider the appropriateness of consolidation." *Computer Assistance, Inc.*, 564 F. Supp. at 1058. Moreover, with both actions before one judge, "pretrial discovery can be conducted more efficiently, duplic[ative] litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs.*, 398 F.2d at 619.

Furthermore, "because this district is not [plaintiffs'] home", their "choice of forum is **not** entitled to substantial deference." *Todd's Point Marine Ltd. v. Rojos*, 1996 WL 469667, at *2 (S.D.N.Y. Aug. 19, 1996) (emphasis added). *Accord, Aetna Life & Cas. Co. v. Christie,* 1997 WL 280520, at *2 (D. Conn. May 21, 1997) ("balance of factors weigh[ed] strongly in favor of transferring the case" where plaintiff was "a resident and citizen of California and ha[d] never been to Connecticut").

Additionally, the convenience of parties and witnesses favors transfer to the Southern District of New York. As Judge Pauley held in dismissing *Abdullahi* on the grounds of *forum non conveniens*, plaintiffs and the third party "witnesses who are crucial" to the litigation are "all located in Nigeria" beyond the compulsory process of both the Southern District of New York and the District of Connecticut. *Abdullahi*, 2002 WL 31082956, at *11. Consequently, transfer is a neutral factor with respect to Nigerian witnesses.

With respect to the Pfizer employees or former employees who reside in Connecticut, Pfizer is aware of no employee or former employee subject to process in the District of Connecticut who is not subject to process in the Southern District of New York.[4] Herschlein

---

[4]    One former Pfizer employee, Juan Walterspiel, who is identified in plaintiff's complaint (Complaint ¶ 6(f)) is now a resident of Atlanta, Georgia and thus beyond the subpoena power of both districts. Herschlein Aff. ¶ 9.

Aff. ¶ 8. *See* Fed. R. Civ. P. 45 (subpoena power of a federal district court reaches out of state residents who live or work up to 100 miles from the courthouse). Consequently, no crucial testimony would be lost if this action were tried in New York rather than Connecticut. Moreover, all witnesses – regardless of where they are located – have an overwhelming interest in having to testify only once at deposition and once at trial. No interest is served by requiring witnesses to testify at two depositions in two cases, and then requiring them to testify at two trials – one in New York and one in Waterbury. Accordingly, transfer to the Southern District of New York is convenient for both parties and witnesses because it will prevent "duplic[ative] litigation, thereby saving time and expense for both parties and witnesses." *Wyndham Assocs.*, 398 F.2d at 619.

Additionally, plaintiffs allege they have sustained personal injuries in Nigeria as a result of medical care they received in Nigeria. *See, e.g.*, Complaint ¶ 11-13. Thus, as Judge Pauley held in *Abdullahi*, "evidence of numerous elements essential to plaintiffs' claim, evidence which is also not within plaintiffs' control, will be much more accessible in the Nigerian forum." *Abdullahi,* 2002 WL 31082956, at *11. Because both the events giving rise to the suit occurred in Nigeria and evidence relating to plaintiffs claims are located in Nigeria, resolution of this matter is equally inconvenient in the District of Connecticut and the Southern District of New York – and these factors are therefore neutral with respect to transfer.

Finally, with respect to the forum's familiarity with the governing law, as already discussed, Judge Pauley has been briefed extensively on the international law which plaintiffs in both cases assert govern these claims, he has heard oral argument on these motions, and he has written an opinion on these same international law claims. Thus, he is already familiar with the governing law in this dispute. Although plaintiffs may contend that because they have tacked

Connecticut state law claims on to their international law claims, this jurisdiction is more

familiar with the governing law, this contention is not sufficient to defeat transfer for two

reasons. First, the governing law is only one of many factors to be considered and in this case

does not outweigh the overwhelming interest in avoiding duplicative actions pending in two

federal jurisdictions. Indeed, this Court has transferred cases despite the fact that plaintiffs

brought claims under Connecticut law. *Lescare Kitchen, Inc.*, 1998 WL 720536, at *2 (Goettel)

(granting transfer and rejecting plaintiff's contention that "a Connecticut court has greater

familiarity with and is the more appropriate forum to rule on [plaintiff's] CUTPA and common-

law tort claims"). Second, plaintiffs Connecticut law claims cannot survive Rule 12(b)(6)

dismissal, because claims by Nigerian citizens who allege to have been injured in Nigeria as a

result of medical treatment received in Nigeria are governed by Nigerian (and not Connecticut)

law. *Northern Tankers Ltd. v. Backstrom*, 934 F. Supp. 33, 38 (D. Conn. 1996) (Goettel)

(applying New York over Connecticut law where "[t]he place of the injury" was New York).[5]

*    *    *

In sum, when considering all of the above factors, transfer to the Southern District

of New York is favored because "[i]t would be a disservice to the [District of Connecticut], as

well as the litigants, to permit litigation to remain [in Connecticut]" where [Judge Pauley] has  a

"familiarity with the legal problems, attorneys, witnesses, and exhibits relating to the [case]."

*Wyndham Assocs.*, 398 F.2d at 620.

---

[5]    Transfer will not affect the substantive law applicable to this case, because "the transferee
district court [is] obligated to apply the state law that would have been applied if there
was no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

## **CONCLUSION**

For the foregoing reasons, Pfizer respectfully requests that its motion be granted, and the case ordered transferred to the Southern District of New York.

Dated:  October 24, 2003

By: _James D. Herschlein_

James D. Herschlein (ct24326)

Steven Glickstein (ct15725)
James Herschlein (ct24326)
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022-3598
(212) 836-8000

*Of Counsel:*

*Attorneys for Defendant Pfizer Inc.*

Edward Scofield
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
(203) 333-9441
Fax: (203) 333-1489
e-mail: escofield@znclaw.com

30737405.WPD                                                14

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31082956 (S.D.N.Y.))

▶

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Rabi ABDULLAHI, individually and as the natural
guardian and personal
representative of the estate of her daughter
Lubabatau Abdullahi, et al,
Plaintiffs,
v.
PFIZER, INC., Defendant.

No. 01 CIV. 8118.

Sept. 17, 2002.

Aliens who allegedly received an experimental antibiotic sued the company which administered the antibiotic, alleging violations of the law of nations as it was advised by the Nuremberg Code, the Declaration of Helsinki, the International Covenant on Civil and Political Rights (ICCPR), and customary international law. On the company's motions to dismiss for failure to state a claim, and to dismiss for forum non conveniens, the District Court, William H. Pauley III, J., held that: (1) company's alleged conduct was not a violation of "universal concern," for which a private actor could be held liable; (2) complaint adequately alleged that the company was a "state actor" to state a claim under the Alien Tort Claims Act; but (3) action would be conditionally dismissed for forum non conveniens in favor of Nigeria as a preferred forum.

Ordered accordingly.

[1] International Law ⚖⇒10.11

221k10.11

Company's administration of an experimental antibiotic to aliens, allegedly resulting in grave injuries, did not constitute a violation of "universal concern," within the meaning of the section of the Restatement (Third) of Foreign Relations Law specifying international law violations for which a private actor could be held liable. Restatement (Third) of Foreign Relations Law § 404.

[2] International Law ⚖⇒10.11
221k10.11

Aliens who allegedly received an experimental antibiotic resulting in grave injuries adequately alleged that the company which administered the antibiotic was a "state actor," due to the joint participation of the Nigerian government, and thus stated a claim for violation of the law of nations cognizable under the Alien Tort Claims Act; the complaint alleged that the Nigerian government, inter alia, provided a letter of request to the Food and Drug Administration (FDA) to authorize the export of the antibiotic, assigned Nigerian physicians to work with the company, and acted to silence Nigerian physicians critical of the company's tests. 28 U.S.C.A. § 1350.

[3] Federal Courts ⚖⇒45
170Bk45

Alien Tort Claims Act suit brought by Nigerians, who allegedly received an experimental antibiotic resulting in grave injuries, against the company which administered the antibiotic would be conditionally dismissed for forum non conveniens in favor of Nigeria as a preferred forum, despite claim that Nigerian courts were not sufficiently independent and impartial; the submissions did not reach beyond general characterizations or allege corruption of the Nigerian judicial process on the part of the company, and moreover, the Nigerians had no significant ties to the district, their claims were asserted under international law, and evidence of numerous elements of their claims would be more accessible in a Nigerian forum. 28 U.S.C.A. § 1350
.

Brad N. Friedman, Esq., Milberg Weiss Bershad Hynes & Lerach, New York, for Plaintiffs.

James D. Herschlein, Esq., Kaye Scholer LLP, New York, for Defendant.

MEMORANDUM AND ORDER

PAULEY, District J.

*1 In this putative class action, plaintiffs allege that they suffered grave injuries from an experimental antibiotic administered by defendant Pfizer Inc. ("Pfizer") without their informed consent. Plaintiffs allege violations of the law of nations as it is advised by the Nuremeberg Code, the Declaration of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31082956, *1 (S.D.N.Y.))

Helsinki, the International Covenant on Civil and Political Rights (the "ICCPR") and customary international law. Pfizer moves to dismiss the complaint for forum non conveniens and failure to state a claim.

For the following reasons, defendant's motion to dismiss the complaint for failure to state a claim is denied and defendant's motion to dismiss the complaint for forum non conveniens is granted.

Background

The facts below are taken from plaintiffs' eighty-three-page complaint and are adopted only for the purposes of this motion. Pfizer is the world's largest pharmaceutical company. (Compl.¶ 4.) Plaintiffs are Nigerian minors and their guardians, all of whom are residents of Nigeria. (Compl.¶¶ 16-50, 115.)

In the mid-1990's, Pfizer developed Trovaflozacin Mesylate, an antibiotic that is also known by its brand name as "Trovan." Pfizer projected that its total annual sales could exceed $1 billion a year. (Compl.¶ 96.) Beginning in 1996, Pfizer conducted the largest drug testing program ever undertaken by enrolling thousands of subjects in clinical tests. (Compl.¶ 97.) However, prior animal testing indicated that Trovan might cause significant side effects in children such as joint disease, abnormal cartilage growth (osteochondiosis, a disease resulting in bone deformation) and liver damage. (Compl.¶¶ 98-99.)

In 1996, epidemics of bacterial meningitis, measles and cholera besieged the impoverished Nigerian city of Kano. (Compl.¶¶ 2, 5, 101.) In April 1996, six weeks after it first learned of the epidemics, Pfizer dispatched a medical team to establish a treatment center at Kano's Infectious Disease Hospital ("IDH"). (Compl.¶¶ 2, 8, 101-02, 101-07, 109.)

In addition to Pfizer's team, humanitarian organizations such as Medecins Sans Frontieres ("MSF"), also known as Doctors Without Borders, traveled to Kano's IDH to treat the sick. (Compl.¶ 5.) The medical teams operated under squalid conditions in a hospital comprised of several single story cinder block buildings, some of which lacked electricity and running water. (Compl.¶ 110.) The beds were filled to capacity and patients seeking care overflowed on to the hospital's grounds.

(Compl.¶ 110.) Plaintiffs allege that while MSF and other organizations offered safe and effective treatments for bacterial meningitis, Pfizer embarked on a medical experiment involving the "new, untested and unproven" antibiotic "Trovan." (Compl.¶¶ 2-3, 6, 8, 95.)

To travel to Kano, Pfizer needed the U.S. Food and Drug Administration's ("FDA") authorization to export Trovan. On March 15, 1996, Pfizer informed the FDA of its intent to conduct the Kano study. (Compl.¶ 108.) Thereafter, Pfizer obtained a March 20th letter from the Nigerian government and a March 28th letter from IDH's ethics committee permitting Pfizer to export Trovan to Kano. (Compl.¶ 108.) Although both letters predate Pfizer's departure for Kano, plaintiffs allege that no IDH ethics committee existed as of March 28, 1996 and that the March 28th letter was back-dated in response to a 1997 FDA audit. (Compl.¶¶ 132-33.)

*2 Plaintiffs further contend that Pfizer's sole purpose for traveling to Kano was to expedite the FDA's approval of Trovan to treat pediatric victims. (Compl.¶ 7.) Prior to Kano, only one child had ever been treated with Trovan, and then only after all other antibiotics failed. No child had ever received it orally. (Compl.¶ 105-06.) According to plaintiffs, Nigerian officials allocated to Pfizer two of IDH's wards to conduct the testing. (Compl.¶ 113.) Pfizer selected, from lines of those awaiting treatment, children ranging in age from one to thirteen years who exhibited symptoms of neck stiffness, joint stiffness, and high fevers with headaches. (Compl.¶ 3, 115.) Pfizer divided them into two groups and treated half with Trovan. (Compl.¶ 3.) The other half was "purposefully 'low-dosed'" with ceftriaxone, an FDA-approved drug shown to be effective in treating meningitis. (Compl.¶ 125.) In order to enhance the comparative results of Trovan, Pfizer administered only one-third of ceftriaxone's recommended dosage. (Compl.¶ 3, 124-25.)

Meanwhile, MSF established their headquarters in tents beside the IDH due to space constraints. (Compl.¶ 111.) There, MSF admitted their sickest patients to hospital beds in the IDH and confined the less ill to floor mats in their tents. (Compl.¶ 112.) MSF treated pediatric meningitis patients with chloramphenicol, a drug recommended by the World Health Organization to treat bacterial meningitis in epidemic situations. (Compl.¶¶ 11, 111.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31082956, *2 (S.D.N.Y.))

Pfizer's protocol also called for the children selected to have their blood tested on arrival and five days later. (Compl.¶ 126.) If a child was not responding well to Trovan, Pfizer switched his or her treatment to ceftriaxone. (Compl.¶ 126.) Plaintiffs allege, however, that Pfizer neglected to analyze the patients' blood samples and therefore could not determine if a patient had a negative reaction until the manifestation of a visible and permanent injury. (Compl.¶ 126.) Plaintiffs further allege that low-dosing ceftriaxone resulted in injuries and deaths among the control group. (Compl.¶ 3.)

Although Pfizer's protocol called for its team to obtain consent from the parents of the children treated who were too young to sign, few parents could speak or read English. (Compl.¶ 127.) Plaintiffs claim that Pfizer failed to explain to the children's parents that the proposed treatment was experimental, that they could refuse it, or that other organizations offered more conventional treatments at the same site free of charge. (Compl.¶¶ 3, 117-20, 128-30, 154-55, 157.) After two weeks, Pfizer's team left Kano and never returned for follow-up evaluations. (Compl.¶ 122.) Plaintiffs allege that five children who received Trovan and six children whom Pfizer "low-dosed" died. (Compl.¶ 120.) Others suffered paralysis, deafness and blindness. (Compl.¶¶ 16- 50.)

On December 30, 1996, Pfizer applied with the FDA for approval to market Trovan in the United States for various uses including the treatment of pediatric infectious diseases. (Compl.¶ 216.) In June 1997, FDA inspectors discovered inconsistencies in the data resulting from Pfizer's Kano treatments. (Compl.¶ 217.) Thereafter, regulators informed Pfizer that they planned to deny its application to use the drug against epidemic meningitis and expressed several concerns including Pfizer's failure to conduct follow-up examinations. In response, Pfizer withdrew its application. (Compl.¶ 217.)

*3 On February 18, 1998, Pfizer launched Trovan after it received FDA authorization for treatment of a number of adult illnesses. (Compl.¶ 218.) Shortly thereafter, Pfizer and the FDA received reports regarding Trovan patients suffering liver damage. (Compl.¶ 219.)

In January 1999, the FDA recommended that Trovan be prescribed only for patients in nursing homes or hospitals suffering from life threatening conditions. (Compl.¶ 223.) That following June, the FDA issued a public health advisory on liver toxicity associated with oral and intravenous Trovan following post-marketing reports of acute liver failure strongly associated with the drug. (Compl.¶ 224.) The FDA announced that it received reports of more than one-hundred cases where Trovan patients exhibited clinically symptomatic liver toxicity and advised physicians to use Trovan only for patients who met certain criteria. (Compl.¶ 224-25.) In addition, Pfizer agreed to limit distribution of Trovan to hospitals and long term nursing facilities. (Compl.¶ 224.) Further, the European Union's Committee for Proprietary Medicinal Products suspended all sales of Trovan in part due to results from the Kano tests. (Compl.¶¶ 221-22.)

On August 29, 2001, plaintiffs brought this action pursuant to the Alien Tort Claims Act to recover damages for Pfizer's violations of international law, as set forth in the Nuremberg Code, the Declaration of Helsinki, article 7 of the ICCPR, FDA regulations and "other norms of international law." (Compl.¶ 15, 134.) Specifically, plaintiffs allege that Pfizer treated them with the knowledge that Trovan had the potential to cause serious joint and liver damage, failed to inform them of that risk or seek their informed consent, and neglected to evaluate the subjects subsequent to their treatment. (Compl.¶¶ 135-40.)

Discussion

I. *Rule 12(b)(6) Standards*

On a motion to dismiss pursuant to Rule 12(b)(6), a court typically must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor. *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998). A court should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995). Dismissal is proper when the plaintiff fails to plead the basic elements of a cause of action. *See Wright v. Giuliani,* No. 99 Civ. 10091(WHP), 2000 WL 777940, at *4 (S.D.N.Y. June 14, 2000).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

## II. *The Alien Tort Claims Act*

Pfizer asserts that plaintiffs' complaint fails to plead a violation of the law of nations because they "rely on a single treaty," the ICCPR, which provides no private right of action. (Def .'s Mem. in Opp. at 10-11.) As a non- self-executing treaty, the ICCPR does not give rise to a private cause of action. *Dreyfus v. Vonfinck,* 534 F.2d 24 (2d Cir.1976) (without implementing legislation, the ICCPR cannot give rise to a private cause of action). Plaintiffs, however, allege that Pfizer violated customary international law, otherwise known as the "law of nations," and assert jurisdiction pursuant to the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350. (Pls. Mem. in Opp. at 6; see also Compl. ¶ 51 (alleging violations of the "fundamental principles of a civilized society that constitute binding norms on the community of nations").) The ATCA provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Here, there is no dispute that plaintiffs are aliens alleging cognizable tort causes of action. Thus, for federal subject-matter jurisdiction to exist under the ATCA, the complaint must adequately plead a violation of international law. *See Kadic v. Karadzic,* 70 F.3d 232, 238 (2d Cir.1995) (quoting *Filartiga v. Pena-Irala,* 630 F.2d 876, 887-88 (2d Cir.1980)) ("Because the [ATCA] requires that plaintiffs plead a 'violation of the law of nations' at the jurisdictional threshold, this statute requires a more searching review of the merits to establish jurisdiction than is required under the more flexible 'arising under' formula of section 1331 [federal question jurisdiction]."); *see also Bigio v. Coca-Cola Co.,* 239 F.3d 440, 447 (2d Cir.2000) (under the ATCA pleading a violation of the law of nations is a jurisdictional prerequisite).

**\*4** The law of nations "results from a general and consistent practice of states which is followed by them from a sense of legal obligation." Restatement (Third) of Foreign Relations Law § 102(2)(1987); *see also Jama v. INS,* 22 F.Supp.2d 353, 362 (D.N.J.1998). "The law of nations 'may be ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law.' " *Filartiga,* 630 F.2d at 880 (citing United States v.

Smith, 5 Wheat. 153, 18 U.S. 153, 160-61, 5 L.Ed. 57 (1820)). Non-self executing agreements like the ICCPR may evidence the binding principles of international law. *See United States v. Toscanino,* 500 F.2d 267, 275-76 (2d Cir.1974) (U.N. Charter and the Charter of the Organization of American States demonstrated that kidnapping a criminal defendant from a country with formal extradition procedures violated international law). Thus, while plaintiffs need not rely on the ICCPR to provide a private right of action, they may look to that treaty to allege that "[Pfizer's] conduct violate[d] 'well-established, universally recognized norms of established international law.' " *Kadic,* 70 F.3d at 239 (citing *Filartiga,* 630 F.2d at 881, 888); *see also Alvarez-Machain v. United States,* 266 F.3d 1045, 1050 (9th Cir.2001) (international law is comprised of societal norms that are "specific, universal, and obligatory").

Here, plaintiffs rely on article 7 of the ICCPR, as well as the Nuremberg Code, the Declaration of Helsinki, FDA regulations and "other norms of international law" to frame their complaint. (Compl. ¶¶ 15, 134.) Thus, this Court has jurisdiction over this action so long as plaintiffs can allege an international law violation as evidenced by principles of those agreements and regulations.

## III. *International Law Violations*

Pfizer contends that plaintiffs' complaint fails to state a claim because its alleged misconduct does not qualify as one of the exceptions where a private party can be held liable for a "law of nations" violation and it was not a "state actor." (Def.'s Mem. in Supp. at 14-15.)

### A. *Private Actor Violations*

[1] "[C]ertain forms of conduct violate the law of nations whether undertaken by those acting under the auspices of a state or only as private individuals." *Kadic,* 70 F.3d at 239-40; *see also* Restatement (Third) § 404 ("Individuals may be held liable for offenses against international law, such as piracy, war crimes, and genocide.").

"[T]he Restatement is careful to identify those violations that are actionable when committed by a state, and a more limited category of violations of 'universal concern' " for which a private actor may

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d

(Cite as: 2002 WL 31082956, *4 (S.D.N.Y.))

be held accountable. *Kadic,* 70 F.3d at 240. According to section 404 of the Restatement, private parties may be liable under international law for violations "such as piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and perhaps certain acts of terrorism." In comparison, section 702 provides that "[a] state violates international law if, as a matter of state policy, it practices, encourages, or condones (a) genocide, (b) slavery or slave trade, (c) the murder or causing the disappearance of individuals, (d) torture or other cruel, inhuman, or degrading treatment or punishment, (e) prolonged arbitrary detention, (f) systematic racial discrimination, or (g) a consistent pattern of gross violations of internationally recognized human rights." While the categories of state and private actor violations may overlap, they are not coextensive. *Kadic,* 70 F.3d at 240. Thus, courts should find that an international law violation exists for private actors when the particular misconduct "is either listed as an act 'of universal concern' in [section] 404 or is sufficiently similar to the listed acts for us to treat them as though they were incorporated into [section] 404 by analogy." *Bigio,* 239 F.3d at 448.

**\*5** In *Kadic,* the Second Circuit found that "torture and summary execution--when not perpetrated in the course of genocide or war crimes--are proscribed by international law only when committed by state officials or under color of law." *Kadic,* 70 F.3d at 243; *see also Bigio,* 239 F.3d at 448 (religious and racial discrimination are not international law violations when committed by a private actor). In comparison, the conduct alleged here, however reprehensible, falls short of constituting a section 404 violation of "universal concern." Thus, the conduct alleged in the complaint does not constitute an international law violation for which a private party may be held liable, and plaintiffs cannot state a claim under the law of nations against Pfizer unless they adequately allege that Pfizer acted as a state actor. [FN1]

> FN1. While Pfizer disputes that it committed the alleged misconduct that plaintiffs claim constitutes a section 702 violation, it does not move to dismiss the complaint on the ground that plaintiffs have not adequately plead conduct that could constitute a section 702 violation. (Tr. of Oral Argument, dated Apr. 19, 2002, at 9-10.)

**B.** *State Actor Violations*

**[2]** Pfizer contends that plaintiffs cannot state a claim for a section 702 violation because it was a private actor. Plaintiffs respond that Pfizer acted as a *de facto* state actor because it conducted the Trovan study with the assistance of the Nigerian government and government employees from the IDH and the Aminu Teaching Hospital. (Pls. Mem. in Opp. at 15-16.)

In considering allegations of international law violations against a private actor accused of acting under color of law, courts may use 42 U.S.C. § 1983 jurisprudence to determine "whether a defendant has engaged in official action for purposes of jurisdiction under the [ATCA]." *See Kadic,* 70 F.3d at 245.

Under section 1983 jurisprudence, private activity can become actionable misconduct under international law when the government "has so far insinuated itself into a position of interdependence with [the private actor] that [they] must be recognized as a joint participant[s] in the challenged activity." *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *see also Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (requiring a nexus "sufficiently close" so that the state's exercise of "coercive power" or providing of "significant encouragement, either overt or covert" necessitates that the private actor's choice "must in law be deemed to be that of the State"); *National Coalition of the Gov't of the Union of Burma v. Unocal,* 176 F.R.D. 329, 346 (9th Cir.1997) (joint action exists where "a private party is a willful participant in a joint action with the State of its agents"); *Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1081 (2d Cir.1990) (private conduct constitutes a state action when the state has insinuated itself into a position of interdependence with the private party so that it must be recognized as a joint participant in the challenged activity). The relationship between state and private actors must be sufficiently close "so that the action of the [private actor] may be fairly treated as that of the State itself." *Blum,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534; *accord Unocal,* 176 F.R.D. at 347 (private person is liable only if "the particular actions challenged are inextricably intertwined with those of the government").

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31082956, *5 (S.D.N.Y.))

*6 Pfizer asserts that plaintiffs do not adequately allege that the Nigerian government was involved in the specific misconduct. The complaint, however, alleges that the Nigerian government acted in concert with Pfizer by providing a letter of request to the FDA to authorize the export of Trovan, arranging for Pfizer's accommodation in Kano's IDH, assigning Nigerian physicians to work with Pfizer, back-dating an "approval letter" that international protocol required be ascertained prior to the test, and acting to silence the Nigerian physicians critical of the company's test. (Compl.¶ 108. n. 6.) Those assertions sufficiently allege that the former Nigerian government and Pfizer were joint participants in the Trovan treatment. *Unocal,* 176 F.R.D. at 345 ("[T]he state action inquiry is more easily resolved on summary judgment than on a motion to dismiss because the court must review the facts and circumstances surrounding the challenged action in their totality.").

IV. *Forum Non Conveniens*

[3] Pfizer further contends that this Court should dismiss the complaint on the grounds of forum non conveniens because Nigeria is a preferred forum for this dispute. (Def.'s Mem. in Supp. at 21-22.) "Forum non conveniens is a discretionary device permitting a court in rare instances to 'dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." ' *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 100 (2d Cir.2000) (citing *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998)). Dismissal is usually not appropriate unless "the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991).

Dismissal pursuant to forum non conveniens requires a defendant to demonstrate that an adequate alternative forum exists. *Peregrine Myanmar Ltd. V. Segal,* 89 F.3d 41, 46 (2d Cir.1996); *see also Calavo Growers of Calif. v. Generali Belgium,* 632 F.2d 963, 968 (2d Cir.1980) (*forum non conveniens* "presupposes that an alternative forum is available"). If an adequate forum is available, the court then considers the public and private interest factors set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and its progeny. *See Bank of Credit and Commerce Int'l (OVERSEAS) Ltd. v. State Bank of*

*Pakistan,* 273 F.3d 241, 246 (2d Cir.2002); *Wiwa,* 226 F.3d at 100. From those factors, the Court must determine whether a trial in the plaintiffs' chosen forum would either create "oppressiveness and vexation for the defendants out of proportion to plaintiff's convenience, or be inappropriate because of " 'considerations affecting the court's own administrative and legal problems." ' *Piper Aircraft v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (citing *Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)).

A. *Adequate Alternative Forum*

Pfizer asserts that Kano's Federal High Court is an adequate alternate forum for plaintiffs' claims. (Def.'s Mem. in Supp. at 21.) Plaintiffs contend that Pfizer fails to meet its burden of demonstrating that Kano's Federal High Court is an adequate forum with "adequate procedural safeguards" with the "modicum of independence and impartiality necessary to ensure that the remedy available in the alternative forum [is not] so inadequate to amount to no recovery at all." (Pls.' Mem. in Opp. at 29.)

*7 Usually, an alternative forum is adequate if the defendants are subject to service of process there and the forum permits litigation of the disputed subject matter. *Piper,* 454 U.S. at 254 n. 22; *accord Capital Currency Exchange, N.V. v. Nat'l Westminster Bank PLC,* 155 F.3d 603, 608 (2d Cir.1998); *see also Gilbert* 330 U.S. at 506-07 (alternate forum is ordinarily satisfied if the defendant is "amenable to process" in the foreign forum); *Aguinda v. Texaco, Inc.,* Nos. 01-7756L, 01-7758C, 2002 WL 1880105, at *4 (2d Cir. Aug.16, 2002). Whether the law of the foreign forum differs from American law "should ordinarily not be given conclusive or even substantial weight" in assessing the adequacy of the forum. *Piper,* 454 U.S. at 249; *accord Capital Currency Exchange, N.V.,* 155 F.3d at 608; *PT United,* 138 F.3d at 74 ("The availability of an adequate alternate forum does not depend on the existence of an identical cause of action in the other forum.").

Pfizer contends that not only is it subject to service of process in Nigeria, but it is also currently defending a lawsuit in Kano's Federal High Court filed five months prior to the instant complaint that arises from the Trovan treatment. In addition, Pfizer

consents to jurisdiction in Kano's Federal High Court. (Def.'s Mem. in Supp. at 21.) Thus, Pfizer is subject to service of process in Nigeria. *DiRienzo v. Philip Servs. Corp.,* 232 F.3d 49, 57 (2d Cir.2000); ("An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement.") vacated on other grounds by *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 321 (2d Cir.2002); *accord Aguinda,* 2002 WL 1880105, at *4; *Albert Trading, Inc. v. Kipling Belgium N.V./S.A.,* No. 00 Civ. 0478(RMB), 2002 WL 272408, (S.D.N.Y. Feb.26, 2002).

Pfizer further argues that Nigerian law provides an adequate remedy for plaintiffs' claims because it recognizes negligence, medical malpractice, and personal injury claims. (Def.'s Mem. in Supp. at 21.) Plaintiffs do not dispute that Nigerian law prescribes those causes of action sounding in negligence with money damages as a potential remedy. (*See* Pls.'s Mem. in Opp. at 23-24.) Thus, Nigerian law provides an alternative basis for recovery even if it does not recognize the specific claims plaintiffs allege in this action. *See PT United,* 138 F.3d at 74 (dismissal proper although RICO claims could not be brought in alternate forum; fraud claim adequate substitute); *Transunion Corp. v. PepsiCo, Inc.,* 811 F.2d 127, 129-30 (2d Cir.1987) (same); *Howe v. Goldcorp Inv., Ltd. .,* 946 F.2d 944, 952 (1st Cir.1991) (affirming dismissal although U.S. securities law claims could not be brought in alternate forum). Instead, plaintiffs assert the "difference in substantive law is irrelevant" because Pfizer has not established that "Nigerian courts provide a 'modicum of independence and impartiality' necessary to ensure that the remedy available in the alternative forum not be so inadequate to amount to no recovery at all." (Pl.s' Mem. in Opp at 24.)

**8** "In rare circumstances ... where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative ...." *Piper,* 454 U.S. at 254 n. 22; *see also Eastman Kodak Vo. V. Kaviln,* 978 F.Supp. 1078, 1084 (S.D.Fla.1997) (noting that "the 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record"). Thus, a motion to relegate a plaintiff to a foreign forum will be denied if the plaintiff shows that conditions in the foreign forum plainly demonstrate that "plaintiffs are highly unlikely to obtain basic justice

therein." *See Cabiri v. Assasie-Gyimah,* 921 F.Supp. 1189, 1199 (S.D.N.Y.1996) (citing *Rasoulzadeh v. Associated Press,* 574 F.Supp. 854 (S.D.N.Y.1983) (denying dismissal of complaint alleging torture for forum non conveniens because of plaintiff's fear of persecution)); *see also Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1227 (3d Cir.1995) (finding that Indian forum was inadequate where delays up to twenty- five years were possible).

An analysis of whether an alternate forum is adequate, as framed by Circuit Judge Jon O. Newman while sitting by designation on the Eleventh Circuit, recognizes that

defendants have the ultimate burden of persuasion, but only where the plaintiff has substantiated his allegations of serious corruption or delay. Thus, where the allegations are insubstantially supported, ..., a District Court may reject them without considering any evidence from the defendant. But where the plaintiff produces significant evidence documenting the partiality or delay (in years) typically associated with the adjudication of similar claims, and these conditions are so severe as to call the adequacy of the forum into doubt, then the defendant has the burden to persuade the District Court that the facts are otherwise. This approach forbids dismissal to alternative forums that realistically are not capable of producing a remedy for the plaintiff's injuries, without crediting cursory attacks on legal systems simply because they are somewhat slower or less elaborate than ours.

*Leon v. Million Air, Inc.,* 251 F.3d 1305, 1312 (11th Cir.2001); *see also PT United,* 138 F.3d at 73 ("Considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards.").

Plaintiffs attack Kano's High Court as the product of a corrupt government that is, albeit democratically elected, composed of representatives from its former military regime who continue "to hunt down political opponents and those perceived to be working against the interest of the government ...." (Aff. of Dr. Vincent O. Orlu Nmehielle, Mar. 5, 2002) ("Nmehielle Aff.") ¶¶ 8-9, 21.) According to plaintiffs' supporting affidavits, the Nigerian judicial system is "subject to influence from powerful entities, such as the executive and

legislative branches of the government, [and] the wealthy," and consists of safeguards that are "generally by-passed in favor of powerful and influential parties." (Nmehielle Aff. ¶¶ 22, 24.) Plaintiffs bolster those claims with the U.S. Department of State and United Nations' reports stating that Nigeria's "judiciary remained subject to executive and legislative branch pressure, was influenced by political leaders at both the state and federal levels," and the courts are plagued by "understaffing, inefficiency, and corruption" that prevent the judiciary from functioning adequately. (Nmehielle Aff.: Ex. A, at 1, 6; Ex. B, at 2, 6, 7; Ex. C, at 6; see also Ex. D: Dep't of Commerce Report at 2 (criticizing the judiciary as "greatly weakened by neglect and endemic corruption"). Undoubtedly, the record offered by plaintiffs indicates that Nigeria is a nation experiencing difficulties in its transition from a dictatorship to a democracy. However, nothing in plaintiffs' submissions reaches beyond the most general of characterizations.

*9 This Court has a duty to exercise restraint when assessing the sufficiency of other nations' courts and legal systems. The Second Circuit has "repeatedly emphasized that '[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." ' Blanco v. Banco Industrial de Venezuela, 997 F.2d 974, 982 (S.D.N.Y.1993) (quoting Chesley v. Union Carbide Corp., 927 F.2d 60, 66 (2d Cir.1991)); accord Monegasqye De Reassurances S.A .M. (Monde Re), v. NAK Naftogaz of Ukraine, 158 F.Supp.2d 377, 385 (S.D.N.Y.2001); see also Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1283-84 (11th Cir.2001) ("[a]n adequate forum need not be a perfect forum").

Moreover, conclusory allegations of corruption or bias on the part of the foreign forum will not prevent a dismissal on forum non conveniens grounds. See El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 678 (D.D.Cir.1996) (State Department report expressing "concern about the impartiality" of Jordanian courts did not suffice to make that forum inadequate); see also Leon, 251 F.3d at 1312 (finding that plaintiffs' affidavits documenting the shortcomings of Ecuador's legal system, including a lack of financial resources, the use of manual typewriters in 90 percent of the courts, the absence

of computers in the trial courts, and congestion and delays illustrated by case filings of one thousand lawsuits per judge and at least one commercial case that was pending for 12 years, was not sufficient to demonstrate that the alternate forum was inadequate); Blanco, 997 F.2d at 982 (political unrest in a foreign jurisdiction did not render the forum inadequate absent some showing that the unrest has had an adverse effect on the judicial system there.); Gonzalez v. P.T. Pelangi Niagra Mitra Int'l, 196 F.Supp.2d 482, 487-88 (S.D.Tex.2002) (plaintiffs' general accusations contained in "voluminous proof of corruption in the Indonesian judiciary--including newspaper articles, statements by prominent Indonesian politicians, the results of a survey conducted by the Partnership for Governance Reform in Indonesia, a World Bank report and statements by the United States government" failed to render Indonesia an inadequate forum); Aguinda v. Texaco, Inc., 142 F.Supp.2d at 544 (S.D.N.Y.2001), aff'd 2002 WL 188015 (2d Cir. Aug. 16, 2002) (finding State Department reports containing "conclusory assertions as to the relative corruptibility or incorruptibility of Ecuadorian courts, with scant references to specifics, evidence, or application to the instant cases" to be of "little use"). Further, none of the submissions allege corruption of the Nigerian judicial process on the part of Pfizer. Compare Aguinda, 142 F.Supp.2d at 544 (conclusory allegations will not defeat defendant's assertion of an adequate alternate forum) with Eastman Kodak Co. v. Kavlin, 978 F.Supp. 1078, 1081 (S.D.Fla.1997) (employer's complaint alleging that Bolivian citizen conspired with Bolivian judge and attorney to wrongfully imprison an employee to extort a settlement from employer provided sufficient "backdrop" to employer's general assertions of corruption to overcome defendant's assertion that an adequate alternative forum existed).

*10 Thus, in light of Pfizer's showing that it is "amenable to process" in Nigeria, and the conclusory nature of plaintiffs' evidence regarding the inadequacy of Nigeria's legal system, this Court finds that this is not one of those "rare circumstances" where the potential difficulties of the foreign forum render the remedy offered by that forum "clearly unsatisfactory." Piper, 454 U.S. at 255 n. 22.

B. Balance of Private and Public Interest Factors

### 1. Plaintiff's Preference of Forum

Because Pfizer has established that Kano may serve as an adequate alternative forum, this Court must weigh the *Gilbert* public and private interest factors to determine which forum "will be most convenient and will best serve the ends of justice." *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir.1996). While this analysis normally affords domestic plaintiffs "a strong presumption" that their forum choice is sufficiently convenient, a weaker presumption applies in cases brought by foreign plaintiffs. *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 71 (2d Cir.2001); *see also Murray v. British Broad. Corp.,* 81 F.3d 287, 290 (2d Cir.1996) (foreign plaintiff's choice of forum "entitled to less deference").

Here, plaintiffs have demonstrated no meaningful ties to this district or the United States. *See Wiwa,* 226 F.3d at 103 (the greater the plaintiff's ties to the plaintiff's chosen forum, the more likely it is that the plaintiff would be inconvenienced by a requirement to bring the claim in a foreign jurisdiction). Instead, plaintiffs argue that this Court should accord them a greater deference because Pfizer's headquarters are located in this district and Pfizer devised the Trovan test treatment in the United States with the intention of securing FDA approval for Trovan. (Pls.' Mem. in Opp. at 22.) Plaintiffs further assert that Pfizer brought the data it collected in Kano back to the United States. (Pls.' Mem. in Opp. at 22.) However, those factors in no way affect plaintiffs' ties to the Southern District. Thus, while they may be considered in weighing the *Gilbert* public and private interest factors, they entitle the plaintiffs to no greater deference to their choice of forum. Thus, as foreign nationals with no significant ties to the Southern District, plaintiffs are not entitled to a strong presumption that their choice of forum is sufficiently convenient. [FN2]

> FN2. Plaintiffs are also not entitled to a greater deference because they have alleged international law violations. *See Aguinda,* 142 F.Supp.2d at 553 (Even if the court assumed that Texaco participated in a violation of international law that would support the claim brought under the ATCA, "neither that assumption nor any of the other considerations special to these cases materially alters the balance of private and public interest factors that, as previously discussed, 'tilt[s] strongly in favor of trial in the foreign forum.' ")

(citing *Wiwa,* 226 F.3d at 106) (internal citation omitted).

### 2. Balancing the Gilbert Factors

The *Gilbert* public interest factors include (1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) avoiding problems in conflict of laws and the application of foreign law. *Gilbert,* 330 U.S. at 508-09; *Iragorri,* 274 F.3d at 74. The *Gilbert* private interest factors include the ease of access to evidence, the cost for witnesses to attend trial, the availability of compulsory process, and other factors that might shorten trial or make it less expensive. *See Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. 258 n. 6 (citing *Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843); *Iragorri,* 274 F.3d at 73-74. "Application of the factors enunciated in *Gilbert* varies depending on the unique facts of each case; the inquiry is intended to be flexible, with no particular emphasis on any single factor." *Doe v. Highland Therapeutics Division,* 807 F.Supp. 1117, 1121 (S.D.N.Y.1992) (citations omitted); *accord Iragorri,* 274 F.3d at 74; *see also Leon,* 251 F.3d at 1310 (citing 17 *Moore's Federal Practice* § 111.74[3][b] at 111-221 (3d ed. 2000)) ("[E]ven though the private factors are generally considered more important than the public factors, the better rule is to consider both factors in all cases.").

*11 Because plaintiffs assert claims under international law, there is no concern regarding the difficulty in applying foreign law. Thus, the parties rely on their starkly differing characterizations of plaintiffs' claims to advocate their preferred forums. Plaintiffs argue that this is a case "whose center of gravity lies in the United States" based on Pfizer's alleged willingness to "commit wrongdoing abroad" and circumvent the necessary FDA regulatory approval for the export of Trovan in order to gain approval for "the sale and marketing of the drug to the U.S. consumers." (Pls.' Mem. in Supp. at 31.) Pfizer urges that this Court should regard the location of the injury as paramount. (Defs.' Mem. in Opp. at 29.)

It is undeniable that Nigeria has a very strong interest in this litigation. The Trovan test occurred in Nigeria, and all the alleged victims are Nigerian.