Not Reported in F.Supp.2d
(Cite as: 2002 WL 31082956, *11 (S.D.N.Y.))

Further, plaintiffs' allegations rely on the premise that Pfizer's alleged experiment was made possible with the aid of several of Nigeria's own government officials. *Piper,* 454 U.S. at 260 (citing *Gilbert,* 330 U.S. at 509) (There is "a local interest in having localized controversies decided at home."). Undoubtedly, however, the citizens of this forum share a compelling interest in this litigation as well. Pfizer developed, produced, and performed preliminary testing of Trovan, and also designed the Kano treatment protocol within the United States. Moreover, Pfizer conducted those activities and allegedly circumvented FDA regulations with the ultimate goal of selling and distributing Trovan domestically. Those allegations give rise to a public interest in having a United States court decide issues concerning Pfizer's possibly tortious conduct. *Carlenstolpe v. Merck & Co., Inc.,* 819 F.2d 33, 35 (2d Cir.1987) (affirming the district court's finding that there was a strong public interest in a products liability action concerning a vaccine that was developed in the United States but approved for distribution in Sweden). Thus, the *Gilbert* public interest factors do not strongly support either forum over the other.

With regard to the private *Gilbert* interests, plaintiffs argue that "[o]ther than the plaintiffs, nearly all of the key witnesses are U.S.-based" including Pfizer's current and former employees involved in the Kano Trovan treatment. (Pls.' Mem. in Opp. at 38.) However, while discovery related to Pfizer's alleged tortious conduct is within the United States, plaintiffs will also need to establish proof of causation, injury, and damages. As Pfizer asserts, witnesses who are "crucial" to those factual inquiries, including the local hospital personnel who communicated with the plaintiffs during the Trovan treatment, the Nigerian government officials who approved the study, the Kano IDH Ethics Committee, employees of the Aminu Kano Teaching Hospital, and more than twenty-five additional Nigerian individual witnesses with knowledge of the relevant events who are identified and disclosed in the plaintiffs' document production, are all located in Nigeria. (Def.'s Reply Br. at 20; Declaration of Atiba Adams, dated Jan. 25, 2002 ("Adams Decl."), ¶ 7.) Thus, evidence of numerous elements essential to plaintiffs' claim, evidence which is also not within plaintiffs' control, will be much more accessible in the Nigerian forum. *Aguinda,* 2002 WL 1880105, at *7 (affirming district court's

finding that private interests "heavily" favored foreign forum where plaintiffs lived, were injured, and their medical records were located); *see also Highland Therapeutics,* 807 F.Supp. at 1124; *de Melo v. Lederle Lab. Div. of Am. Cyanamid Corp.,* 801 F.2d 1058, 1062-63 (8th Cir.1986).

*12 Further, as plaintiffs concede, most of the documents and witnesses located in the United States are within Pfizer's control. (Pls.' Mem. in Opp. at 38 ("Pfizer brought all the materials, samples, records and documents related to the Kano Trovan Test back to the United States."; The "key" U.S.-based witnesses include Pfizer researchers.)) In addition, Pfizer has stipulated that it will facilitate any Nigerian action by providing plaintiffs with any relevant records; making past or present Pfizer employees available for depositions pursuant to 28 U.S.C. § 1782 [FN3]; and using its "best efforts" to make any past and present employees of Pfizer who would be subject to subpoena in the Southern District of New York available to testify at trial in Kano at Pfizer's cost (Def.'s Mem. in Supp. at 37.). [FN4] *Aguinda,* 2002 WL 1880105, at *8 (defendant adequately addressed plaintiffs' concern for U.S. discovery through a stipulation). Thus, the balance of the *Gilbert* private interest factors clearly weighs in favor or granting Pfizer's motion to dismiss for forum non conveniens because the vexation that it would incur in pursuing the relevant Nigerian discovery while litigating in this forum is grossly disproportionate to any convenience that plaintiffs may experience.

> FN3. Section 1782 provides, in part, that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal ...."

> FN4. While this Court cannot condition its dismissal for *forum non conveniens* on a term requiring Pfizer to abide by the Federal Rules of Civil Procedure, *see In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India,* 809 F.2d 195, 206 (2d Cir.1987), this Court notes that nothing prevents the parties from applying to the Nigerian court for a court-sanctioned agreement providing that the parties will pursue mutual discovery in accord with the Federal Rules.

Accordingly, for the foregoing reasons, the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31082956, *12 (S.D.N.Y.))

defendant's motion to dismiss this action on grounds of forum non conveniens is hereby granted provided that:

1. defendant Pfizer consents to suit and acceptance of process in any suit plaintiffs file in Nigeria on the claims that are the subject of the instant suit;

2. defendant Pfizer waives any statute of limitations defense that may be available to it in Nigeria;

3. defendant Pfizer makes available for discovery and for trial, at its own expense, any documents, or witnesses, including retired employees, within Pfizer's control that are needed for a fair adjudication of the plaintiffs' claims; and

4. defendant Pfizer will not act to prevent plaintiffs from returning to this Court if the Federal High Court in Nigeria declines to accept jurisdiction of this action, if it is filed in Nigeria within 60 days of the entry of this Order.

The Clerk of the Court is directed to close this case.

SO ORDERED:

2002 WL 31082956 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Date of Printing: OCT 24,2003

## KEYCITE

CITATION:  **Adbullahi v. Pfizer, Inc., 2003 WL 22317923 (2nd Cir.(N.Y.), Oct 08, 2003)
(Not selected for publication in the Federal Reporter) NO. 02-9223 (L), 02-9303 (XAP))**

**History**

**Direct History**

    1 Abdullahi v. Pfizer, Inc., 2002 WL 31082956  (S.D.N.Y. Sep 17, 2002) (NO. 01 CIV. 8118)
      (Additional Negative History)
      *Vacated in Part by*

=>     2 **Adbullahi v. Pfizer, Inc.,** 2003 WL 22317923  (2nd Cir.(N.Y.) Oct 08, 2003)
      (Not selected for publication in the Federal Reporter, NO. 02-9223 (L),
      02-9303 (XAP))

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058
914 668, or their Licensors. All rights reserved.

Slip Copy
**(Cite as: 2003 WL 22317923 (2nd Cir.(N.Y.)))**
**H**

Only the Westlaw citation is currently available.

This case was not selected for publication in the Federal Reporter.

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Second Circuit Rules § 0.23. (FIND CTA2 s 0.23.)

United States Court of Appeals, Second Circuit.

Rabi ABDULLAHI, individually and as the natural guardian and personal
representative of the estate of her daughter Lubabatau Abdullahi; Salisu
Abullahi, individually and as the natural guardian and personal representative
of the estate of his son Abullahi (Manufi) Salisu; Alasan Abdullahi,
individually and as the natural guardian and personal representative of the
estate of his daughter Firdausi Abdullahi; Ali Hashimu, individually and as the
natural guardian and personal representative of the estate of his daughter
Suleiman Ali; Muhammadu Inuwa, individually and as the natural guardian and
personal representative of the estate of his son Abdullahi M. Inuwa; Magaji Alh
Laden, individually and as the natural guardian and personal representative of
the estate of his son Kabiru Isyaku; Alhaji Mustapha, individually and as the
natural guardian and personal representative of the estate of his daughter
Asma'u Mustapha; Suleiman Umar, individually and as the natural guardian and
personal representative of the estate of his son Buhari Suleiman; Zainab Abdu,
a minor, by her mother and natural guardian, Hajia

Abdullahi; Hajia Abdullahi, individually; Firdausi Abdullahi, a minor, by her father and natural guardian, Abdullahi Madawaki; Abdullahi Madawaki, individually; Sani Abdullahi, a minor, by her father and natural guardian, Abdullahi Madawaki; Abdullahi Ado, a minor, by his mother and natural guardian, Aisha Ado; Aisha Ado, individually; Abdulmajid Ali, a minor, by his father and natural guardian, Alhaji Yusuf Ali; Alhaji Yusuf Ali, individually; Nura Muhammad Ali, a minor, by his father and natural guardian, Muhammad Ali; Muhammad Ali, individually; Umar Badamasi, a minor, by his father and natural guardian, Malam Badamasi Zubairu; Malam Badamasi Zubairu, individually; Muhammadu Fatahu Danladi, a minor, by his father and natural guardian, Alhaji Danladi Ibrahim; Alhaji Danladi Ibrahim, individually; Dalha Hamza, a minor, by his father and natural guardian, Malam Hamza Gwammaja; Malam Hamza Gwammaja, individually; Tasiu Haruna, a minor, by his guardian, Mukhtar Saleh; Mukhtar Saleh, individually; Muhyiddeen Hassan, a minor, by his father and natural guardian, Tijjani Hassan; Tijjani Hassan, individually; Kawu Adamu Ibrahim, a minor, by his father and natural guardian, Malam Abamus Ibrahim Adamu; Malam Abamus Ibrahim Adamu, individually; Sunusi Alh Ibrahim, a minor, by his father and natural guardian, Alhaji Ibrahim Haruna; Alhaji Ibrahim Haruna, individually; Malam Idris, individually; Maryam Idris, a minor, by her father and natural guardian, Malam Idris; Yusuf Idris, a minor, by his father and natural guardian, Idris Umar; Idris Umar, individually; Hafsat Isa, a minor, by her father and natural guardian, Isa Muhammed Isa; Muhammed Isa, individually; Taju Isa, a minor, by her father and natural guardian, Malam Isa Usman; Malam Isa Usman, individually; Hadiza Isyaku, a minor, by her father and natural guardian, Isyaku Shuaibu; Isyaku Shuaibu, individually; Zahra'u Jafaru, a minor, by her father and natural

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

guardian, Jafaru Baba; Jafaru Baba, individually;
Anas Mohammed, a minor, by
his father and natural guardian, Malam Mohammed;
Malam Mohammed, individually;
Nafisatu Muhammed, a minor, by her mother and
natural guardian, Yahawasu
Muhammed; Yahawasu Muhammed, individually;
Muhsinu Tijjani, a minor, by his
father and natural guardian, Tijjani Hassan; Alhaji
Yusuf Yusuf, individually,
Plaintiffs-Appellants-Cross-Appellees,
v.
PFIZER, INC., Defendant-Appellee-Cross-
Appellant.

Nos. 02-9223 (L), 02-9303(XAP).

Oct. 8, 2003.

Aliens who allegedly received an experimental antibiotic during epidemic in Nigeria sued drug manufacturer which administered the antibiotic, alleging violations of international law. The United States District Court for the Southern District of New York, 2002 WL 31082956, William H. Pauley, J., dismissed action on ground of forum non conveniens, and aliens appealed. The Court of Appeals held that remand was required to determine if dismissal of parallel action in Nigeria precluded dismissal of aliens' action on ground of forum non conveniens.

Vacated and remanded.

[1] Evidence ☞43(4)

157k43(4)

Reasons for dismissal of Nigerian action against drug manufacturer based on its alleged administration of experimental antibiotic during epidemic in Nigeria was not proper subject for judicial notice on appeal from order dismissing action arising from the same events on ground of forum non conveniens. Fed.Rules Evid.Rule 201(b), 28 U.S.C.A.

[2] Federal Courts ☞947
170Bk947

Remand was required in aliens' action against drug manufacturer, based on its alleged administration of

experimental antibiotic during epidemic in Nigeria, to determine if dismissal of parallel action in Nigeria precluded dismissal of action on ground of forum non conveniens.
Appeal from the United States District Court for the Southern District of New York (William H. Pauley, Judge).

Elaine S. Kusel, Milberg Weiss Bershad Hynes & Lerach LLP (Melvyn I. Weiss, Jennifer T. Dunn, Ann M. Lipton, of counsel), New York, NY, for Plaintiffs-Appellants, of counsel.

Ali Ahmad, Cheverly, MD, for Plaintiffs-Appellants.

Steven Glickstein, Kaye Scholer LLP (David Klingsberg, James D. Herschlein, on the brief), New York, NY, for Defendant-Appellee.

PRESENT: Hon. THOMAS J. MESKILL, Hon. ROGER J. MINER, and Hon. CHESTER J. STRAUB, Circuit Judges.

SUMMARY ORDER

*1 THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 8th day of October, two thousand and three.

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby VACATED and the case REMANDED.

Plaintiffs Rabi Abdullahi et al. appeal from an order and final judgment entered September 26, 2002 by the United States District Court for the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                              **Page 14**
(Cite as: 2003 WL 22317923, *1 (2nd Cir.(N.Y.)))

Southern District of New York (William H. Pauley, *Judge* ), dismissing their complaint on grounds of *forum non conveniens*. Defendant Pfizer, Inc. cross-appeals from the District Court's contemporaneous denial of Pfizer's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs are minors and their guardians, all of whom reside in Nigeria. Defendant Pfizer, the world's largest pharmaceutical corporation, was incorporated in Delaware and has its headquarters in New York. The central events at issue in this lawsuit occurred in 1996, not long after epidemics of bacterial meningitis, measles and cholera broke out in Kano, Nigeria. Pfizer established a treatment center at the Infectious Disease Hospital in Kano to treat victims of the meningitis epidemic. Plaintiffs allege that Pfizer, instead of using safe and effective bacterial meningitis treatments, used the epidemic as an opportunity to conduct biomedical research experiments on Nigerian children involving Pfizer's "new, untested and unproven" antibiotic, trovaflozacin mesylate, better known by its brand name, Trovan(R). *Abdullahi v. Pfizer*, No. 01 Civ. 8118, 2002 WL 31082956, at *1 (S.D.N.Y. Sept.17, 2002). [FN1] Plaintiffs claim that Pfizer failed to explain to the children's parents that the proposed treatment was experimental, that they could refuse it, or that other organizations offered more conventional treatments at the same site free of charge. *Id.* at *2. In addition, plaintiffs assert that half of the children who participated in Pfizer's treatment program were deliberately given inadequate doses of ceftriaxone-an FDA-approved drug shown to be effective in treating meningitis-so that Trovan would look more effective by comparison. *Id.* According to plaintiffs, five of the children who received Trovan and six of the children who were "low-dosed" with ceftriaxone died and others treated by Pfizer suffered very serious injuries, including paralysis, deafness and blindness. *Id.*

Plaintiffs filed their complaint in this action on August 29, 2001. They asserted that one of the bases of jurisdiction in the District Court was 28 U.S.C. § 1350, the Alien Tort Claims Act ("ATCA"), because Pfizer purportedly violated the Nuremberg Code, the Declaration of Helsinki, article 7 of the International Covenant on Civil and Political Rights, FDA regulations and other norms of international law. In a Memorandum and Order dated September

16, 2002, the District Court (William H. Pauley, *Judge* ) denied Pfizer's 12(b)(6) motion to dismiss the complaint for failure to state a claim under the ATCA but granted Pfizer's motion to dismiss the complaint on *forum non conveniens* grounds. *See Abdullahi*, 2002 WL 31082956, at *6, *12. Judgment was entered on September 26, 2002 and this timely appeal followed.

*2 We review a *forum non conveniens* dismissal for "a clear abuse of discretion." *Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 498 (2d Cir.2002). In evaluating the *forum non conveniens* question, the District Court properly considered: (i) the level of deference owed to the plaintiffs; (ii) the availability of an adequate alternative forum; and (iii) whether the public and private interest factors weigh in favor of an adjudication in the plaintiffs' chosen forum or in the defendant's proposed alternative. *See id.* at 500. The District Court resolved each of these questions in Pfizer's favor, finding that: (i) plaintiffs' choice of forum was owed "less deference" because they are foreign plaintiffs; (ii) Nigeria was an adequate alternative forum; and (iii) the public and private interest factors favored a trial in Nigeria over one in New York. *Abdullahi*, 2002 WL 31082956, at *6-12 .

Our principal problem in resolving this appeal on the current record relates to the inquiry into the existence of an adequate alternative forum. It is well settled that a *forum non conveniens* motion "may not be granted unless an adequate alternative forum exists," and, in general, "[a]n alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute." *Monegasque*, 311 F.3d at 499 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). To satisfy this element of the analysis, Pfizer demonstrated that it was subject to service of process in Nigeria and that Nigerian law provided an adequate remedy for plaintiffs' claims because it recognizes negligence, medical malpractice, and personal injury claims. *Abdullahi*, 2002 WL 31082956, at *7.

In "rare" cases, however, as the District Court aptly observed, "if the plaintiff shows that conditions in the foreign forum plainly demonstrate that 'plaintiffs are highly unlikely to obtain basic justice

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22317923, *2 (2nd Cir.(N.Y.)))

therein," ' a defendant's *forum non conveniens* motion must be denied. *Id.* at *8 (citation omitted). In this case, the plaintiffs made just such a claim-arguing vehemently that the Nigerian court system was too corrupt to be considered an adequate alternative forum. In support of these allegations, plaintiffs submitted to the District Court affidavits and a number of State Department and United Nations' reports that included general observations about the corruption in Nigeria's judiciary. *See id.* Although it observed that "the record offered by plaintiffs indicates that Nigeria is a nation experiencing difficulties in its transition from a dictatorship to a democracy," the District Court declined to find Nigeria to be an inadequate alternative. According to the District Court, "nothing in plaintiffs' submissions reaches beyond the most general of characterizations," and "conclusory allegations of corruption or bias on the part of the foreign forum will not prevent a dismissal on forum non conveniens grounds." *Id.* at *8-9.

*3 [1] On appeal, the plaintiffs have made a motion that we take judicial notice of the fact that "[a] parallel action filed in Nigeria [*Zango v. Pfizer,* No. FHC/K/CS/204/2001], involving different plaintiffs but the same course of conduct by Pfizer, was dismissed on August 19, 2002." [FN2] Plaintiffs request that we notice both the *fact* of the dismissal "and the reasons for it." Plaintiffs rely on the statements included in the Notice of Discontinuance as proof of the *Zango* plaintiffs' reasons for discontinuing the action. (The notice blames an indefinite adjournment and the fact that the judge hearing the case declined jurisdiction "for personal reasons.")

Pfizer objects to the plaintiffs' motion and requests, instead, that we take notice of the entire *Zango* docket, minutes and rulings because, according to Pfizer, these entries, minutes and rulings show that the *Zango* plaintiffs' version of events (as outlined in the Notice of Discontinuance) is disingenuous. Plaintiffs oppose Pfizer's motion, arguing that we "cannot fully understand the significance of the events in *Zango* on the [selective] record provided by Pfizer."

[2] The plaintiffs' understanding of the *Zango* events conflicts with the interpretation that Pfizer wishes us to draw from the docket entries (which

were not presented to the District Court) and this dispute is impossible for us to resolve based on the record before us. As such, this would be an inappropriate fact for judicial notice. [FN3] *See* Fed.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *see also* Weinstein's Federal Evidence § 201.13[1][b] ("Courts will not take judicial notice of factual propositions that are subject to reasonable dispute, even if they appear as allegations in pleadings, trial testimony, or findings of fact in judgments.") (footnotes omitted). These facts, however, would seem to be relevant to the *forum non conveniens* analysis-perhaps providing just the type of specific information that the District Court found lacking. As such, we remand the case to the District Court for proceedings to determine what precipitated the dismissal in *Zango* and to evaluate whether that impacts the District Court's *forum non conveniens* analysis.

We also note that while this appeal was pending, another panel of this Court decided *Flores v. Southern Peru Copper Corp.,* No. 02-9008, 2003 WL 22038598 (2d Cir. Aug.29, 2003) (holding that plaintiffs' claims of local, intranational environmental pollution were not actionable under the ATCA because such pollution does not violate customary international law). The applicability of *Flores* to the instant case is not entirely clear, in large part because this issue-whether the conduct alleged qualifies as a violation of "customary international law" under the ATCA-is one that Pfizer did not address before the District Court. [FN4] Both parties have glossed over the issue on appeal.

*4 Because we are remanding for further proceedings with respect to Pfizer's motion to dismiss on *forum non conveniens* grounds, we do not reach the subject of Pfizer's cross appeal-the propriety of the District Court's denial of Pfizer's Rule 12(b)(6) motion.

For the foregoing reasons, we VACATE the District Court's judgment granting Pfizer's motion to dismiss on *forum non conveniens* grounds and REMAND the matter for further proceedings not

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 22317923, *4 (2nd Cir.(N.Y.)))

inconsistent with this summary order.

> FN1. This brief summary of the facts is drawn largely from the District Court's memorandum and order. As the District Court did, we accept the allegations in the plaintiffs' complaint as true for purposes of resolving the motions to dismiss.

> FN2. The *Zango* plaintiffs' Notice of Discontinuance was dated August 19, 2002, but it was not actually filed until October 17, 2002. Thus, although plaintiffs suggested otherwise in their motion papers, the *Zango* dismissal did *not* predate the issuance of the District Court's order dismissing this case on *forum non conveniens* grounds. The District Court's order as dated September 16, 2002 and the judgment was entered on September 26, 2002.

> FN3. Because we are remanding, we need not take judicial notice of the other items cited by the parties, including new State Department travel warnings and other reports, and a supplemental appendix filed in *Monegasque, see* 311 F.3d at 499 . We leave the resolution of these issues to the District Court.

> FN4. Indeed, when prodded by the District Court at oral argument on its motion, Pfizer repeatedly indicated that this threshold issue-whether the conduct alleged by the plaintiffs would violate any customary international law-was "not the subject of [its] motion." Moreover, Pfizer suggested that it would only pursue such an argument if the District Court found that the plaintiffs had adequately pleaded state action.

2003 WL 22317923 (2nd Cir.(N.Y.))

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

KeyCite

**Page 12**

Date of Printing: OCT 24,2003

**KEYCITE**

CITATION:  **Adbullahi v. Pfizer, Inc., 2003 WL 22317923 (2nd Cir.(N.Y.), Oct 08, 2003)**
**(Not selected for publication in the Federal Reporter) NO. 02-9223 (L), 02-9303 (XAP))**

**History**
**Direct History**

      1  Abdullahi v. Pfizer, Inc., 2002 WL 31082956  (S.D.N.Y. Sep 17, 2002) (NO. 01 CIV. 8118)
               (Additional Negative History)
           *Vacated in Part by*

=>      2  **Adbullahi v. Pfizer, Inc.,** 2003 WL 22317923  (2nd Cir.(N.Y.) Oct 08, 2003)
               (Not selected for publication in the Federal Reporter, NO. 02-9223 (L),
               02-9303 (XAP))

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058
914 668, or their Licensors. All rights reserved.

Not Reported in F.Supp.
(Cite as: 1997 WL 280520 (D.Conn.))
C

Page 39

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

AETNA LIFE AND CASUALTY COMPANY
v.
Cliff CHRISTIE

No. 3:96CV1654 (AHN).

May 21, 1997.

*RULING ON DEFENDANT'S MOTION FOR
CHANGE OF VENUE*

NEVAS

**\*1** The plaintiff, Aetna Life and Casualty Company
("Aetna"), brings this action against the defendant,
Cliff Christie ("Christie"), for breach of contract in
connection with the alleged overpayment of benefits
under an ERISA plan.    Now pending before the
court is Christie's Motion for Change of Venue.

For the reasons stated below, this motion [doc. #
15] is GRANTED.

*BACKGROUND*

From in or about 1980 until in or about 1992,
Christie worked as a delivery man for Arrowhead
Water Perrier Group ("Arrowhead").    (*See* Def.'s
Mem. Supp. Mot. Change Venue [hereinafter
"Def.'s Mem."] at 1.) In 1987, Christie sustained a
serious injury which eventually caused him to leave
his employment in 1992.    (*Id.*) In or about 1992,
Arrowhead established an employee welfare plan
under ERISA. (*See* Compl.    First Count ¶ 5.) The
plan provided for long- term disability benefits for
Arrowhead employees.    (*Id.*) In addition, the plan
subjected the payment of benefits to adjustment
where the beneficiary received income from other
services, including Social Security and Worker's
Compensation. (*See id.* ¶ 8.) Aetna contracted to
process all claims submitted for beneficiaries under
the plan. (*See id.* 5.)

In 1993, Christie filed a claim for long-term
disability benefits, and Aetna approved the claim
with retroactive payments to begin on August 16,
1992. (*See id.* ¶ 7.) In order to receive benefits

under the plan, Christie signed a contract with Aetna
by which he agreed to reimburse Aetna for all
overpayments of disability benefits. (*See id.* ¶ 10.)
In or about August 1992, Christie began receiving a
Worker's Compensation award of $1,456 a month.
(*See id.* ¶ 9.) As a result, Aetna claims that it has
overpaid Christie $12,356.98 in disability benefits.
(*Id.*)

In response, Christie brings a counterclaim against
Aetna alleging that it improperly terminated his
long-term disability benefits in December 1993.  (
*See* Answer Countercl. ¶ 10.)      According to
Christie, he was entitled to receive his benefits until
June 1995, when he began working at his present
job. (*See id.* ¶ 9.) He claims that Aetna owes him
$14,625. (*See id.* ¶ 11.)

Christie, a citizen and resident of California,
maintains that he has a bona fide defense to this
action, but lacks the financial resources to present
such a defense in Connecticut. (*See* Def.'s Mot.
Change of Venue at 2.) According to Christie, the
convenience of the parties and witnesses favors
transferring this case to the United States District
Court for the Central District of California. (*Id.*)

*STANDARD OF REVIEW*

Similar to the common law doctrine of forum non
conveniens, 28 U.S.C. § 1404(a) provides that
"[f]or the convenience of the parties and witnesses,
in the interest of justice, a district court may transfer
any civil action to any other district or division
where it might have been brought." Pursuant to §
1404, a transfer of venue may be made upon motion
by either of the parties or by the court *sua sponte.*
See *Clisham Management.   Inc. v. American Steel
Building Co.,* 792 F.Supp. 150, 157 (D.Conn.1992)
;    *Mobil Corp. v. S.E.C.,* 550 F.Supp. 67, 69
(S.D.N.Y.1982);   see *also I-T-E Circuit Breaker
Co. v. Becker,* 343 F.2d 361, 363 (8th Cir.1965);
15 Wright & Miller,       *Federal Practice and
Procedure,* § 3844, at 208-209 (2d ed.1976).

**\*2** Motions for transfer of venue fall within "the
broad discretion of the district court and are
determined upon notions of convenience and fairness
on a case-by-case basis." *In re Cuyahoya Equip.
Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (citing
*Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1997 WL 280520, *2 (D.Conn.))

Page 40

(1988)). The purpose of section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense...." *Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 94 (S.D.N.Y.1995) (internal quotation marks omitted) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964)). Generally, to determine whether transfer of venue is appropriate, the court should consider:

   (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Eskofot,* 872 F.Supp. at 95.

The moving party bears the burden of establishing that there should be a change of venue. See *Filmline (Cross Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 521 (2d Cir.1989). District courts are accorded broad discretion in deciding whether to transfer venue and such a decision will not be overturned except on a strong showing that the court abused its discretion. *Codex Corp. v. Milgo Elect. Corp.,* 553 F.2d 735, 737 (1st Cir.), *cert. denied,* 434 U.S. 860 (1977); *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3rd Cir.1973).

### DISCUSSION

Aetna brought this action pursuant to 29 U.S.C. § 1132(a)(3), which states that a fiduciary for an ERISA plan may bring a civil action to enforce the plan's provisions or recover overpaid benefits. Under 29 U.S.C. § 1132(e)(2), the fiduciary may bring suit in, *inter alia,* the district where the ERISA plan is administered. Aetna argues that because it administered the plan in Connecticut, Connecticut is the proper venue for this action. Aetna further argues that its choice of forum is entitled to deference by the court. See *National Utility Service, Inc. v. Queens Group, Inc.,* 857 F.Supp. 237, 240 (E.D.N.Y.1994).

While, as a general matter, courts give deference to the plaintiff's choice of forum, see *Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F.Supp. 918, 936 (S.D.N.Y.1989) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)), here, the balance of factors weighs strongly in favor of transferring the case. First, Christie is a resident and citizen of California and has never been to Connecticut. He became disabled while working for Arrowhead, a company located in California, and underwent two surgeries and extensive rehabilitation in California. In addition, both his and Aetna's doctors, as well as all of his other witnesses, reside in California. Finally, according to Christie, he lacks the financial resources to defend this action and pursue his counterclaim in Connecticut. He claims that he cannot take time away from his family or his employment to litigate this action in Connecticut. In fact, at oral argument Christie's counsel stated that the financial burden of litigating this action in Connecticut would be so great that Christie would most likely allow default judgment to enter against him if the case remained in Connecticut. [FN1]

*3 Notwithstanding Aetna's argument that its choice of forum is entitled to deference, the relative means of the parties, the convenience of the parties, and the interests of justice (i.e., Christie's inability to defend this action or pursue his counterclaim in Connecticut), weigh heavily in favor of transferring this action to the Central District of California. [FN2] Aetna is a multi-national company with more than sufficient resources to litigate this case in California. Christie, on the other hand, makes approximately $25,000 per year and has recently assumed the caretaking responsibilities for his two minor children. Plaintiff's choice of forum is not entitled to so much deference as to render insignificant the financial and familial hardship that the defendant would suffer if forced to litigate this action in Connecticut.

### CONCLUSION

For the reasons stated above, Christie's Motion for Change of Venue [doc. # 15] is GRANTED. This case shall be transferred to the United States District Court for the Central District of California.

SO ORDERED this 21 day of May, 1997 at Bridgeport, Connecticut.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

FN1. Christie's counsel affirms that Christie's wife will undergo surgery for a lumbar spine injury in January of 1997, requiring Christie to assume the caretaking responsibilities for his two minor children during her recuperation period. Christie's counsel also affirms that no one can replace Christie at his current job. (*See* Aff. Judith Mauzaka ¶ 3.)

FN2. The convenience of the witnesses favors neither forum.    Aetnan claims that all of its witnesses reside in Connecticut, and Christie claims that all of his witnesses reside in California.

1997 WL 280520 (D.Conn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

KeyCite

**Page 42**

Date of Printing: OCT 24,2003

## KEYCITE

CITATION:  **Aetna Life and Cas. Co. v. Christie, 1997 WL 280520 (D.Conn., May 21, 1997) (NO. 3:96CV1654 (AHN))**

**History**

=>  1 **Aetna Life and Cas. Co. v. Christie,** 1997 WL 280520  (D.Conn. May 21, 1997)
(NO. 3:96CV1654 (AHN))

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

1992 WL 170896
(Cite as: 1992 WL 170896 (W.D.N.Y.))
C

Page 26

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

DELAWARE CREDIT CORPORATION (U.S.A.),
f/k/a Marine Midland Realty Credit
Corporation, Plaintiff,
v.
Arnold Y. ARONOFF, Janet Aronoff and Airidge
Associates Limited Partnership,
Defendants/Counter-Plaintiffs,
and
Arnold Y. ARONOFF, Janet Aronoff and Airidge
Associates Limited Partnership,
Third-Party Plaintiffs,
v.
MARINE MIDLAND REALTY CREDIT
CORPORATION, Third-Party Defendant.

No. 92-CV-135S.

July 10, 1992.

David J. McNamara, Phillips, Lytle, Blaine &
Huber, Buffalo, N.Y., for plaintiff.

Michael Everett Ferdman, Hiscock & Barclay,
Buffalo, N.Y. for defendants/counter-plaintiffs.

DECISION AND ORDER

SKRETNY, District Judge.

*1 Now before this Court is defendants' motion to
transfer this action to the United States District
Court for the Middle District of Florida ("Middle
District of Florida") pursuant to 28 U.S.C. §
1404(a). [FN1]

This lawsuit stems from plaintiff's attempt to hold
defendants jointly and severally liable as guarantors
of a loan made to a third party for the purchase and
development of land in Florida.    The complaint,
filed on February 25, 1992, and amended on April
8, 1992 ("Am. Complaint"), alleges that defendants
signed agreements to jointly and severally guarantee
payment of a loan made by plaintiff to a now
dissolved partnership which has defaulted on the
loan. Plaintiff seeks to hold defendants liable as
guarantors.

Jurisdiction is based on diversity of citizenship
pursuant to 28 U.S.C. § 1332.   Plaintiff, Delaware
Credit Corporation (U.S.A.) f/k/a Marine Midland
Realty Credit Corporation ("Delaware Credit") is a
Delaware Corporation with its principal place of
business in Buffalo, New York.   Defendants Arnold
Aronoff and Janet Aronoff are residents of Florida,
but also maintain a house in Michigan.   Defendant
Airidge Associates Limited Partnership ("Airidge")
[FN2] is a Michigan partnership. (Def. Reply, Exh.
A1 ¶ 3).

Plaintiff contends that transfer of this case is
unnecessary because summary judgment in its favor
is appropriate.    Alternatively, plaintiff asserts that
transfer is inappropriate because the Guaranties
contain a forum selection clause which allows
plaintiff to sue in this district and, even in the
absence of such a clause, defendants have failed to
make a clear-cut showing that the interests of justice
and of the parties require transfer.

Defendants contend that summary judgment is not
appropriate at this time and that the forum selection
clause is permissive rather than mandatory and
therefore not controlling.   In addition, Defendants
assert that the convenience of the parties and judicial
efficiency and economy would be best enhanced by
change of venue.

Defendants submit a Brief in Support of Motion for
Change of Venue, with exhibits ("Def. Memo"), a
Reply Brief in Support of Motion to Change Venue,
with exhibits ("Def. Reply"), a declaration of
Arnold Aronoff and an affidavit of Margaret O.
Steinbeck ("Steinbeck Aff.").    In opposition to the
motion, plaintiff submits a Memorandum of Law
("Pl. Memo") and an affidavit of Robert J. Lennartz
annexed to its notice of cross-motion ("Lennartz
Aff.").

After reviewing the parties' submissions and
hearing oral argument on June 5, 1992, this Court
for the reasons discussed *infra,* Grants defendants'
motion to change venue.

FACTS
*The Underlying Transaction*

On April 4, 1988, Delaware Credit loaned Naples
Associates ("Naples"), a general partnership made

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

up of Campeau Corporation ("Campeau") and defendant Airidge, approximately $19,500,000 (the "Loan"). [FN3] (Lennartz Aff. ¶ 2). In exchange, Naples executed and delivered a promissory note. (Am. Complaint, Exh. B). On March 8, 1988, Mr. Aronoff, Mrs. Aronoff and Airidge each executed a separate Guaranty (collectively, the "Guaranties") to ensure payment of the Loan. (Am. Complaint, Exhs. C,D,E; Lennartz Aff. ¶ 8).

*2 Because Campeau was experiencing much publicized financial difficulty, Naples was reorganized in September of 1990 into Naples Associates Limited Partnership ("Naples L.P."), [FN4] and Naples L.P. assumed Naples' indebtedness to Delaware Credit. (Lennartz Aff. ¶¶ 4-5). As part of the reorganization, Naples L.P. and Delaware Credit executed a written amendment to and reaffirmation of the Loan Agreement ("Amendment and Reaffirmation"), which, *inter alia,* modified the maximum principal amount available under the Loan Agreement and payable on the note, and reaffirmed defendants' execution and delivery of the Guaranties. (*Id.* ¶ 5; Am. Complaint, ¶ 11).

The Guaranties provided that defendants jointly and severally guarantee "the full and prompt payment ... of all indebtedness and liability" under the Loan Agreement. (Am. Complaint, Exhs. C,D,E; Lennartz Aff. ¶ 8). In addition to providing for guarantee of payment on the loan, the Guaranties also contained a choice of law clause agreeing that New York law would govern and a clause stating that any action or proceeding arising from the Guaranties "may be commenced in the Superior Court of Delaware in the county, or in the District Court of the United States in the district, in which [Delaware Credit] has an office." (Am. Complaint, Exhs. C,D,E, ¶¶ 13-14).

*Pending Litigation*

On February 26, 1991, Naples L.P. and CCP sued Delaware Credit's affiliate, Marine Midland, in Florida county court on numerous causes of action sounding in contract and tort, including allegations of fraud, misrepresentation and bad faith in connection with the negotiation and execution of the loan and the Amendment and Reaffirmation. (Def. Memo, Exh. F). Thereafter, the action was removed to the Middle District of Florida in April

1991. (Def. Memo at 4).

On February 25, 1992, Delaware Credit initiated the present action in this district based on the Guaranties. In response, defendants made the motion to transfer presently before this Court, then filed their answers with affirmative defenses and counterclaims. The defenses and counterclaims, also listed as third-party claims against Marine Midland, are nearly identical to the claims in Naples L.P. and CCP's complaint in the Florida action.

On April 7, 1992, Delaware Credit initiated an action against Naples L.P., Airidge and CCP in Florida state court to foreclose on the property in Florida which secures the Loan. [FN5] (Def. Memo, Exh. G). The foreclosure action also was removed to the Middle District of Florida. [FN6]

Thus, two actions arising from the same transaction currently are pending in the Middle District of Florida. To date, the cases have not been consolidated. In connection with the two Florida actions, discovery has been ongoing for approximately one year wherein twenty-five witnesses, including defendant Mr. Aronoff, his son and several of plaintiff's past and present employees, already have been deposed and over three thousand documents have been produced. (Steinbeck Aff. ¶¶ 6, 8; Def. Memo, Exh. K ¶¶ 5-7).

*DISCUSSION*
*Defendants' Motion to Transfer*

*3 Plaintiff bases its primary argument on the forum selection clause contained in the Guaranty. The clause essentially allows suit to be brought in a Delaware court or in the United States District Court for the district in which the lender has an office. Plaintiff argues that the clause should be enforced unless obtained fraudulently. (Pl. Memo at 18). In addition, plaintiff argues that defendants' consent to the forum selection clause precludes it from claiming a more convenient district. (*Id.* at 20).

Even absent a forum selection clause, plaintiff argues that its choice of forum should not be disturbed unless the balance of factors strongly favors defendant. In this regard, plaintiff maintains that defendant must make a clear-cut showing that

the interests of justice and of the parties require transfer. It contends that defendants have failed to do so. (Pl. Memo at 19). In support thereof, plaintiff points out that defendant Mr. Aronoff has represented that he is worth approximately $60 million and owns a private plane. Therefore, he would not be inconvenienced by having to travel to Buffalo. Plaintiff also asserts that the Aronoffs own valuable property and conduct much of their affairs in Michigan. It argues that such facts make this district much more convenient and desirable than the Middle District of Florida. (*Id.* at 20-21).

Moreover, plaintiff insists that little documentary proof is necessary for it to prevail on its claim on the Guaranties. It asserts that the business records, to the extent that they are necessary, are in Buffalo. Plaintiff notes that defendants have neither specified the nature and volume of the documents they deem necessary nor made any showing that deposition testimony would not suffice in the event of transfer. Further, plaintiff argues that even if large volumes of files were needed, modern technology is such that getting the documents to this district would not be unduly burdensome. (*Id.* at 23).

In addition, plaintiff contends that the actions pending in the Middle District of Florida involve neither the same parties nor the same issues. As to the parties, the Florida actions involve Naples L.P., CCP and Marine Midland, while the case at bar involves Delaware Credit, Airidge and the Aronoffs. As to the issues, plaintiff argues that the Guaranties are immaterial to the Florida actions, and exclusively material to the action in this district. Moreover, none of the contract and tort claims in the Florida suits, so plaintiff claims, bear on enforcement of the Guaranties. Specifically, plaintiff argues that the Guaranty is "unconditional and absolute," and bars the defendants from asserting any defenses and counterclaims, therefore, their defenses and counterclaims must be dismissed. (*Id.* at 11-12). In the alternative, if defendants have valid claims they should not constitute defenses or counterclaims in the present case, and should be transferred to the Middle District of Florida after plaintiff is granted summary judgment on the Guaranties. (*Id.* at 2, 24).

*4 Finally, plaintiff asserts that because the action in this district concerns only the Guaranties and the parties to the Guaranties agreed that New York law would govern, the case should be decided by a district court sitting in New York since it presumably has greater familiarity and knowledge of New York law than does a Florida court.

On the other hand, defendants agree that the forum selection clause is important, but argue that it should not control. They assert that the clause is permissive as it allows a party to bring suit in a particular district but does not mandate it. Defendants use the permissive language of the clause to distinguish it from the mandatory language contained in the cases cited by plaintiff. (*Id.*)

Defendants also argue that the transaction out of which the entire dispute arises is a real estate development project in Florida. Thus, the people of the state of Florida have the greatest interest in the outcome of the litigation since it involves Florida real estate. Moreover, defendants point out that the pending litigation already has resulted in over three thousand documents having been produced and 25 witnesses having been deposed in Florida. Remaining in this district, therefore, would be a waste of this Court's resources.

Finally, defendants contend that they are not precluded from asserting defenses and counter claims because the language in the Guaranties is not an absolute and unconditional guarantee of payment. The attendant issues are complex, similar to those before the court in the Middle District of Florida, and not appropriate for summary judgment here.

*Legal Standard*

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action "for the convenience of the parties and witnesses, in the interest of justice [to] ... any other district ... where it might have been brought." [FN7] For purposes of a motion to change venue pursuant to this section, the district court has very broad discretion, *see Red Bull Associates v. Best Western Int'l., Inc.,* 862 F.2d 963 (2nd Cir.1988), and must treat such motions on an "individualized case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Furthermore, the moving party bears the burden of proving that, under the circumstances, the interests of justice and of the parties will be better served by transfer. *Austin v. Int'l Brotherhood of Teamsters Airline Div. 2747,* 739 F.Supp. 206, 208 (S.D.N.Y.1990); *see also, Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314 (S.D.N.Y.1989). However, a motion to transfer venue does not dispose of the case and thus, the burden on the moving party is less stringent than for a motion to dismiss for improper venue, a Rule 12(b)(6) motion, or a summary judgment motion. In addition, it is not necessary to make all inferences in favor of the nonmoving party. *See e.g., Coats Co., Inc. v. Vulcan Equipment Co., Ltd.,* 459 F.Supp. 654 (N.D.Ill.1978).

**\*5** The factors generally considered by the district court in deciding whether to transfer include (1) convenience of the parties, (2) convenience of witnesses, (3) location of books, records or other tangible evidence, and (4) judicial efficiency and economy. This list is by no means exclusive, and "all other factors that make trial easy, expeditious, and inexpensive" should carry weight. *See Calavo Growers of California v. Generali Belgium,* 632 F.2d 963, 966 (2d Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

Before engaging in discussing these factors, this Court must determine whether or not the forum selection clause contained in the Guaranties herein prohibits the transfer of this case. The clause provided that the defendants would consent to personal jurisdiction and service of process, but remained silent as to venue. Consent to personal jurisdiction, however, implies consent to venue. *See Alexander Proudfoot Co. Headquarters L.P. v. Thayer,* 877 F.2d 912 (11th Cir.1989). Such consent permits plaintiff to bring suit in a particular forum but does not mandate that it do so.

Plaintiff urges this Court to find the forum selection clause dispositive and relies on *Jones v. Weibrecht,* 901 F.2d 17 (2d Cir.1990), which states that a forum selection clause should be enforced unless fraudulently obtained. This Court declines to find the forum selection clause controlling based on *Jones* because *Jones* differs factually from the case at bar in two important respects. Firstly, the plaintiff in *Jones* brought suit in federal court, and the defendant sought enforcement of the agreement and moved to remand to state court. The court in *Jones* clearly distinguished a motion to transfer from a motion to remand and noted that an interest of justice and convenience of the parties analysis was "not appropriate where ... a party seeks to have an action dismissed or remanded to state court, rather than transferred, on the basis of a forum selection clause that purports to preclude litigation from a venue other than a state court." *Id.* at 19. Secondly, the clause in *Jones* mandated that suit be brought in state court. Plaintiff ignores the fact that because the clause was mandatory, the Second Circuit declined to balance the interests of justice and of the parties under a broad discretionary standard.

Plaintiff also relies on *Credit Alliance Corp. v. David O. Crump Sand & Fill Co.,* 470 F.Supp. 489 (S.D.N.Y.1979), in support of its argument that the forum selection clause herein is controlling. In *Credit Alliance,* the parties specifically agreed to venue and when plaintiff brought suit in the particular venue, defendant objected and argued that the forum selection clause should be ignored because it was unconscionable. The district court refused to accept the defendant's argument, finding the pertinent language to be simple and unambiguous. Significantly, the *Credit Alliance* court did not ultimately decide defendant's motion to transfer. In granting plaintiff's summary judgment motion, that court declined to decide transfer of venue.

**\*6** This Court does not find *Credit Alliance* supportive of plaintiff's argument for additional reasons. Defendants here do not claim unconscionability nor do they ask this Court to ignore the clause. To the contrary, defendants readily agree that the clause should constitute a factor in the balancing of interests. Significantly, the clause in *Credit Alliance* stated that the parties "agreed to venue," whereas in the case at bar, the clause stated that any claim may be brought in this district, leaving both parties various possibilities as to venue. Finally, the *Credit Alliance* defendant's claim against a third party, which survived the grant of summary judgment in favor of the plaintiff, was transferred to a more appropriate venue.

The strength of plaintiff's argument, herein, is further diminished by the United States Supreme

Court's holding in *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), which concluded that a forum selection clause should "figure centrally" in determining whether to transfer. The district court must neither ignore nor give dispositive weight to such a clause. Rather, this type of clause "is only one relevant factor." *Id.* 487 U.S. at 32, 108 S.Ct. at 2245.

Consequently, this Court finds that the forum selection clause is not itself determinative and therefore, that it must consider the clause along with the convenience of the parties, the location of the witnesses and documents and the interest of justice in determining whether or not to transfer this case to the Middle District of Florida.

Plaintiff contends that the convenience of the parties weighs in favor of staying in this district and cites *General Electric Credit Corp. v. Toups,* 644 F.Supp 11 (S.D.N.Y.1985) in support of its position. The court in *Toups* held that even a merely permissive forum selection clause, though not ultimately controlling, required a finding that the convenience of the parties was sufficiently served in the venue from which the movant sought transfer. The *Toups* court reasoned that once a defendant has signed an agreement that an action may only be brought in a given forum, he cannot be heard to say that another forum is more convenient. *Id.* at 15. The court in *Toups* denied the motion to transfer, despite the fact that four named witnesses in the proposed transferee district would have been unable to testify as a result of the transfer, and only one witness in the transferor venue would have been lost due to the transfer.

The reasoning of *Toups* is sound, but some vast differences distinguish it from the present case. Most important, unlike the parties in *Toups,* plaintiff is already involved in two suits pending in the proposed transferee district. Despite plaintiff's assertion to the contrary, the parties in the Middle District of Florida are nearly identical to the ones here. Delaware Credit listed itself as "f/k/a Marine Midland Realty Credit Corp." in the caption of its Complaint in the present lawsuit. Plaintiff's contention that Marine Midland and Delaware Credit are separate entities is clearly untenable. Naples L.P., a party to the Florida actions, is owned 50% by defendant Airidge, in which defendant Mrs.

Aronoff is the general partner. Two of the three defendants in the present case are parties to the other actions, and the third is Mrs. Aronoff's husband, whose interest in the outcome of the litigation is effectively the same as Mrs. Aronoff's.

*7 Not only are the parties nearly identical, the facts and issues in the Florida suits are closely tied with the facts and issues in the case at bar, as all suits involve the same underlying loan agreement, the same negotiations regarding that agreement, the same Guaranties and common witnesses. A change of venue from this District would provide the parties with an opportunity to present all factual and legal arguments before one court. Moreover, in light of the common factual and legal issues, consolidation with the other cases pursuant to Fed.R.Civ.P. 42(a) might even be appropriate. [FN8] Upon transfer, should the Middle District of Florida court consider consolidation pursuant to Rule 42(a), it need only find one common question of law or fact to consolidate the actions. The capability of joining parties in the proposed transferee district, if absent in the transferor, is an important consideration. *See e.g. Vassallo v. Niedermeyer,* 495 F.Supp. 757 (S.D.N.Y.1980).

Recognizing that the application of Rule 42(a) is not an issue in this motion, however, this Court nevertheless is of the opinion that transfer is the best way to avoid unnecessary costs and delays, and to ensure the most efficient use of judicial resources. Notably, the fact that plaintiff alternatively wants to sever defendants' counterclaims and transfer them to the Middle District of Florida can be viewed as an admission of convenience and propriety of venue and a concession that the parties, witnesses, facts and issues are nearly identical. Plaintiff's inconvenience in litigating in Florida is negligible, if not absent, as opposed to defendants' inconvenience in litigating the matter in this district. The Aronoffs make their home in Florida. The Aronoff's business is primarily in real estate, and, although plaintiff disputes that they conduct the majority of their business in Florida, it has offered no evidence to support its allegation that Mr. Aronoff primarily conducts business elsewhere. Mr. Aronoff has already been deposed in connection with the Florida actions, as have his son and several of plaintiff's past and present employees. Having to travel to Buffalo for additional pretrial proceedings and trial apparently would seriously

1992 WL 170896
(Cite as: 1992 WL 170896, *7 (W.D.N.Y.))

interfere with defendants' day-to-day business operations. *See Trans-United Indus. Inc. v. Renard Linoleum & Rug Co.,* 212 F.Supp. 373 (E.D.Pa.1962) (Prolonged absence of defendant's key executives, where plaintiff did not face same hardship, was sufficient alone to require transfer). [FN9] Defendants and plaintiff already have Florida counsel. [FN10] It readily appears, then, that by continuing litigation in Buffalo, defendants and plaintiff would be forced to incur multiple costs, including duplicative attorneys fees, for proceedings regarding the same issues. [FN11] Most likely, the transfer of this case would not compel either party to incur additional costs, and would in fact economize resources for both parties.

**\*8** This Court, thus, is convinced that the convenience of the parties clearly weighs in favor of transferring to the Middle District of Florida and that the parties would be served best by transferring this case to the Middle District of Florida.

Another factor this Court must consider is the location of the witnesses and the documents. The district court in *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314 (S.D.N.Y.1989), found that in order for a defendant to argue inconvenience of witnesses, it must name the witnesses who would be unable to testify absent transfer, and describe the testimony which would thus be left out. Defendants have listed as many as twenty-five supposedly inconvenienced non-party witnesses as already having been deposed in Florida, without describing the nature of the testimony that would be left out in the event of non-transfer. Plaintiff also fails to explain how its own witnesses would be inconvenienced by the transfer since, presumably, its witnesses will be present in Florida because it does not argue that any of its witnesses will be unable to testify in Florida. Without the aforementioned information this Court is unable to determine which venue better serves the convenience of the non-party witnesses. However, a factor which comes out evenly should weigh in favor of the party opposing transfer. *See, e.g., Austin v. Int'l Brotherhood of Teamsters Airline Div. 2747,* 739 F.Supp. 206, 208 (S.D.N.Y.1990); *see also, Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314 (S.D.N.Y.1989).

Similarly, this Court has not been apprised of the relevance of the three thousand documents produced during discovery in the actions pending in Florida, it cannot decide whether such documents are indeed relevant to litigation in this district. It would be most convenient for the Middle District of Florida to make this determination as to their relevance.

The final factor for this Court to consider is the interests of justice. The interest of judicial efficiency and economy unquestionably weighs in favor of changing venue. Regardless of the need for documents and witnesses, the loan which the Guaranties secure is the basis for the claims pending in the Middle District of Florida and in this district. If this case is transferred, every claim arising out of the same transaction will be in the same district. Depositions, other discovery, pretrial motions and hearings, and trial would all be streamlined and conducted much more efficiently, without causing hardship or harm to either party or to either party's witnesses.

Again, this Court duly notes plaintiff's motion to dismiss defendants' counterclaims, or in the alternative, to have them severed and transferred to the Middle District of Florida. That plaintiff can strenuously urge upon this Court that its claim should not be transferred, and then argue that defendants' counterclaims should be, seems rather anomalous. If plaintiff is prepared to argue that those claims should be severed and transferred, it must, in view of this Court's broad discretion to transfer, concede the propriety, if not the desirability, of changing venue to the Middle District of Florida. Certainly, considering all the factors, trial in the Middle District of Florida would be easier, more expeditious and less expensive.

**\*9** For the reasons articulated above, this Court finds that the balance of all the factors dictates transferring this case to the Middle District of Florida.

*Plaintiff's Summary Judgment Argument*

As alluded to above, plaintiff puts forth the proposition that this Court should not even reach the venue issue because it should grant plaintiff's motion for summary judgment. This Court has declined to consider summary judgment until it reaches a decision on defendants' motion to transfer.

In light of the totality of the circumstances and the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

various pending actions discussed above, the Middle District of Florida is the more appropriate venue for all actions and correspondingly, to determine all motions including plaintiff's summary judgment motion.

### CONCLUSION

On the basis of the foregoing analysis, this Court finds the interests of justice and the convenience of the parties to be best served by transfer of this action to the Middle District of Florida. Defendants' motion is therefore granted.

This Decision and Order shall not be construed as a ruling upon any other motion, and shall not prejudice any motion properly brought before the United States District Court for the Middle District of Florida.

### ORDER

IT HEREBY IS ORDERED, that defendants' motion to transfer venue to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a) is Granted.

SO ORDERED.

FN1. Also before this Court are plaintiff's motions to strike defendants' affirmative defenses and counterclaims, or in the alternative, to sever them and transfer them to the Middle District of Florida, and for summary judgment.    However, this Decision and Order addresses only defendants' motion to change venue.

FN2. Defendants Mrs. Aronoff is general partner of Airidge. (Lennarz Aff. ¶ 3).

FN3. The actual agreement was executed by Marine Midland Realty Credit Corporation ("Marine Midland"), to which Delaware Credit refers as an affiliate.

FN4. Naples L.P. is a Michigan limited partnership made up of 50% Campeau Corporation Partners (CCP) and 50% Airidge. (Lennartz Aff. ¶ 4).

FN5. Florida law allows for separate suits on the guaranty and on the foreclosure of the property securing the debt.

FN6. Delaware Credit has a motion pending before the Middle District of Florida to remand the foreclosure action back to the Florida state court.

FN7. Defendants concede that before reaching the issue of whether to transfer to another venue, they must show the transferee venue to be appropriate. The general provision for venue in the district courts, 28 U.S.C. § 1391(a), states:
A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in

* * *

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or
(3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.
Defendants reside, and are therefore subject to personal jurisdiction, in Florida.   Because subject matter jurisdiction is based solely on diversity, the Middle District of Florida is an appropriate venue under § 1391(a)(3).

FN8. Fed.R.Civ.P. 42(a) states:
When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions;  it may order all the actions consolidated;    and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FN9. Notably, plaintiff is a large corporation with many employees in contrast to defendants who are small business owners.  Thus, the transfer would not so severely disrupt plaintiff's business as would the litigation of the suit in this district disrupt defendants' business.

FN10. Defendants' argue that its Buffalo counsel would be unduly burdened, however, inconvenience to counsel is unpersuasive and not a factor.  *See Hernandez v. Graebel Van Lines,* 761 F.Supp. 983 (E.D.N.Y.1991).

FN11. Defendants' Buffalo counsel heretofore has played a minor role by signing and serving papers filed in Buffalo.  Motions, briefs, etc. have been prepared by defendants' Michigan counsel.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1992 WL 170896
**(Cite as: 1992 WL 170896, \*9 (W.D.N.Y.))**

1992 WL 170896, 1992 WL 170896 (W.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Date of Printing: OCT 24,2003

## KEYCITE

CITATION:  **Delaware Credit Corp. (U.S.A.) v. Aronoff, 1992 WL 170896 (W.D.N.Y., Jul 10, 1992) (NO. 92-CV-135S)**

**History**

=>          1 **Delaware Credit Corp. (U.S.A.) v. Aronoff,** 1992 WL 170896  (W.D.N.Y. Jul 10, 1992)
                 (NO. 92-CV-135S)

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058
914 668, or their Licensors. All rights reserved.

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

EQUIPOS NUCLEARES, S.A., and Empresa
Nacional de Ingenieria Y Technologia,
S.A., Plaintiffs,
v.
FAIRFIELD ENERGY VENTURE, L.P., a
Delaware limited partnership, Defendant.

No. 88 CIV. 7543 (MBM).

Jan. 23, 1989.

Douglas H. Meal, Joni L. Walser, Seth W. Brewster, Ropes & Gray, Boston, Massachusetts, Bertrand C. Sellier, Edwin M. Baum, Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City, for plaintiffs

Harvey Kurzweil, Jack A. Gordon, Theodore M. Cooperstein, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant.

OPINION AND ORDER

MUKASEY, District Judge.

*1 Plaintiffs, Equipos Nucleares, S.A. and Empresa Nacional de Ingenieria Y Technologia, S.A. ("Equipos"), filed this breach of contract lawsuit on October 24, 1988 against defendant Fairfield Energy Venture, L.P. ("Fairfield"), concerning construction of an electrical generating facility in Fort Fairfield, Maine. Defendant, a Delaware limited partnership with offices in Washington, D.C., contracted with Cianbro Corp., a Pittsfield, Maine general contractor, who in turn subcontracted with plaintiffs, both Spanish corporations, for architectural, design and engineering assistance. Defendant now moves, *inter alia,* to transfer this action to the United States District Court for the District of Maine, pursuant to 28 U.S.C. § 1404(a) (1982). As I find that transfer would be far more convenient for both parties and witnesses and, most importantly, would be in the interests of justice, I do not reach defendant's arguments to stay or dismiss the action.

I.

In order to understand why transfer to Maine is appropriate, a brief explanation of the welter of lawsuits generated by both sides is necessary. Beginning in late 1987, Cianbro disputed Equipos' performance on the project and sought to stop payment to Equipos. (Kurzweil Aff. I. at ¶ 7) In December 1987, Equipos filed a demand for arbitration naming Cianbro and Fairfield as respondents. Equipos agreed to dismiss Fairfield from the action because it had no direct contract with Equipos. (Kurzweil Aff. I at ¶¶ 8 & 9) In February, 1988, however, Equipos commenced a lawsuit against both Cianbro and Fairfield in a Maine federal court. The complaint sought payment for "unpaid invoices, unpaid retainage, and unpaid extra labor, material and services." (Kurzweil Aff. I. at ¶ 10) Equipos, however, requested the court to stay the lawsuit pending arbitration. That court has not yet decided the question. (Meal Aff. at ¶ 6) The claims in that action essentially parallel counts I and III of this lawsuit's complaint in which Equipos demands approximately $6.6 million for unpaid work on the project.

Cianbro completed the project in October 1988. The contract required that, once the facility was completed, Fairfield pay approximately $1 million it had withheld from earlier periodic payments. (Kurzweil Aff. at ¶ 13) Both Cianbro and Equipos assert exclusive right to this sum. On October 21, 1988, Harvey Kurzweil, counsel for defendant, and Douglas Meal, counsel for plaintiffs, discussed possible resolution of this dispute. Although some statements made during this telephone conversation are disputed (compare Meal Aff. at ¶¶ 11, 12 with Kurzweil Aff. II at ¶¶ 3, 4, 5, 6), Kurzweil clearly notified Meal that, if Equipos were unwilling to indemnify Fairfield against claims by Cianbro to the sum, Fairfield would interplead with respect to that amount in Maine federal court. (Kurzweil Aff. II at ¶ 4; Meal Aff. at ¶ 12). The very next working day, Equipos filed the instant lawsuit, demanding, *inter alia,* the disputed sum (denominated as "Count II" in the complaint). Four days later, Fairfield filed the promised interpleader action in Maine federal court, naming both Cianbro and Equipo as claimants. (Kurzweil Aff. I. at ¶ 14)

*2 Closing the circle, Cianbro has apparently filed

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

a lien on Fairfield's plant and is apparently considering filing a lawsuit in Maine on the same issues. (Kurzweil, Aff. at ¶ 18)

II.

A district court may transfer a civil action to any district where it might have been originally brought "[f]or the convenience of parties and witness, in the interest of justice." 28 U.S.C. § 1404(a). Courts generally consider several factors in making this determination: (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the cost of obtaining witnesses' presence; (6) the location of records and documents; and (7) the interests of justice. *See, e.g., NCC Sunday Inserts, Inc. v. World Color Press, Inc.,* 666 F.Supp. 47, 49 (S.D.N.Y.1987); *Designs By Glory, Ltd. v. Manhattan Creative Jewelers, Inc.,* 657 F.Supp. 1257, 1258-59 (S.D.N.Y.1987). This determination is left to the sound discretion of the district court. *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.,* No. 87-7647, slip op. 7291, 7307 (2d Cir. January 12, 1989); *Carlenstope v. Merck & Co., Inc.,* 819 F.2d 33, 35 (2d Cir.1987) (forum non conveniens); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218-19 (2d Cir.1978), *cert. denied,* 440 U.S. 908 (1979).

I find that defendant has met the heavy burden required to transfer a case. *See, e.g., Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1060 (S.D.N.Y.1987). Most importantly, the prevention of "duplicitous litigation and inconsistent results" mandates transfer in this instance. *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd.,* 537 F.Supp. 1241, 1243 (S.D.N.Y.1982) (Pollack, J.) (quoting *Nat'l Super Spuds, Inc. v. New York Mercantile Exchange,* 425 F.Supp. 665, 667 (S.D.N.Y.1977)). There are now two lawsuits in the Maine federal courts concerning this contract dispute. In one, Equipos asserted essentially the same claims present here against both Fairfield and Cianbro. Two arbitration proceedings involving Cianbro and Equipos are also in progress in Maine, in one of which defendant was originally named, but subsequently dismissed at the behest of Equipos. These Maine actions concern by far the bulk of the claims asserted by plaintiffs

here-- namely, $6 million due for work on the project. As the first filed, the Maine actions have priority. *See Rolls-Royce Motors,* 657 F.Supp. at 1060; *see also Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir.1974).

Furthermore, Fairfield has recently interpleaded what amounts to the rest of this case--$1 million in retained payments--in Maine federal court. Plaintiffs, however, contend that transfer is improper because this lawsuit was filed four days before the Maine interpleader action and, thus, that the "first-to-file" rule bars transfer. That doctrine, however, should not be applied in a mechanical fashion, but rather is intended as a preference that a district with earlier jurisdiction over a case handle all aspects of the dispute. *Rolls-Royce Motors,* 657 F.Supp. at 1060 & n. 14; *Nat'l Patent Dev. Corp. v. American Hosp. Supply Corp.,* 616 F.Supp. 114, 118 (S.D.N.Y.1984) (Weinfeld, J.). Thus, it does not operate where the initial filing "evidence[d] a race to the courthouse." *Dow Jones & Co. v. Bd. of Trade,* 539 F.Supp. 190, 193 (S.D.N.Y.1982). This is particularly true where the first to file gained the advantage because the opposing party notified it of the imminent suit in an attempt to settle. *See, e.g., Columbia Pictures Indus., Inc. v. Schneider,* 435 F.Supp. 742, 747 (S.D.N.Y.1977), *aff'd without opinion,* 573 F.2d 1288 (2d Cir.1978). Here, the instant lawsuit was filed one day after defendant's counsel, in an attempt to settle the case, informed plaintiffs' counsel of the imminent filing of an interpleader action in Maine. Additionally, given that Equipos has stated its impatience with the Maine arbitration's slow progress (Meal Aff. at ¶ 4), this lawsuit may well be designed to circumvent arbitration and the Maine courts and thus smacks of forum-shopping. In sum, the interests of justice favor transfer to Maine.

*3 Other factors also support a transfer to Maine. The contracts here all call for construction and interpretation in accordance with Maine law, further supporting transfer. *See Filmline (Cross-Country) Prods.,* slip op. at 7308; *see also Van Dusen v. Barrack,* 376 U.S. 612, 645 (1964). This factor, although not dispositive where legal issues are simple, *see Nat'l Patent Dev.,* 616 F.Supp. at 119; *but see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947) (stressing the "appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1989 WL 6628
(Cite as: 1989 WL 6628, *3 (S.D.N.Y.))

case"), shows that the parties intended Maine to be the forum for any litigation.

Moreover, the bulk of the evidence is in Maine: the project was built there and all the parties performed their work there. Although the parties dispute whether some negotiations took place in New York (Compare Mielgro Aff. at ¶¶ 11, 12, 13 with Phelps Supp.Aff. at ¶ 4), no one can dispute that this lawsuit ultimately concerns the parties' performance (or, as the case may be, non-performance) of the contracts. Plaintiffs' argument that this case solely revolves around contract formation is without merit. Although the issue of whether Fairfield or Cianbro owes Equipos for its performance turns on issues of the parties' intent in contract negotiations and thus some documents are here, the threshold issue--fundamental to this action--is whether Equipos properly performed its end of the bargain. Thus, most of the relevant evidence will be in Maine where the project was built.

It follows that most of the material witnesses, namely Cianbro employees at the Maine construction site, are outside this jurisdiction, and outside the subpoena power of this court. (Phelps Aff. at ¶¶ 4, 5) Defendant has specifically indicated the necessary out-of-state witnesses, *see* Phelps Aff. at ¶¶ 3, 4, and thus has met its burden in this regard. *See Factors Etc.*, 579 F.2d at 218. Accordingly, even though a few witnesses may reside in New York, a transfer to Maine will aid in the production of both evidence and witnesses. *See, e.g., Troyer v. Karcagi*, 488 F.Supp. 1200, 1207 (S.D.N.Y.1980) (where material events and circumstances underlying transaction occurred in Ohio, transfer to Ohio is ordered despite presence of two witnesses for plaintiff in New York).

Finally, plaintiffs are aliens, and their connection to the forum is, at best, tenuous. Thus, their choice

of forum is afforded little weight. *See, e.g., Societe Commerciale de Transports Transatlantiques (S.C.T.T.) v. S.S. "African Mercury"*, 366 F.Supp. 1347, 1350 (S.D.N.Y.1973). Although plaintiffs assert they have a New York place of business, significantly that office is plaintiffs' *parent* company's offices, and thus does not automatically change the calculus. *Cf. Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth.*, 442 F.Supp. 1201, 1206-07 (S.D.N.Y.1978) (presence of parent company does not automatically mean its subsidiaries are present for venue purposes). Plaintiffs concede that they are Spanish corporations and that their principal places of business are in Spain. (Mielgro Aff. at ¶ 6, 7) Thus, plaintiffs will not be inconvenienced any more by a transfer to Maine because, no matter what the decision here, they will be forced to litigate in a foreign jurisdiction. Indeed, plaintiffs' protestations to the contrary are belied by the fact that every lawsuit and demand for arbitration they have initiated was filed in Maine. [FN1] Certainly, up until now, plaintiffs have found Maine quite convenient.

*4 In sum, Maine is the locus of this dispute. This lawsuit represents more an exercise in forum-shopping than a sincere effort to resolve the legal disputes that have racked this project. Both justice and convenience require that this case be transferred to Maine where all the parties are present and amenable to suit. The Clerk of the Court is directed to transfer this lawsuit to Maine federal court.

> FN1. The only other lawsuit filed in New York concerned a minor dispute over a letter of credit involving two New York banks. The parties agreed to dismiss the lawsuit with prejudice soon after it was filed.

1989 WL 6628, 1989 WL 6628 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# CERTIFICATION

This is to certify that a copy of the foregoing has been hand delivered on this date, to:

> Richard P. Altschuler, Esq.
> Altschuler & Altschuler
> 509 Campbell Ave.
> P.O. Box 606
> West Haven, CT 06516

Dated at Bridgeport, Connecticut on this 27th day of October, 2003.

_____
Edward R. Scofield