KeyCite                                                                                         Page 38

Date of Printing: OCT 24,2003

# KEYCITE

CITATION: **Equipos Nucleares, S.A. v. Fairfield Energy Venture, L.P., 1989 WL 6628 (S.D.N.Y., Jan 23, 1989) (NO. 88 CIV. 7543 (MBM))**

History

=>     1  **Equipos Nucleares, S.A. v. Fairfield Energy Venture, L.P.,** 1989 WL 6628
          (S.D.N.Y. Jan 23, 1989) (NO. 88 CIV. 7543 (MBM))

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Norman JACOBS, Plaintiff,
v.
HAPPINESS EXPRESS, INC., Joseph A. Sutton, Isaac A. Sutton, and Michael A. Goldberg, Defendants.
Robert KARBAN, Jr., Plaintiff,
v.
HAPPINESS EXPRESS, INC., et al., Defendants.
William Ray JAMIESON, Plaintiff,
v.
HAPPINESS EXPRESS, INC., et al., Defendants.
James JUDSON, Plaintiff,
v.
HAPPINESS EXPRESS, INC. et al., Defendants.

No. CV 96 2552 (RJD), CV 96 3190 (RJD), CV 96 3727 (RJD), CV 96 3726 (RJD).

Sept. 16, 1996.

MEMORANDUM & ORDER

DEARIE, District Judge.

*1 Defendants Happiness Express, Inc. ("Happiness"), Joseph A. Sutton, and Isaac A. Sutton move to transfer the above-captioned action to Southern District of New York pursuant to 28 U.S.C. § 1404(a) where related actions are pending. For the reasons stated below, the Court grants defendants' motion.

Plaintiffs in these consolidated cases ("the Eastern District Action") allege violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5. The complaint alleges that Happiness and three of its present and former officers artificially inflated the price of Happiness's stock by filing quarterly reports with the Securities Exchange Commission that included material misrepresentations and omissions about the financial condition of the company. The named plaintiff in each action purports to sue on behalf of a class of all persons who bought common stock of Happiness between October 26, 1995 and May 8, 1996. Three suits against the same defendants have been filed in the Southern District of New York, and these cases have been consolidated before Judge Patterson. *In Re Happiness Express Securities Litigation*, 95 CV 7731 (RPP) ("the Southern District action"). The class period alleged in the Southern District action is March 7, 1995 to September 6, 1995.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The determination of whether to grant a motion to transfer under section 1404(a) is within the broad discretion of the district court. *Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988). The party seeking the transfer bears the burden of establishing the propriety of a section 1404(a) transfer. *Barr Laboratories, Inc. v. Quantum Pharmics, Inc.*, 827 F. Supp. 111, 113 (E.D.N.Y. 1993).

It is well established that "[t]ransfer is particularly appropriate where there is a prior lawsuit pending in the transferee district involving the same facts, transactions, or occurrences." *Levitt v. State of Maryland Deposit Ins. Fund Corp.*, 643 F. Supp. 1485, 1493 (E.D.N.Y. 1986), *see also, Nieves v. American Airlines*, 700 F. Supp. 769, 773 (S.D.N.Y. 1988). "To permit a situation in which two cases involving the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent." *Continental Grain Co. v. The FBL-585*, 80 S. Ct. 1470 (1960). Based on these principles, courts recognize that "as a general proposition, cases should be transferred to the district where related actions are pending." *National Union Fire Ins. v. Turtur*, 743 F. Supp. 260, 263 (S.D.N.Y. 1990) (internal quotation marks and citation omitted).

Plaintiffs oppose defendants' motion to transfer, arguing that the two actions involve different class periods, that discovery in the two actions can be coordinated without a transfer, and that the Eastern District action is governed by the Private Securities Litigation Reform Act of 1995. None of these arguments posited by plaintiffs overcomes the undisputed fact that these two actions, pending in different districts, involve the same allegations against the same defendants. In a document request dated July 5, 1995, plaintiffs in the Eastern District

1996 WL 537825
(Cite as: 1996 WL 537825, *1 (E.D.N.Y.))

Page 24

action listed the relevant time period as "April 1, 1995 to present." As even plaintiffs concede, this request encompasses most of the Southern District class period. Nevertheless, plaintiffs argue that the discovery in the two actions can be coordinated without transferring the action. Although plaintiffs correctly observe that coordination of discovery is possible without transferring the case, this Court is convinced that the transfer of this action to the Southern District will expedite discovery and conserve judicial resources. In addition, the Court finds that the existence of different class periods in the two actions does not weigh against transferring this action. Both cases involve shareholders suing Happiness and three of its present and former officials, and both are based on alleged irregularities in Happiness' 1996 financial reports. Indeed, plaintiffs in both actions have indicated that they intend to file amended complaints after Happiness amends its financial reports for 1996. Finally, the Court finds that the differences between the Private Securities Litigation Reform Act of 1995 that applies to the Eastern District action and the Securities Act of 1934 that governs the Southern District action do not weigh against the transfer. In sum, the Court finds that, in the interests of justice, this action should be transferred to the Southern District.

*2 For the foregoing reasons, the Clerk of the Court is directed to transfer this action to the Southern District of New York.

SO ORDERED.

1996 WL 537825, 1996 WL 537825 (E.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**KeyCite** **Page 25**

Date of Printing: OCT 24,2003

## KEYCITE

CITATION: **Jacobs v. Happiness Exp., Inc., 1996 WL 537825 (E.D.N.Y., Sep 16, 1996) (NO. CV 96 2552 (RJD), CV 96 3726 (RJD), CV 96 3190 (RJD), CV 96 3727 (RJD))**

**History**

=>     1 **Jacobs v. Happiness Exp., Inc.,** 1996 WL 537825  (E.D.N.Y. Sep 16, 1996)
            (NO. CV 96 2552 (RJD), CV 96 3726 (RJD), CV 96 3190 (RJD), CV 96 3727 (RJD))

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

1998 WL 720536
(Cite as: 1998 WL 720536 (D.Conn.))
C

Page 18

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

LESCARE KITCHENS, INC. Plaintiff,
v.
HOME DEPOT U.S.A., INC., Defendant.

No. 3:98CV1354 (GLG).

Sept. 29, 1998.

Memorandum Decision

GOETTEL, D.J.

*1 This diversity case is brought by plaintiff LesCare Kitchens, Inc ., for breach of contract, intentional interference with business relations, violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), and various state common-law torts against defendant Home Depot U.S.A., Inc. The dispute underlying this action arises out of a vendor-vendee relationship between the parties for the sale of kitchen and bathroom cabinetry, which relationship existed from 1993 through 1997.

Defendant seeks to have this action transferred to the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1404(a), based upon a forum-selection clause in the parties' Purchase Order Agreement. Alternatively, defendant moves this Court to dismiss this action pursuant to the doctrine of *forum non conveniens.* Defendant also seeks an award of attorney's fees in connection with the preparation of this motion, pursuant to the terms of the Purchase Order Agreement.

For the reasons set forth below, defendant's motion to transfer will be granted. Accordingly, defendant's alternative motion to dismiss will be denied as moot.

Background

Plaintiff manufactures and sells kitchen and bathroom cabinetry through a nationwide network of retail dealers. Plaintiff is a Connecticut corporation, with its principal place of business in Waterbury, Connecticut. Defendant Home Depot markets building supply products on a nationwide basis through its retail outlets and its Expo Design Centers. Defendant is incorporated in Delaware and has its principal place of business in Atlanta, Georgia.

In 1993, plaintiff and defendant entered into a Vendor Buying Agreement and Special Order Addendum, for the purchase and sale of kitchen and bath products. Both documents contain an "Acknowledgement" which recites that plaintiff has read the Purchase Order Agreement and that plaintiff agrees to its terms. The Purchase Order Agreement contains the following forum selection clause:

> 31. The Order shall be construed and enforced in accordance with the laws of the State of Georgia. The courts within the State of Georgia will have exclusive jurisdiction.

The parties operated under these agreements for several years. However, in 1995 and 1996, their relationship began to deteriorate. The complaint describes in detail the problems that developed, the specifics of which are not relevant here. Ultimately, the parties terminated their relationship in 1997.

In 1998, plaintiff filed the instant suit in the Superior Court for the Judicial District of Hartford/ New Britain at Hartford, Connecticut. Defendant then removed this case to federal court pursuant to 28 U.S.C. § 1446(b), based upon the parties' diversity of citizenship.

Discussion

Emphasizing that this is a private business dispute, defendant relies primarily on the forum-selection clause in the parties' contract in seeking a transfer of this action to Georgia. It also argues that the convenience of the parties and witnesses favor Georgia as the forum for this dispute, since its headquarters and, thus, many of its witnesses and documents are located in Georgia. Defendant also notes that plaintiff had a permanent, full-time employee in Atlanta for purposes of the Home Depot account. It further argues that the contracts were signed by its representatives in Georgia, and that many of the communications regarding the contract originated form Atlanta.

*2 Plaintiff objects to a transfer of the case, arguing

1998 WL 720536
(Cite as: 1998 WL 720536, *2 (D.Conn.))

Page 19

that great weight should be given to its choice of forum. Additionally, because its business is headquartered in Connecticut, most of its witnesses and documents are located here. Plaintiff states that the operative facts, including the negotiation of the contract and the injuries sustained by it occurred in Connecticut. Further, plaintiff states that many of the Home Depot witnesses with knowledge of the case are located throughout the United States and, thus, the interests of the parties and witnesses are not served by transferring this case to Georgia. Further, plaintiff argues that the interest of justice is best served by retaining jurisdiction in Connecticut because a Connecticut court has greater familiarity with and is the more appropriate forum to rule on its CUTPA and common-law tort claims.

In reply to this last argument, defendant cites to the choice-of-law provision in the contract that provides that the contract shall be construed and enforced in accordance with the laws of the State of Georgia.

The Supreme Court has held that federal law, specifically 28 U.S.C. § 1404(a), governs a district court's decision whether to transfer an action to another district based upon a forum-selection clause in a contract between the parties. [FN1] *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Section 1404(a) gives the district court discretion to adjudicate motions for transfer on an "individualized, case-by-case consideration of convenience and fairness." *Id.* at 29. Section 1404(a) provides:

> FN1. Defendant does not claim improper venue pursuant to 28 U.S.C. § 1406(a). Rather, defendant claims that because of the parties' forum-selection clause and for the convenience of the parties and in the interest of justice, the case should be transferred to Georgia. Defendant's Mem. in Support of its Motion to Transfer at 5.

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The moving party has the burden of establishing that there should be a change of venue. *O'Brien v. Okemo Mountain, Inc.*, No. CIV. A. 3-97-CV-0009, 1998 WL 514692, at *4 (D.Conn. July 21, 1998).

In diversity cases, the Second Circuit has held that federal common law applies to determine the enforceability of forum-selection clauses. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990). Forum-selection clauses are "prima facie valid." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). "The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." *Stewart Organization, Inc.*, 487 U.S. at 29. Such clauses have "the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). "The district court also must weigh in the balance the convenience of the witnesses and those public- interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.' " *Stewart Organization, Inc.*, 487 U.S. at 30. Thus, in addition to the forum selection clause, other factors this Court must consider in deciding whether to transfer an action under section 1404(a) are: (1) the location of the events giving rise to the suit; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access of proof; (5) the availability of process for unwilling witnesses; (6) plaintiff's choice of forum; (7) a forum's familiarity with the governing law; (8) trial efficiency; and (9) the interest of justice. *O'Brien*, 1998 WL 514692, at *5.

*3 Although it is true that a plaintiff's choice of forum is generally entitled to great weight, in this case, the parties voluntarily entered into a contract with a forum-selection clause. The Corporate Vendor Buying Agreement [FN2] specifically incorporated the Purchase Order Agreement, containing the terms and conditions applicable to the Buying Agreement, including a concise statement that the courts within the State of Georgia are to have exclusive jurisdiction. Plaintiff does not allege that the clause itself was obtained by fraud, or that the result would be unjust if the clause were

enforced. *See Carnival Cruise Lines,* 499 U.S. at 593-95. Accordingly, we hold that the forum-selection clause is valid. This is a "significant" factor weighing in favor of transfer. However, our inquiry does not end here. The burden shifts to the plaintiff to show why the contractual provision should not be enforced based upon the relevant factors under section 1404(a). *K. Gronbach & Assoc., Inc. v. Champion Motor Leasing,* No. CIV 3:97CV13(AHN), 1997 WL 409523, at *3 (D.Conn. June 24, 1997).

> FN2. The Corporate Buying Agreement was a skeletal, one-page fill-in-the-blank document, indicating the vendor, payment terms, and "check-off" items concerning matters such as charges for pallets, displays, whether the vendor offers volume rebates, etc. At the bottom, just above the signature lines was the following Acknowledgement:
> I have read the NEW VENDOR INFORMATION PACKET and the PURCHASE ORDER AGREEMENT, including the terms of indemnification, and agree to the stated terms as a basis for future business with Home Depot U.S.A. Any terms not agreed upon as stated and negotiated satisfactorily with the appropriate Merchandiser are stated in writing signed by the Merchandiser and attached. *LesCare Kitchens, Inc. hereby agrees to market with the Home Depot Expo only. This agreement subject to geographic additions of new Expo stores.*
> The highlighted sentences were added by the parties to the standard acknowledgement.

Most of the factors affecting transfer are neutral for both parties. One party has its headquarters and corporate witnesses and documents in Connecticut; the other has them in Georgia. Negotiations for the contract took place in and between Georgia and Connecticut. Witnesses and documents are split between the two jurisdictions, with a number of witnesses located elsewhere at Home Depot retail outlets and Expo Centers throughout the United States. Finally, the interest of justice issue is neutral or tipped slightly in favor of Georgia. Certainly, the contract claims would be governed by Georgia law based on the choice-of-law provision in the contract. Whether each of the other claims will be governed by Georgia or Connecticut law will depend on a careful analysis of each claim under the forum's choice-of-law rules. However, none of the issues appear to be so complex or present such novel issues as to weigh in favor of one jurisdiction or the other.

*See Van Dusen v. Barrack,* 376 U.S. 612, 645, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)(noting the advantage of having the trial of a diversity case in a forum that is at home with the state law that will govern the case).

While most of the above cited factors are neutral, the forum-selection clause and the choice-of-law provision weigh heavily in favor of transferring this case to Georgia. The parties voluntarily agreed to these provisions. Consideration of these significant factors along with the relevant section 1404(a) factors leads the Court to conclude that justice would best be served if the motion to transfer is granted.

### Attorney's Fees

Defendant has also requested attorney's fees incurred in connection with bringing this motion to transfer based upon paragraph 29 of the Purchase Order Agreement, which provides:
> 29. Should the Home Depot use the services of an attorney to enforce any of its rights hereunder, or to collect any amounts due, Vendor shall pay the Home Depot for all costs and expenses incurred, including reasonable attorney's fees.

*4 Because this agreement gave defendant the right to insist upon this action being litigated in Georgia, which right it sought to enforce through the instant motion, the Court finds that reasonable attorney's fees are appropriate.

### Conclusion

Accordingly, Defendant's Motion to Transfer [Doc. # 3] is GRANTED. Defendant's Motion for Attorney's Fees is also GRANTED. The defendant is directed to submit an affidavit detailing its request for attorney's fees incurred solely in connection with this motion within ten (10) days of the date of this decision. The plaintiff shall then have seven (7) days to file any objection thereto.

Defendant's Motion, in the Alternative, to Dismiss is DENIED.

The Clerk is directed to transfer this action to the United States District Court for the Northern District of Georgia, Atlanta Division, following a ruling by this Court on the amount of attorney's fees

1998 WL 720536                      **Page 21**
(Cite as: 1998 WL 720536, *4 (D.Conn.))

to be awarded defendant. SO ORDERED.

1998 WL 720536, 1998 WL 720536 (D.Conn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Page 21

Date of Printing: OCT 24,2003

## KEYCITE

CITATION: LesCare Kitchens, Inc. v. Home Depot U.S.A., Inc., 1998 WL 720536 (D.Conn., Sep 29, 1998) (NO. 3:98CV1354 (GLG))

**History**

=>     1 **LesCare Kitchens, Inc. v. Home Depot U.S.A., Inc.,** 1998 WL 720536
       (D.Conn. Sep 29, 1998) (NO. 3:98CV1354 (GLG))

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

1997 WL 205764  
(Cite as: 1997 WL 205764 (D.Conn.))

Page 43

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

MEDNET, MPC CORPORATION  
v.  
SPECTERA, INC., et al.

No. CIV. 3:95cv2723(AHN).

March 11, 1997.

*RULING ON PENDING MOTIONS*

NEVAS, District Judge.

*1 Plaintiff, Mednet, MPC Corporation ("Mednet"), brings this breach of contract and tortious business interference action in diversity against defendants Spectera, Inc. ("Spectera"), [FN1] Value Health, Inc. ("Value Health"), and ValueRX Pharmacy Program, Inc. ("ValueRX").

> FN1. Mednet originally filed this action against United Healthcare, Inc. ("United"). Effective January 1, 1996, United changed its name to Spectera, Inc.

Presently, Mednet moves to sever and transfer, pursuant to Rule 21, Fed.R.Civ.P. and 28 U.S.C. § 1404(a), respectively, its claims against ValueRX to a related proceeding pending in the United States District Court for the District of Maryland ("Maryland Action"). Alternatively, Mednet requests a stay of its claims against ValueRX pending adjudication of the Maryland action. ValueRX moves to enjoin the Maryland action. For the following reasons, Mednet's motion to sever and transfer [doc. # 55] is GRANTED and ValueRX's motion to enjoin [doc. # 51] is DENIED.

*BACKGROUND*

Mednet is a Nevada corporation that provides mail order prescription services. Its principal place of business is in Nevada. (*See* First Am. Compl. ¶ 1.)

Spectera is a Maryland corporation that provides health care cost containment programs and health care services in the prescription, optical, and dental markets. (*Id.* ¶ 4.) Spectera has its principal place of business in Maryland. (*See id.*)

On August 29, 1992, Spectera and Mail-Rx, a Maryland corporation, entered into an Exclusive Supply Agreement ("ESA") whereby Spectera agreed to purchase all of its customers' requirements for mail order pharmaceutical products from Mail-Rx. (*See* First Am. Compl. ¶¶ 8, 18.) Spectera purchased these requirements through its "customer" Applied Pharmaceutical Services ("APS"), a division of Spectera. (*Id.* ¶ 20.) The ESA provides that it is to be construed in accordance with the laws of Maryland. (*Id.* Ex. A at 3.)

On April 5, 1993, Mednet purchased Mail-Rx and on April 30, 1993, Mail-Rx assigned its rights in the ESA to Mednet. (*Id.* ¶ 23.) The assignment agreement between Mail-Rx and Mednet is also governed by the laws of Maryland. (*Id.* Ex. B at 2.)

On October 1, 1993, Spectera sold APS to ValueRX, a Michigan corporation with its principal place of business in Michigan. ValueRX also transacts business in Maryland and Connecticut. (*Id.* ¶¶ 3, 11, 27.) ValueRX is a subsidiary of Value Health, a Delaware corporation with its principal place of business in Connecticut. (*Id.* ¶¶ 2, 3.)

On December 22, 1995, Mednet brought the instant action against Spectera, Value Health, and ValueRX. Spectera moved to dismiss for lack of personal jurisdiction. In their memoranda of law, both Mednet and Spectera suggested that, as an alternative to dismissal, the court transfer the entire action to the District of Maryland. By letter, dated May 30, 1996, Value Health objected to such a transfer because it was not subject to personal jurisdiction in Maryland. (*See* Pl.'s Mem. Ex. A.) [FN2] In the same letter, however, ValueRX represented that it did *not* oppose a transfer. (*See id.*) [FN3]

> FN2. Value Health argued that transfer, pursuant to 28 U.S.C. §§ 1404(a) or 1406(a), would be impermissible because Value Health is not subject to personal jurisdiction in Maryland, *see Springle v. Cottrell Eng'g Corp.,* 40 Md.App. 267, 391 A.2d 456, 469 (Md.App.1978) (corporation's designation of agent for service of process in Maryland does not, without additional forum contacts, confer personal jurisdiction) and,

1997 WL 205764
(Cite as: 1997 WL 205764, *1 (D.Conn.))

Page 44

therefore, the action could not originally have been brought there. *See* 28 U.S.C. §§ 1404(a), 1406(a). (*See* Pl.'s Mem. Ex A.)

FN3. Both Value Health and ValueRX are represented by the Connecticut firm of Day, Berry & Howard.

*2 On August 15, 1996, the court granted Spectera's motion to dismiss because Spectera's appointment of a Connecticut agent for service of process and registering to transact business here was not sufficient to confer personal jurisdiction over it in Connecticut. *See Mednet v. United Healthcare. et al.*, 3:95cv2723(AHN), slip op. at 15 (D.Conn. Aug. 15, 1996) (Ruling on Motion to Dismiss). The court declined, however, to decide the transfer issue because neither Mednet nor Spectera had filed a formal motion. *Id.* at 15 n. 4. On September 13, 1996, the court, upon reconsideration, affirmed its dismissal of Spectera and denied Mednet's request to sever and transfer its claims against Spectera to the District of Maryland because of Mednet's failure to file a memorandum of law as required by the Local Rules. *See Mednet v. United Healthcare, et al.*, 3:95cv2723(AHN), slip op. at 1 (D.Conn. Sept. 13, 1996) (Ruling on Pending Motions).

On September 30, 1996, Mednet filed suit against Spectera and Value RX in the District of Maryland. Mednet's claims against ValueRX in Maryland are identical to those pending in Connecticut.

## DISCUSSION

Mednet now requests that its claims against ValueRX in this court be severed and transferred to the District of Maryland because the balance of convenience favors litigation in that forum. Relying on the first-filed rule, ValueRX seeks the converse; to enjoin the later-filed action in Maryland with respect to itself in favor of proceeding here.

These motions do not present a "race to the courthouse" scenario. It is undisputed that this action was filed ten months before the Maryland action. In such circumstances, it is well established that, absent a balance of convenience or special circumstances weighing in favor of a later-filed action, the first suit should have priority. *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989). The "first-filed" rule provides that "where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action." *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir.1974).

"The application of the first-filed rule should not be slavish, however, and a district court should, in its discretion, examine the circumstances closely to determine if there are special considerations." *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F.Supp. 211, 215 (S.D.N.Y.1995); *accord Roller Bearing Co. of Am. v. Emerson Power Transmission Corp.*, 3:95cv2583, slip op. at 8 (D.Conn. Feb. 12, 1996) ("The 'first-filed' rule should not be applied in a 'mechanical way' without taking other factors into consideration.") (quoting *Hammett v. Warner Bros. Pictures, Inc.*, 176 F.2d 145, 150 (2d Cir.1949)).

When, as here, a party contends that the balance of convenience warrants a departure from the first-filed rule, courts have applied the same factors considered on a motion to transfer under § 1404(a). *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 133 (S.D.N.Y.1994) (citing cases). Thus, the court can resolve both ValueRX's motion to enjoin and Mednet's motion to sever and transfer by considering one set of factors. It is well settled that the balancing of these factors " 'should be left to the sound discretion of the district courts.' " *Id.* at 132 (quoting *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969)).

*3 Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a) (West 1993). Factors for the court to consider include:
  "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based

1997 WL 205764                                                              Page 45
(Cite as: 1997 WL 205764, *3 (D.Conn.))

on the totality of the circumstances."
*800-Flowers,* 860 F.Supp. at 133.

Applying these factors, the court concludes for the following reasons that the balance of convenience warrants departure from the first-filed rule and favors severing and transferring Mednet's claims against ValueRX to the District of Maryland. At the heart of this litigation is a requirements contract originally made between two Maryland corporations, Spectera and Mail-RX, and the sale of Spectera's APS division to ValueRX, a Michigan corporation that transacts business in Maryland. At the time of the sale, APS was located in Maryland and remains there today as a division of ValueRX. Consequently, the documentary evidence, sources of proof, operative facts, and several of the key witnesses in this case--employees or former employees of Spectera, APS, or ValueRX--are located in Maryland. *See id.* at 134 (location of witnesses, physical evidence, and operative facts "major" and "important" factors when considering transfer motion). In addition, there is nothing in the record to suggest that litigation in Maryland would impose an undue burden on ValueRX. Indeed, it transacts business in Maryland and initially had no objection to litigation in that forum.

Finally, both the ESA and assignment agreement at issue are to be interpreted in accordance with Maryland law. *See Ferens v. John Deere Co.,* 494 U.S. 516, 530, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (diversity case should be tried in the "forum that is at home with the state law that must govern the case.") (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *Federal Ins. Co. v. May Dep't Stores Co.,* 808 F.Supp. 347, 350 (S.D.N.Y.1992) (declining to exercise jurisdiction over first- filed action in New York where policy at issue governed by Missouri law).

The court understands that this conclusion merely shifts the emphasis of this controversy to Maryland from Connecticut without eliminating one forum altogether. However, absent Spectera's consent to jurisdiction in Connecticut or Value Health's consent to jurisdiction in Maryland, consolidation in either forum is impossible. Because the totality-of-the-circumstances reveal that Maryland is the center-of-gravity of this controversy, the greater-part of this action should proceed there.

## CONCLUSION

*4 For the foregoing reasons, Mednet's motion to sever and transfer [doc. # 55] is GRANTED and ValueRX's motion to enjoin [doc. # 51] is DENIED. Mednet's claims with respect to ValueRX are hereby TRANSFERRED to the United States District Court for the District of Maryland.

SO ORDERED.

1997 WL 205764, 1997 WL 205764 (D.Conn.)

END OF DOCUMENT

KeyCite                                                                                        **Page 46**

Date of Printing: OCT 24,2003

# KEYCITE

CITATION:  ▷ **Mednet, MPC Corp. v. Spectera, Inc., 1997 WL 205764 (D.Conn., Mar 11, 1997) (NO. CIV. 3:95CV2723(AHN))**

## History
### Direct History

= >     1  **Mednet, MPC Corp. v. Spectera, Inc.,** 1997 WL 205764  (D.Conn. Mar 11, 1997)
            (NO. CIV. 3:95CV2723(AHN))

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

1996 WL 469667  
(Cite as: 1996 WL 469667 (S.D.N.Y.))  
C

Page 47

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

TODD'S POINT MARINE, LTD., Petitioner,  
v.  
Antonio ROJOS d/b/a Venus Maritime, and Comet Lines, Inc., Respondents.

No. 96 CIV. 5827 (SHS).

Aug. 19, 1996.

*OPINION AND ORDER*

STEIN, District Judge.

*1 Petitioner Todd's Point Marine, Ltd. ("Todd's Point") brought by order to show cause this petition for the appointment of an arbitrator and to compel arbitration against respondents Antonio Rojas d/b/a Venus Maritime ("Venus") and Comet Lines, Inc. ("Comet"). Oral argument was held on August 9, 1996 and the parties have submitted memoranda of law. After due consideration, IT IS HEREBY ORDERED THAT:

1. Todd's Point's petition for the appointment of an arbitrator and to compel arbitration is denied as moot insofar as Venus Lines Maritime has already appointed A.J. Siciliano as its arbitrator and is granted insofar as arbitration is compelled between Todd's Point and Venus Lines Maritime pursuant to the Charter Party dated May 10, 1996;

2. Comet's application to transfer venue pursuant to 28 U.S.C. § 1404(a) to the District of Puerto Rico is granted. Todd's Point seeks to compel arbitration against Comet as an assignee of the Charter Party. Comet denies the existence of a valid assignment. Todd's Point seeks to have this Court conduct an evidentiary hearing to determine whether or not Comet is an assignee of the Charter party. In light of a pending action between the same parties, Comet seeks to transfer this petition to the District of Puerto Rico. *See Maria Victoria Naviera, S.A. v. Cementos Del Valle, S.A.,* 759 F.2d 1027, 1031 (2d Cir.1985); *W.J. Nolan & Co., Inc. v. Midway Federal Credit Union,* 913 F.Supp. 806, 811 (S.D.N.Y.1996).

A motion to transfer venue pursuant to 28 U.S.C. § 1404(a) requires a threshold showing of the availability of an alternative forum. *See, e.g., Factors Etc., Inc. v. Pro Arts Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Rothschild v. Paramount Distillers, Inc.,* 923 F.Supp. 433, 437 (S.D.N.Y.1996); *CSY Liquidating Corp. v. Trinity Industries, Inc.,* No. 95 Civ. 4860, 1996 WL 44462, at *3 (S.D.N.Y. Feb. 2, 1996). Todd's Point argues that a court in the District of Puerto Rico lacks power under the Federal Arbitration Act to compel arbitration outside its own jurisdiction, *see* 9 U.S.C. § 4, and that since the Charter Party provides for arbitration in New York this Court is the only venue properly to consider its petition.

This argument, however, ignores the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") which "controls arbitration disputes in the international context." *Jain v. Mere,* 51 F.3d 686, 688 (7th Cir.), *cert. denied,* 116 S.Ct. 300, 133 L.Ed.2d 206 (1995). Todd's Point is incorporated outside the United States and does not claim to have its principal place of business in the United States, and the Charter Party is a commercial agreement; accordingly, the agreement falls within the Convention. *See* 9 U.S.C. § 202; *see Jamaica Commodity Trading Co. Ltd. v. Connell Rice & Sugar Co., Inc.,* No. 87 Civ. 6369, 1991 WL 123962, at *2 (S.D.N.Y. July 3, 1991).

*2 The Convention permits a court to "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206; *See Filanto, S.p.A. v. Chilewich Int'l Corp.,* 789 F.Supp. 1229, 1240 (S.D.N.Y.1992), *appeal dismissed,* 984 F.2d 58 (2d Cir.1993); *Oil Basins Ltd. v. Broken Hill Proprietary Co.,* 613 F.Supp. 483, 486-87 (S.D.N.Y.1985). Accordingly, a court in Puerto Rico can compel Comet to arbitrate in New York if it found that Comet was an assignee of Venus.

Upon a showing of an available alternative forum, this Court has "broad discretion" to grant or deny a motion to transfer venue based on a balancing of the following factors: plaintiffs' choice of forum, location of the operative facts, convenience of the parties and witnesses, location of documents and ease of access to sources of proof, relative means of the parties, the forum's familiarity with the governing law and trial efficiency and the interests of justice. *See CSY Liquidating Corp.,* 1996 WL

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1996 WL 469667
(Cite as: 1996 WL 469667, *2 (S.D.N.Y.))

**Page 48**

44462, at *3; *Pesin v. Goldman, Sachs & Co.*, 397 F.Supp. 392, 393 (S.D.N.Y.1975).

In this case, Todd's Point's choice of forum is not entitled to substantial deference because this district is not its home and this forum lacks a material connection to the issues of this case. *See, e.g., CSY Liquidating Corp.*, 1996 WL 44462 at *3. Furthermore, the potential witnesses are located in Connecticut and Florida and hence all will need to travel to testify regardless of the venue. *Id.* at *4. Neither party suggests that any witnesses would be unavailable in one or the other venue. The documents and access to proof favor neither venue. The location of the operative facts, trial efficiency and the interests of justice, however, militate strongly in favor of transferring this action to the District of Puerto Rico. An action between these same parties is currently pending in that court; that action involves the same facts that Todd's Point seeks to arbitrate. Furthermore, the vessel that underlies this dispute is currently under arrest there.

Accordingly, this action is hereby transferred in the interests of justice to the District of Puerto Rico.

3. The Clerk of Court is directed to close this case on the active docket of this Court.

SO ORDERED:

1996 WL 469667, 1996 WL 469667 (S.D.N.Y.)

END OF DOCUMENT

KeyCite                                                                                    **Page 49**

Date of Printing: OCT 24,2003

## KEYCITE

CITATION:  Todd's Point Marine, Ltd. v. Rojos, 1996 WL 469667 (S.D.N.Y., Aug 19, 1996) (NO. 96 CIV. 5827 (SHS))

**History**

=>   1  **Todd's Point Marine, Ltd. v. Rojos,** 1996 WL 469667  (S.D.N.Y. Aug 19, 1996) (NO. 96 CIV. 5827 (SHS))

© Copyright 2003 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.