

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AJUDU ISMAILA ADAMU, ET ALS<br>Plaintiffs | : CIVIL ACTION NO. 02 CV 2104 (GLG) |
| VS. | : |
| PFIZER, INC.<br>Defendants | : NOVEMBER 25, 2003 |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER PROCEEDING UNDER 1404(a)

At best, the defendant's Motion to Transfer is premature. The defendant originally filed a Motion to Stay the Connecticut action until a decision was received from the Second Circuit Court of Appeals concerning the New York action. The plaintiff and defendant both agreed to defer argument on the Motion to Stay in anticipation that the Second Circuit Court of Appeals might reach a final and meaningful decision. However to date, the Second Circuit Court of Appeals has still not done so. In fact, there were two issues raised before that higher court which remain unresolved to wit: whether the District of New York was a convenient forum versus Republic of Nigeria and whether or not the New York plaintiffs could bring their action basically under international law against the defendant Pfizer, Inc. However, the Second Circuit Court of Appeals did not

issue a final and meaningful decision with regard to either issue. Specifically regarding the issue of forum non conveniens, the Second Circuit Court of Appeals remanded it for further proceedings with respect to Pfizer's Motion to Dismiss on forum non conveniens grounds" *Abdullahi, et al v. Pfizer, Inc.* (02-9223) L, (02-9303) XAP. Further, the Second Circuit specifically indicated "we do not reach the subject of Pfizer's cross appeal concerning the propriety of the District Court's denial of Pfizer's rule 12 (b)6 motion". (i.e.) Whether international law claims can be brought against a non-governmental private corporate entity defendant such as Pfizer. It would seem that this District Court of Connecticut also believes that the Second Circuit Court of Appeals final decision would be relevant to the Connecticut action, but now it would seem as if that decision denominated as a summary order has still left outstanding a true decision on both issues, namely, the forum non conveniens and whether this case, as factually pled, could be based on international law against the defendant.

Even if this court believes there is sufficient information to be gleaned from the Second Circuit Court of Appeals summary order, there is a multitude of reasons why this case should remain in the District of Connecticut as opposed to being transferred to the Southern District of New York. The plaintiffs herein will respond to the defendant's memorandum in relative corresponding order.

With regard to the affirmation by defendant's counsel, it appears to add no weight to their argument for transfer. In fact, in paragraph 2, Attorney Herschlein indicates that he is licensed to practice law in the State of New York but apparently not in the State of Connecticut. The undersigned attorney for the plaintiffs similarly is licensed to practice law only in the State of Connecticut but at this point not New York. There is case law indicating that when the plaintiff chooses it's forum a transfer out of the forum requiring new counsel to appear is a factor which weighs against the transfer. *Jones v. Trump*, 919 F. Supp 583 and *Equipos Nucleares v. Fairfield Energy Venture*, 1989 WL 6628 S.D.N.Y.

Interestingly in paragraph 6 of Attorney Herschlein's affirmation, he admits that the Second Circuit Court did remand the case with the two issues remaining. Thus, his own affirmation confirms that the Second Circuit has not truly rendered a decision in this case.

By attempting to move to transfer this case to New York the defendant is also attempting to sidestep the "Connecticut issues and contacts" that would deflect a criticism of forum non conveniens. As noted in the briefs filed by plaintiffs objecting to the Motion to Stay, in our case, it is noted that the Connecticut litigation has significantly more contacts and involves issues of Connecticut law unlike the New York litigation that is based solely on international law. Notably, neither the New York District Court nor the

Second Circuit Court of appeals has been presented with the key issue at hand relating to the forum non conveniens argument, <u>namely, whether this case should be tried in Connecticut versus Nigeria. The District Court in New York and the Second Circuit Court of Appeals have only opined with regard to the issue of whether the District Court of New York is a better forum than Nigeria.</u>

The defendant would now like to have our District Court of Connecticut transfer this case while the issue of forum non conveniens has never been considered in Connecticut and is at the moment at best is in limbo in New York.  Thus, the defendant is attempting to obviate our solid legal arguments that this case belongs in the District of Connecticut and is trying to cause those arguments to be swept away potentially with the New York District Court decision.  The New York court can still conceivably send this case back to Nigeria after considering the Second Circuit Court of Appeals' remand advisories.  This, *inter alia*, would deprive the plaintiffs of the due process of being heard with regard to their arguments concerning why the District of Connecticut should be the venue for the eventual proceedings.  Additionally, the District Court in Connecticut would obviously have more experience per the decision in *Capitol Records, Inc. v. Optical Recording Corporation* cited at 810  F. Supp. 1350 (S.D.N.Y.) ruling upon issues of Connecticut Unfair Trade Practices Act, Connecticut Products Liabilities Act and

Connecticut Fraudulent Concealment Act (hereinafter referred to as "CUTPA, CPLA and CFCA"). These three State claimed statutory violations are alleged only within the Connecticut litigation not in the New York litigation. As stated in the plaintiffs' first brief on the issue of forum non conveniens, the plaintiff's aver multiple reasons, taken singularly or in combination in their memorandum as to why this case is suitable for disposition in Connecticut as opposed to New York.

(a) "Pfizer's Trovan drug test was devised, created, largely implemented, executed and reviewed at its Research and Development Headquarters in Groton, Connecticut, and the research team that went to Nigeria largely, if not exclusively, came from said headquarters in Connecticut;

(b) The review of data and the key relevant witnesses for Pfizer, Inc. were or are located in the State of Connecticut;

(c) This case, unlike the New York case, is also brought under the Connecticut Unfair Trade Practices Act, which is unique to Connecticut;

(d) This case is also brought under the Connecticut Products Liability Act, which is unique to Connecticut;

(e) The Trovan treatment protocol was developed, strategized, produced, promulgated, performed and designed within the District of Connecticut;

(f) Previously filed in this Court, *Walterspiel v. Pfizer, Inc.*, 98 CV 917 (JCH) filed May 18, 1998 and more specifically referred to within this complaint, which apparently was a whistle-blowing case brought by Dr. Juan Walterspiel against his employer Pfizer, Inc. for allegedly terminating him because he was one of the leading doctors involved in the Trovan drug testing program

|     | |
| --- | --- |
|     | who complained to Pfizer about what he believed to be its improprieties concerning the Trovan drug test which were discovered at the Groton, Connecticut facility of the defendant Pfizer, Inc.; See also ¶s 23, 38 and 39 of the plaintiffs' Complaint; |
| (g) | On or about June, 1997 FDA inspectors at Pfizer's Groton, Connecticut facility discovered approximately 45 inconsistencies in the drug testing data from Kano, Nigeria; |
| (h) | There are substantially more ties to the District of Connecticut for the reasons stated within plaintiffs' Complaint than New York, which limited tie seems to be that Pfizer, Inc., a Delaware corporation, has its corporate headquarters in New York City, whereas the main headquarters for anti-infective clinical development of Pfizer's global research and development world headquarters is in Groton and New London, Connecticut, which is the location that developed and produced and performed the preliminary testing of Trovan and designed the Kano treatment protocol; |
| (i) | This case is also brought under Connecticut General Statutes §52-595 which is a concealment statute unique to Connecticut." |

(see pages 6, 7, 8 and 9, Plaintiffs' Memorandum of Law in Opposition to the Defendant's Motion to Stay Proceeding, April 30, 2003). In fact the District of New York's limited nexus seems to be just that Pfizer, <u>a Delaware corporation</u>, has its corporate building headquarters in New York City.

Significantly, <u>all the cases cited by the defendant to transfer</u> the case from Connecticut to the Southern District of New York <u>do not involve a case such as ours where the transferee court has already ruled that the transferee court itself is an</u>

inconvenient forum.

In the instant case the plaintiffs chose Connecticut, and equally important, there are far greater contacts with this forum as opposed to New York. Moreover, the instant case is not couched solely on international law such as the New York case, but also based on three claims of three specialized Connecticut state laws referred to above. Thus, a transfer of this action from Connecticut to New York would be unreasonable and would cause prejudice to the plaintiffs because it would not allow them an opportunity to argue that Connecticut is a better forum than New York as this issue is neither before this Court nor the Second Circuit Court of Appeals.

If the Second Circuit Court of Appeals eventually overturns the New York plaintiffs' claim under F.T.C.A. and the Connecticut case had been transferred to New York that would leave the following undesirable scenario: The plaintiffs who brought their action in Connecticut would be in the New York court with their remaining state claims under three remedial Connecticut state statutes being adjudicated by a New York judge and a New York jury.

The defendant argues that the transfer should be granted in the interest of justice and for the "convenience of parties and witnesses" (defendant's memo page 1) This it claims because of the previous filed action in New York it would conserve the parties and

the court's resources by requiring "identical issues" to be litigated only once instead of twice and that "duplicative litigation" can be avoided and inconsistent results can be avoided citing *Wyndham Associates v. Bintliff*, 398 F. 2d 614. This begs the issue that the District Court of New York, the very Court that the defendant wants to transfer our action to, has already decided that the Southern District of New York is an inconvenient forum for a similar case, namely *Abdullahi v. Pfizer, Inc.* 01-818 (S.D.N.Y.). Moreover, there is no indication that it would conserve the parties energy nor are they complete and total identical issues between the Connecticut and New York litigation. There are some international issues that are the same, but the Connecticut action involves allegations of the CUTPA, CPLA and CFCA. Those laws and facts related to those Connecticut statutes are totally different than the law claimed in the New York action which is largely, if not exclusively, international law. Thus, <u>since the litigation in New York and Connecticut are not identical nor duplicative there may well be different results because the Connecticut action has three other claims of law unrelated to international law. Different results between the New York case and the Connecticut case therefore are not necessarily inconsistent results.</u> Further, the *Wyndham Associates v. Bintliff* case allowed a transfer in an entirely different scenario. In the Wyndham case, there were fourteen other similar actions pending in the transferee forum and ten of those had already been

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

transferred from the Southern District of New York. Further, in the Texas court there was a special Judge designated to supervise these cases and a significant amount of evidence had been before that court already. Interestingly, the Wyndham court also noted in 1968 "it would be a disservice to overburden the already overburdened Southern District of New York" Wyndham at 398 F. 2d 620. It is probably a reasonable assumption to conclude that the Southern District of New York is still, if not more so, burdened than the District Court of Connecticut in 2003. This of course would mitigate against the transfer.

The defendant then cites the **Excelsior** case for the proposition that a related action pending in the transferee court weighs heavily towards transfer. However, in that case there were already twenty-two (22) cases pending in the transferee court unlike our case where there is only one case pending in the Southern District of New York. In fact, that court stressed "the existence of twenty two related actions further strengthens the importance of this factor" APA Excelsior III, L.P. v. Premiere Techs, Inc. 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999). Moreover, in the Wyndham case as well as the Excelsior case, the transferee court had significant contacts to the litigation in New York. In our case, probably at best the defendant can claim that it's corporate building headquarters is in New York even though it's a Delaware corporation and little or no significant activity in

New York is alleged to have occurred. On page 2 of the defendant's memo they indicate that Judge Pauley has developed a familiarity with the relevant issues common to both actions. This of course is not accurate because Judge Pauley has not considered at all the triple claims in the three specialized Connecticut statutes.

On page 3 of its Memorandum, the defendant alleges that their case in New York is "far more advanced". That does not seem to be a sole or even key factor under law and the defendant has cited no such case law to that effect. Additionally, it is questionable whether only rulings on a Motion for Forum Non Conveniens and the 12(b)(6) motion made by the New York court still under consideration by the Court of Appeals is <u>far more advanced</u>. Many of the cases cited by the defendant to support it's Motion to Transfer had already gone to trial or were certainly beyond the stage of the New York litigation. Additionally, the defendant's position in it's footnote on the bottom of page 3 is inaccurate. It inaccurately states that our Connecticut law claims will in the defendant's opinion assuredly be dismissed as claims by Nigerian citizens who were alleged to have been injured in Nigeria as a result of medical treatment received in Nigeria's government by Nigeria not Connecticut law. The defendant misapprehends the thrust of the allegations that the plaintiffs in Connecticut raise under the CUTPA, CPLA &

<01>

CFCA. <u>Much of the conduct referenced in the plaintiff's complaint allege causes of action under those statutes occurred in Connecticut.</u>

On page 4 of the defendant's memo they claim that only one federal court should decide the issue of which forum is convenient. However, it ignores the distinction that the Connecticut plaintiffs have chosen Connecticut as their forum and the issue of whether Connecticut is as opposed to New York is an inconvenient forum has not been decided at the trial level. Thus, the issue of whether Connecticut is a convenient forum cannot be decided by the Second Circuit Court of Appeals, as that higher court has not had that issue placed before them. This is critical where the plaintiffs are claiming substantial contacts in Connecticut as opposed to extremely limited contacts in New York.

On page 5 of it's brief, the defendant acknowledges that it has the burden of proof with regard to this motion. However, the case law indicates that it's not a light burden, in fact rulings are consistent that "the parties seeking the transfer bears the burden of making a <u>clear cut and convincing showing</u> that the transfer is warranted and "the moving party must specify clearly which evidence and witnesses it intends to rely on in the transferring district.... and show that the balance of convenience underlying <u>weighs heavily</u> in its favor. *Vassalo v. Niedermeyer*, 495 F. Supp. 757, *Levitt v. State of Maryland Deposit Insurance Fund Corp.* 43 F. Supp. 1485, *Lyons v. Puerto Rico Maritime Shipping*

*Authority*, 442 F. Supp. 1201, *Saperstone v. Kapelow*, 279 F. Supp. 781). The case of *The City of New York v. General Motors Corp*, 357 F. Supp. 327 indicates the parties seeking to invoke the transfer provisions of 1404 must establish not merely that the existing forum is inconvenient but that the balance of convenience <u>weighs clearly and substantially</u> in favor or the proposed transfer. Otherwise the court will not readily disturb plaintiff's choice of venue. As another case further notes "A transfer is inappropriate when it merely serves to shift inconveniences from one party to the other". *Rolls/Royce Motors, Inc. v. Charles Schmitt & Company*, 657 F. Supp. N 40 1060. Rolls/Royce case also made it clear that there must be significant reason to disturb plaintiff's chosen forum. Another Southern District of New York decision was even more forceful. In *Starlines, Ltd. v. Puerto Rico Maritime Shipping Authority* 442 F. Supp. 1201. The court indicated that the burden of persuasions weighs strongly in favor of the movant and "transfer will not be granted absent a <u>clear cut and convincing</u> showing by the defendant that the balance of the underlying convenience <u>weighs strongly</u> where. There the court refused to transfer a New York case to Puerto Rico <u>even though the Puerto Rico case had been brought first</u> and that Puerto Rico was not a considerably more convenient forum. Although it was believed that perhaps both suits ought to be consolidated to one forum, it was not clear that the forum was to be Puerto Rico. The defendants admit that the law also requires

that the transfer of action "will <u>enhance</u> the convenience of parties and witnesses". With regard to the convenience of parties and witnesses if anything the matter being tried in Connecticut would enhance the convenience as there are more relevant and material witnesses in Connecticut than in New York.

The defendant thereafter cites *National Union Fire Insurance Company of Pittsburgh v. Turtur*, 743 F supp. 26 as support for its Motion to Transfer. That case involved the <u>same parties</u> and <u>same issues</u>. Here we have different parties and beyond the international law claims we have in fact separate and distinct issues relating to the three (3) Connecticut causes of actions under three (3) Connecticut statutes. Moreover, unlike the defendant's case in New York, the <u>National Union Fire Insurance Company</u> case did not involve a situation where the transferee forum had already decided that its own forum was inconvenient and inappropriate. Additionally, in the National Union case the non-corporate defendants actually resided in the transferee state and the concurrent litigations were nearly identical if not identical. Similarly, the court in *River Road International v. Josephthal Lion & Ross, Inc.* 871 F. supp. 210. observed that transfer did enhance the convenience of the parties and the witnesses unlike our case where the convenience of the witnesses is probably better served in Connecticut. Also, in our case in contradistinction to the River Road case there are virtually no or limited contacts in the

transferee forum of the Southern District of New York. On the one hand, the plaintiffs in River Road had substantial contacts and significant witnesses in the transferee state. The River Road court specifically held that the convenience of the majority of parties and witnesses required a transfer to Florida. Even though the River Road New York case was filed before the Florida action that did not override the other factors thus showing the limited affect of the factor. As stated before in our case the New York action is not identical to ours even though it was filed first. Although the New York plaintiffs in Abdullahi action never filed an action in Nigeria <u>the plaintiffs in the Connecticut forum did file in Nigeria first</u>. Thus, they did file first with regard to the Kano Drug Test that is the subject of both the New York and Connecticut lawsuits.

Since the Connecticut action involves three (3) separate theories of law and facts thereto specific to three (3) separate Connecticut statutes, the evidence will not duplicate the evidence in the related New York action nor will the issues be identical. Since the plaintiffs in the Connecticut action have based part of their lawsuit upon the Connecticut Unfair Trade Practices Act by virtue of that statute the plaintiffs had to and did serve as required by law the Attorney General of Connecticut who has the opportunity to intervene and/or monitor this case under that law. However, if the case is transferred to New York it could raise an interesting issue about the inconvenience and the irony of the Attorney

General for the State of Connecticut being required to assist and/or monitor and/or civilly prosecute a federal action in the forum of New York utilizing Connecticut's case and Connecticut law.

The defendant, in addition to citing Wyndham, cites *Computer Assistance, Inc.*, 564 F. Supp. at 1058. That case is clearly distinguishable from our matter in that there was minimum contacts in the transferor State of Connecticut though it re-echoed the burden that a moving party must "make out a clear cut case for transfer" citing *Ruskay v. Reed* 225 F. Supp. at 381.

The defendant in its brief argued that Judge Pauley of the Southern District of New York should oversee our case as he is already familiar with the facts and legal issues. Judge Pauley is only familiar with the legal issues perhaps relating to international law and only to the facts and issues as they were considered at the rule 12(b)(6) level as the facts were thus accepted as true. Certainly Judge Pauley is not at all familiar with all the legal problems relating to the Connecticut state claims and certainly not the attorneys as they are different. Moreover, the exhibits of the case have not been particularly voluminous. Thus, the Wyndham decision is further inapplicable or unpersuasive to allow the transfer. There also is a case cited by the defendant's which was authored by Judge Goettel, *Capitol Records v. Optical Recording* 810 F. Supp. at 1350 ( Southern S.D.N.Y.

1992). As this court knows, the Capitol Records matter <u>did not transfer a case to a transferee court that had already decided the issue of forum non conveniens and specifically declared itself an inconvenient forum.</u> Further, in the Capitol Records case the transferee court judge had already provided over a <u>full blown jury trial</u> involving the <u>identical parties</u> and also involving patents that had developed and therefore the judge had developed a familiarity high technology patents which the court itself described as "notoriously difficult". Ironically, the court in Capitol Records noted that forum shopping occurs when the litigant selects the forum with only a slight connection to the factual circumstances of the action. That actually could be said of the present New York action in transferee the court in terms of a slight connection to the incident, but certainly the same cannot be said of the district of Connecticut with regard to its contacts to this case.

In the final theme of its brief, the defendant wrongfully asserts that the interest factors cited consistently in case law favor the transfer to the Southern District of New York. The defendant correctly cites the nine factors they have to be considered. Although they do so self-servingly and incorrectly by tilting them in their favor or claiming that they are neutral when they actually favor the plaintiffs.

## I. LOCATION OF EVENTS GIVEN RISE TO SUIT

It is true that many of the events and the actual execution of the drug test occurred in Nigeria. However, the Connecticut action is based not only on international law but CUTPA, CPLA and CFCA. The location of those claimed violations of the State of Connecticut law occurred in Connecticut. As was previously indicated perhaps *ad nauseum*.

> "Pfizer's Trovan drug test was devised, created, largely implemented, executed and reviewed at its Research and Development Headquarters in Groton, Connecticut, and the research team that went to Nigeria largely, if not exclusively, came from said headquarters in Connecticut; **Also see Paragraphs a-h on pages 5-7 of the defendant's memo indicating other connections to the Connecticut forum**.

Moreover, the Pfizer doctors who went to Nigeria were board certified under the State Board of Connecticut. Further, the review of data and the key relevant witnesses for Pfizer, Inc. concerning the Nigerian drug test were located in Connecticut, and the Trovan drug treatment protocol was developed strategized, produced, promulgated, performed and designed within the District of Connecticut. After the Kano Drug Test, the FDA inspectors came to the Groton, Connecticut facility and discovered approximately forty-five inconsistencies relating to this drug testing. Also, the allegations here in our case under CUTPA, CPLA and CFCA deal with deceptive practices many of which

occurred or originated in Connecticut before and after the drug test, and little or nothing occurred in New York. This factor is overwhelmingly in favor of the Connecticut venue.

## II. THE CONVENIENCE OF THE PARTIES

It certainly is not inconvenient for Pfizer to defend this case in Connecticut as that is one of their main headquarters and in fact the headquarters for which the drug test emanated. Further, this multi-billion dollar international corporation with strong roots to Connecticut has already hired counsel in Connecticut. On the other hand, the reverse cannot be said for the individual impecunious plaintiffs with regard to their counsel in Connecticut who does not currently practice in New York. As stated, there are cases factoring the economic disadvantage of a party in having to secure new counsel and is to be factored against the transferor in a Motion to Transfer. See *Jones v. Trump*, 919 F. Supp. 583 cited infra. Also, *Equipos Nucleares v. Fairfield Energy Venture*, 1989 WL 6628 S.D.N.Y. It can also be pointed out that courts have held that where cases are involving the same facts, discovery in two actions can be coordinated without a transfer. Thus, with regard this, the best that the defendant can argue is a neutral factor but this factor actually mitigates in favor of the plaintiff.

Cited by the defendant itself, *Delaware Credit Corp. v. Arnoff* also indicated that the court should consider whether both defendant and plaintiff already have counsel in