the forum state and if they do than that should be a consideration mitigating against transfer because it would duplicate attorney's fees. Also see *Equipos Nucleares v. Fairfield Energy Venture*, 1989 WL 6628 S.D.N.Y. The undersigned attorney for the plaintiffs similarly is licensed to practice law only in the State of Connecticut but at this point not New York. This should be a factor debilitating strength of defendant's Motion to Transfer, *Jones v. Trump*, 991 F. Supp 583. The Connecticut court also gave consideration to the fact that the plaintiff would not have to incur the cost of retaining New York counsel since he was already pro se. This consideration flows in favor of the fifty-six plaintiffs who brought the action in Connecticut who have already retained Connecticut counsel in which the case has been pending for almost a year.

## III. THE CONVENIENCE OF THE WITNESSES

There are probably some witnesses remaining in Connecticut and certainly more witnesses in Connecticut than New York that will be germane and fundamental to this case brought by the plaintiffs in Connecticut. In fact, of the proof that is in the United States the overwhelming majority of it is in New London/Groton, Connecticut, if not almost exclusively. Therefore this factor is in favor of Connecticut

## IV. AVAILABILITY OF PROCESS FOR UNWILLING WITNESSES

This factor favors Connecticut as there may be employees of Pfizer in Connecticut that have to be compelled to testify in spite of the defendant's assertions in its affirmation. Although Pfizer is a multi-billion dollar international corporation, it cannot force people to testify in a particular federal forum. Of note, in defendant's brief on page 10 and 11 they indicate "Pfizer was aware of no employee or former employee subject to process in the District of Connecticut is not subject to process in the Southern District of New York". Quite to the contrary, many of the critical witnesses, including the doctors involved in the project who still remain in Connecticut probably do live beyond one hundred (100) miles of the New York courthouse but do not live beyond one hundred miles of the federal courthouse in Waterbury, Connecticut.

## V. PLAINTIFF'S CHOICE OF FORUM

Here the defendant claims that the plaintiff's choice of forum factor is not entitled to substantial deference, citing *Todds Point Marina v. Rojos,* 1996 WL 469667 and *Aetna Life & Cas. Co. v. Christie*, 1997 WL 280520. Obviously, again the defendant has the <u>heavy burden</u> as our plaintiffs did choose the forum of Connecticut. The Todd case is distinguishable because there the court weighed two actions pending in two different forums with the <u>same parties</u>. Here in Connecticut we have <u>approximately fifty-six</u>

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

different <u>parties</u>, with the New York action having at least thirty of its own. More importantly there is no identity between the parties in New York and Connecticut whatsoever. Further, the Todd case supports the plaintiff's position that the factor of plaintiff's choice of forum in this case should be given strong consideration because the Todds case dealt with a plaintiff who brought the action in a forum which "lacks material connection to the issues of the case" Todd, at 3 citing *CSY Liquidating Corp.* 1996 WL 44462 at 3. This is in contradistinction to our case, (see pages 5-7 and page 17 of this brief) all referencing the multiple and substantial connections to the Connecticut forum. Moreover, in that case the relative ease of access to documents favored the transferor state. Additionally, the Todd court noticed that the location of the operative facts also favored the transfer in that case where in our case it is clear that the operative facts particularly with regard to all the violations of three separate Connecticut State laws all occurred in Connecticut not New York. Finally, the Todd court not only noted that in their litigation, the <u>parties</u> were <u>identical</u> between the two forums and they were <u>same facts</u>. Our case will have different facts because of the claims of the very specialized Connecticut state statutes applicable in our matter. Interestingly, another case cited by the defendant reaffirms that the moving party does bear the burden of establishing that there should be a change of venue and that the balance of factors not only must be in

favor of the transferor but "<u>weighs strongly</u> in favor of transferring the case" *Aetna Life & Cas. Co. v. Christie* 297 WL 280 520 *2. Additionally, in that the Aetna case which was attempting to be transferred from the forum of Connecticut, there was no connection with the forum whatsoever. Christie was a resident and citizen of California and had never been to Connecticut, the issue at hand occurred in California, all the medical surgeries all major events happened in California and all the witnesses were in California. In fact, the court stated that the financial burden of litigating the case in Connecticut would be so great that Christie would most likely allow a default judgment enter against them if the case remained in Connecticut. Obviously our case is a horse of a different legal color. There are substantial ties to Connecticut in this case and interestingly, little if no contacts in New York other than Pfizer having its corporate headquarters in New York City.

Our District court in a case cited by the defendant, *MedNet MPC Corporation v. Spectera, Inc.* 1997 WL 205764, ruled citing *Ferens v. John Deere Co.* 494 US 516 that cases should be tried in the forum that is home with the state law that must govern the case. The defendants might respond that the law being used will be Nigerian law or international law but that obviously is erroneous with regard to the Connecticut plaintiff's claims under CUTPA, CPLA and CFCS. Case law has consistently indicated that the choice of forum of the plaintiff is a factor and perhaps the most influential factor as noted

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

in *Eddy v. Inland Bay Drilling and Workover, Inc.* 784 F. Supp. 370 at 376. Here the court also indicated that location of counsel is important and again as was indicated here the undersigned currently is not licensed to practice in New York. However, that court indicated where the alleged wrong occurred was critical. The possibility of delay and prejudice if the transfer is granted again stating the "the plaintiff's choice of forum is most influential and should rarely be disturbed unless the balance is <u>strongly in defendant's favor</u> (*Avemco Insurance Company v. GSF Holding Corporation*, 1997 WL 566149). That case indicated a court may transfer an action <u>only if</u> the transfer <u>would promote</u> the convenience of the parties and witnesses and would be in the interest of justice but that it's a <u>heavy burden and the plaintiff's choice of forum is generally given substantial weight</u> particularly where there is material connection with the district. This court described the fact that the moving party has a "significant burden of making a clear and convincing case that a case should be transferred (*Avemco Insurance Company v. GSF Holding Corporation*, 1997 WL 566149). Even in a case cited by the defendant *Van Deusen v. Barrack*, 376 US 612. The court noted that the matter is to be weighed in assessing convenience and fairness are "pervasively shaped by the contours of the applicable laws". Note that that is true because the law will "obviously govern what facts will be relevant and irrelevant. The court went on further to say "not only do the rules that thus

affect the convenience of the given place of trial, but they also bear a consideration such as judicial familiarity with governing laws". Moreover, the Van Deusen jurists specifically indicated that it is important for "the trial be held in the state in which the causes of action arose and in which the federal judges are more familiar with the governing laws". In our litigation the claimed violations of CUTPA, CPLA and CFCA occurred here in the forum of Connecticut and our remedial statutes for which a Connecticut judge would obviously be or conversant. The court went on to note that in the trial diversity case that the forum is at home with state law with problems "in law foreign to itself" citing *Gulf Oil Corp. v. Gilbert*, 330 US 501 at 509 citing *Van Deusen* at 645.

In response to remarks contained in defendant's brief, on page 10 they again wrongfully indicate that our case is "virtually identical to Abdullahi" bringing identical claims under international law and therefore conclude to try the case in Connecticut and New York would be duplicative litigation which could lead to inconsistent results (defendant's memo page 11 quoting Wyndham Associates 398 F. 2d 619).

In our brief we have distinguished Wyndham, but again the New York case and Connecticut case are different on several levels. Our case is not simply a personal injury action by foreign nationals as the defendant would suggest. It is a case of allegations of fraud immoral and oppressive action relating to a drug testing program that was blindly

spurred by the economic considerations of the billion dollar international corporation trying to reap a substantial monetary benefit without concern for the risk that the plaintiffs might suffer. The <u>tortious activities</u> are alleged to have <u>occurred here in the State of Connecticut</u> as the plaintiffs are claiming that the drug test was devised, executed and implemented in Connecticut and was fraught with improprieties.

The plaintiffs further <u>claim that the test data was falsified in Connecticut and that many of those witnesses involved are in Connecticut or have Connecticut roots.</u> Again, with regard to the plaintiff's choice of forum, the defendant incorrectly claims that that factor is neutral with respect to transfer by again correctly stating the plaintiff's case as merely personal injury suffered in Nigeria as a result of medical care they received in Nigeria ignoring all the specific claims made concerning violations of CUTPA, CPLA and CFCA are unique to Connecticut. These facts and issues therein are unique to this litigation and not alleged in the New York litigation. As stated before, CUTPA allows the Attorney General of Connecticut to become a party to this case and specifically is required to be given notice and has been given notice of this complaint as a right to appear. If the Attorney General does not appear in this case, he can still monitor the case. However, equally important if not more important is the fact that there are various claims of tortious and wrongful behavior by the defendant that occurred in Connecticut

before and after the Trovan drug test in Nigeria. Therefore, the plaintiff's choice of forum should be given more deference in this matter even though they are plaintiffs from a foreign country (particularly pending a Motion to Transfer) because they have not only chosen this forum but they have chosen it because there are substantial contacts with Connecticut and specific claims of violations of three state laws that are particularly unique to Connecticut.

## VI. FORUM FAMILIARITY WITH THE GOVERNING LAW

All the cases cited by the defendant admit that the familiarity with governing law is an important factor considering the transfer. Obviously the Federal Court in Connecticut is more familiar with CUTPA, CLPA and CFCA. The defendant does not claim that this was a neutral factor. In our case however, it only argues "governing law is only one of many factors to be considered". (Defendant's memo on page 13) It then tries to buttress its claim by citing a decision written by your Honor himself, *Lescare Kitchens, Inc. v. Home Depot, USA*, 1998 WL 720536. The defendant incorrectly distills that decision by claiming the court flatly rejected plaintiff's contention that a Connecticut court has greater familiarity with and is a more appropriate forum to rule on plaintiff's common law claims. (Defendant's memo page 13) *Lescare Kitchens, Inc.* supra does not support the defendant's position in this case and actually is consistent with the plaintiffs' position

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

objecting to the transfer from Connecticut to New York. In the *Lescare Kitchens, Inc.* decision Judge Goettel noted that "while most of the above cited factors are neutral (referencing the nine factors cited in defendant's brief on page 10, <u>the forum selection clause and the choice of law provision weigh heavily in favor of transferring this case</u> to Georgia especially because "<u>The parties voluntarily agreed to these provisions</u>" *Lescare Kitchens, Inc.*, supra. As this court knows, the forum selection clause in Lescare was negotiated by the parties who had operated under this agreement for several years and agreed to Georgia so their forum to resolve disputes. Moreover, another provision in that contract provided that the contract would be construed in accordance of the laws of the State of Georgia so the court further observed "the presence of a forum selection clause such as the parties entered into in this case would be a significant factor" *Lescare Kitchens, Inc.*, supra in turn citing *Stewart Organization, Inc.* 487 US at 20. Notably, the court also remarked that "it is true that a plaintiff's choice of forum is generally entitled to great weight" *Lescare Kitchens, Inc.* "This is a significant factor weighing in favor of transfer...the burden shifts to the plaintiff to show why the contractual provision should not be enforced based upon the relevant factors under Section 1404a" *Lescare Kitchen, Inc.* *3. Finally, in the Lescare matter, most of the factors affecting the transfer in that case were neutral. Here, in our case several factors are clearly and strongly in favor of

the Connecticut forum, namely: the location of the events given rise to the suit; plaintiff's choice of forum; forums familiarity with the governing law, to wit, specifically CUTPA, CPLA and CFCA.

## VII. RELATIVE ACCESS OF PROOF

Relative ease of access of proof favors Connecticut particularly with regard to the three causes of action specifically under Connecticut statutes as well as even the violations of international law, as many of those activities and claimed violations occurred in Connecticut. The availability process for unwilling witnesses would favor Connecticut as witnesses that live in the New London, Groton would probably not be within a 100 mile sweep of the Federal court in New York and would definitely be within the subpoena powers of the Federal court in Waterbury, Connecticut.

## VIII. INTEREST OF JUSTICE

Although the defendants argue that it is more judicially economic to have one case in New York it belies the fact that New York and Connecticut are neither the same case nor involving the same parties. The interest of justice would seem to support Connecticut as opposed to melding together in front of a New York court issues intimately involved with activities in Connecticut and Connecticut law. In fact it would seem to be contrary to the interest of justice to have a federal jury in New York hear the case when the plaintiffs

have brought their case in front of a Connecticut Federal Judge who obviously has more familiarity with the CUTPA, CPLA and CFCS and the legislative intent of the Connecticut legislature that passed these laws which were intended to be remedial.

In a case cited by the defendant itself, *Jones v. Trump*, a US District Court case in Connecticut, 919 F. Supp. 583 the court did transfer a case to New York because a substantial part of the events or omissions given rise to claim occurred in New York and conversely found that the Connecticut forum was actually improper because the events did not substantially arise from events or omissions in Connecticut. Additionally though the Connecticut court gave consideration to the fact that the plaintiff would not have to incur the cost of retaining New York counsel since he was already pro se. The corollary to that would be that our plaintiffs now may have to potentially retain New York counsel particularly in the case that does not need to be transferred to New York for all the reasons stated within. Further, the defendants allege in their brief that the New York Federal Judge Pauley has familiarity with the governing law in the case because he has written opinion on the international law claims. First, that opinion only deals with a 12(b)(6) motion and was heard and decided only at that level. Second, the New York Judge has heard no evidence or facts or information nor would he concerning the claims the plaintiffs in Connecticut are bringing under CUTPA, CPLA and CFCS. Therefore, it is a

half truth for the defendant to allege on page 12 of its memo that Judge Pauley is "already familiar with the governing law in this dispute". Moreover, the plaintiffs in Connecticut have not merely per the defendant's characterization "tacked on Connecticut State law claims onto their international law claims". Our Connecticut case pleads the inappropriate use of a drug which clearly would come under the Connecticut Products Liability Act and is also about a moral and oppressive behavior which also falls within the ambit of the Connecticut Unfair Trade Practices Act. Additionally, there are specific allegations of fraudulent concealment of these nefarious activities fall under the umbrella of the Connecticut Fraudulent Concealment Act cited as separate causes of actions. As stated, it is contrary to the interest of justice if the Second Circuit Court of Appeal overturns the New York plaintiff's claim under the F.T.C.A. and the Connecticut case has been transferred to New York because it would lead to the following undesirable scenario: The plaintiffs in the New York who brought their action in Connecticut litigation their claims in a New York court even though the remaining claims would be under three Connecticut remedial state statutes underpinned by the Connecticut legislature's intent potentially determined by a New York federal judge.

## IX. TRIAL EFFICIENCY

Again, it is not necessarily more efficient to try cases that have something in common in one location, particularly when the other interest factors or most of the interest factors favor the existing forum selected by the plaintiff. Since there are different parties and different claims, trial efficiency is not necessarily achieved by having these particular cases merged in one. At best, even if there is some trial efficiency it is more than offset by the heavy burden that the defendant must carry in transferring its case and that <u>five out of the nine factors overwhelmingly favor Connecticut and the remaining four are either neutral or slightly tipped in favor of Connecticut.</u> See *Jacobs v. Happiness Express, Inc.* 1996 WL 537825.

The defendant cited the case of *National Union Fire Insurance Co. of Pittsburgh v. Turtur* 743 F. supp. 26. That court did not consider the factor of having the case tried in a forum that is more familiar with the law to be used. Also in that case there were not only the same parties involved between the different jurisdictions but also the same issues. Obviously in that situation you would not necessarily want an inconsistent result. However, our case, even though it has similar issues relating to the international law claims it also has different parties and also has different issues with regard to the Connecticut state law claims. <u>Therefore, in our case with regard to those issues and</u>

<u>those state law claims, there could be different results because there is a difference in the law but that does not make them inconsistent results.</u> In fact the result of our two cases should not be compared because they are difference cases with different parties.

Interestingly, one of the cases cited by the defendant was tried by my present respected adversary Edward R. Scofield (*U.S. Surgical Corp. v. Imagyn Medical Technologies, Inc.*) 25 F. supp. 2d 40. That decision actually supports the plaintiff's position not to transfer this case. First, the court held that "it is sufficient that a substantial part of the events occurred in the forum state even if a greater part of those events occurred elsewhere...the court should not consider which of the two potential forums is the best one but should simply decide whether the forum in question has a substantial connection to the plaintiff's claims" citing Scico Enterprises Corp. v. Robins 19 F 3d 1278. This also supports the plaintiffs' eventual defense against a motion for forum non conveniens as it means that even though many of the events happened in Nigeria the fact that some happened in Connecticut should be sufficient to keep the case in our state. Moreover, with regard to the present Motion to Transfer, the defendant's own case again supports the denial of the transfer in the instant litigation because there is no question that Connecticut has a substantial connection to plaintiffs' very claims. This is obvious since many of them not only occurred in Connecticut, but the plaintiff is actually

utilizing three Connecticut State laws supporting three independent causes of action. The fact that New York has little or no connection not only to the Connecticut plaintiff's claims but probably to the New York plaintiff's claims as well it cannot be ignored and further support the plaintiffs' motion objecting to the transfer.

Defendant's citing of *Northern Tankers Ltd. v. Backstrom*, 934 F. Supp. 33, 38 entered by Judge Goettel does not deal with a transfer of venue case. However, it is instructive and supportive of the plaintiff's position rather than the defendant's position, because New York law was allowed to be applied in Connecticut because it was neither irrational nor arbitrary. The court did say that it could be considered irrational and arbitrary to apply New York law when such application would "frustrate the legitimate expectations of the parties or undermine an important policy of Connecticut." (*Northern Tankers, Ltd.*, supra). Here, because the action brought by the plaintiff in Connecticut is couched among other *inter alia* in violations of CUTPA, CPLA and CFCA violation of those Connecticut laws would deal with an important policy of the State of Connecticut" Particularly with the CUPTA, as mentioned before, it requires the plaintiff to give notice to the Attorney General of Connecticut because an unfair trade practice is claimed. The Attorney General has the right to intercede in the case but even if he doesn't the statute shows that the civil prosecution of those claims, even by a private plaintiff involves an

important policy of the State of Connecticut. It would seem obvious that the Connecticut legislature intended for violations of Connecticut Unfair Trade Practices Act and Connecticut Products Liability Act and the Connecticut Fraudulent Concealment Act to be civilly prosecuted in the situs of Connecticut.

## X. THE INTEREST OF JUSTICE

It would seem in the interest of justice to have a case litigated in a forum that has substantial connection to the litigation. For all the reasons cited in this brief, Connecticut has a substantial connection to this litigation where New York has none or little.

It would seem in interest of justice to have a federal court in Connecticut rule upon key issues of Connecticut law, particularly Connecticut laws that are meant as remedial to prevent oppressive and immoral practices and fraudulent practices, both in trade (CUTPA) and in relating to the pharmaceutical industry as protected by the CPLA and CFCA. All of these statutes were meant to protect people from activities that did occur in Connecticut. The allegations of the complaint relating to the wrongful drug testing affect Connecticut residents if in fact pharmaceutical companies are conducting drug testing like this in Africa to eventually use their drugs here in America, particularly in Connecticut. These state laws were made to prevent such occurrences from either happening or happening again.

<u>In sum, this case should not be transferred to New York because:</u>

1. The motion is premature as there has not been a final decision for the Second Circuit Court of Appeals;

2. The Connecticut litigation is distinct from New York litigation based on different parties, different issues and different laws;

3. The defendant has not met it's heavy burden to transfer by clear cut and convincing evidence.

4. Neither the interest of justice nor the convenience of the parties and witnesses tip in favor of the New York forum;

5. Considering the nine factors to be weighed by the court in a Motion to Transfer:

   a. The location of the violations clearly are in Connecticut .

   b. The convenience of parties tip in favor of the plaintiff that would have to seek new counsel;

   c. With regard to the convenience of witnesses, there are more witnesses in Connecticut than New York, thus the factor tips in favor of Connecticut.

   d. The relative ease of access of proof, since all if not the vast majority of American evidence is in Connecticut and none if little is in New York, this factor is obviously in favor of the Connecticut forum.

   e. The availability of process of unwilling witnesses would be in Connecticut not in New York because the New York court is probably more than 100 miles away whereas the Connecticut court clearly is within one hundred (100) miles of all potential parts of Connecticut and witnesses in

   Connecticut.

f. Plaintiff's choice of forum is obviously an undeniably strong factor in favor of the plaintiff.

g. The forum's familiarity with governing the law is also undeniably a strong factor in favor of the Connecticut plaintiff.

h. Trial efficiency. With regard to the fact that there are different issues and different parties and a different law not obliged the federal courts to have one trial and one forum in this matter and is more efficient for the Connecticut court to deal with Connecticut law, thus this factor tips in favor of the forum of Connecticut.

i. The interest of justice favors Connecticut for all the reasons taken singular and in combination with the above and within this brief and also that predominate Connecticut law, much of it remedial in scope should be applied by a Federal Judge sitting in Connecticut and the very forum the plaintiffs' brought the action.

Finally, even when factors are equal "when a factor which comes out evenly it should weigh in favor of the party opposing transfer" *Delaware Credit Corp. v. Aronoff* 1992 WL 17896 B.D.N.Y. citing *Austin v. International Brothers of Teamsters* 739 F. supp. 206.

Respectfully submitted,

ALTSCHULER & ALTSCHULER
FOR THE PLAINTIFFS

BY _____
Richard Altschuler
Federal Bar No.07212
509 Campbell Avenue
P.O. Box 606
West Haven, CT 06516
(203) 932-6464

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been mailed this 25th day of November, 2003, postage prepaid to all counsel of record as follows:

Edward R. Scofield, Esq. (ct 00455)
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Post Office Box 1740
Bridgeport, CT 06601-1740

Steven Glickstein (ct 15725)
James D. Herschlein (ct 24326)
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022

Attorneys for Defendant Pfizer, Inc.

The Honorable Gerard L. Goettel
United States District Court
District of Connecticut
14 Cottage Place
Waterbury, CT 06702

RICHARD ALTSCHULER