C

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

AVEMCO INSURANCE COMPANY, Plaintiff,
v.
GSF HOLDING CORPORATION, United Aerial Advertising of Delaware, Inc. Garrett S. Friedman, Robert Tucker individually and Edith Tucker as Administrators of the Estate of Joseph J. Tucker, Defendants.

No. 96 CIV. 8323 LAP.

Sept. 11, 1997.

MEMORANDUM AND ORDER

PRESKA, District J.

*1 Plaintiff AVEMCO Insurance Company ("AVEMCO") seeks a declaratory judgment against defendants GSF Holding Corporation ("GSF"), United Aerial Advertising of Delaware ("United Aerial"), Garrett S. Friedman ("Friedman"), and the administrators of the estate of Joseph Tucker. Plaintiff asserts that the insurance policy taken out by defendants excludes coverage for bodily injury to a pilot performing banner towing services, [FN1] thereby relieving plaintiff from any liability obligations to defendants for bodily injury suffered by decedent Joseph Tucker. GSF, United Aerial, and Friedman move to dismiss the complaint under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the United States District Court in Newark, New Jersey pursuant to 28 U.S.C. 1404(a). For the reasons set forth below, defendants' motion to dismiss is denied, but the motion to transfer is granted.

> FN1. This service involves airplanes pulling promotional banners over crowded areas, such as theme parks, concerts, or other events, to promote or advertise on behalf of commercial sponsors. (Complaint of *Tucker v. GSF, et. al.,* dated Aug. 20, 1996 ("Tucker Compl."), ¶ 15, Affidavit of Emilia Gabriele, sworn to on Jan. 2, 1996 ("Gabriele Aff."), Ex. C).

BACKGROUND

On or about June 28, 1995, plaintiff AVEMCO, a Maryland corporation with its principal place of business in Frederick, Maryland, issued a policy of liability and hull insurance to GSF and United Aerial for injury or death to occupants of one Bellanca 8GCBC aircraft, Reg. No. N86587. (Complaint ("Compl."), ¶ 4, Gabriele Aff., Ex. B). Defendants GSF and Friedman owned the Bellanca aircraft covered by this insurance policy. (Compl., ¶ 4, Tucker Compl., ¶ 12). The policy insured against potential aircraft injury, property injury, and bodily injury to an aircraft occupant. (Affidavit of Steven Bury, sworn to on Nov. 29, 1996 ("Bury Aff."), Ex. 5, Compl., ¶ 4).

United Aerial, a Delaware corporation with its principal place of business in Delaware, conducts regular activity at Allaire Airport in New Jersey. (Bury Aff., ¶ 8). United Aerial utilizes banner tow aircraft for the purposes of towing aerial banners on behalf of commercial sponsors. (Gabriele Aff., ¶¶ 2, 5, Tucker Compl., ¶¶ 15, 16). Defendant Friedman, a New Jersey resident, acts as owner, director, and principal of United Aerial. (Compl., ¶ 11). Friedman also acted as owner and director of defendant GSF. (*Id.* ¶ 9). GSF, a Delaware corporation, was dissolved before this litigation began. (Affidavit of Garrett S. Friedman, sworn to on Nov. 29, 1996 ("Friedman Aff."), ¶ 3). Neither GSF, United Aerial, nor Friedman maintain a corporate residence, bank account, office, or phone number in New York. (*Id.* ¶¶ 6-8).

On August 19, 1995, decedent Joseph Tucker ("Tucker") was piloting defendant GSF's and Friedman's aircraft when it crashed upon takeoff from Lufker Airport in East Moriches, New York. (Gabriele Aff., ¶ 5). At the time of the accident, decedent was employed by defendant United Aerial as an independent contractor to provide banner towing services. (Tucker Compl., ¶ 19). United Aerial routinely hires independent contractors to pilot its leased aircraft for commercial banner towing. (*Id.* ¶ 16). Friedman had also piloted the aircraft on that particular date. (Gabriele Aff., ¶ 5).

*2 Plaintiff seeks a declaratory judgment establishing that it is not obligated to defend or

indemnify GSF, United Aerial, or Friedman under the insurance policy at issue, because the policy expressly excludes coverage for injuries arising out of banner towing services. (Gabriele Aff., Ex. B). Defendants GSF, United Aerial, and Friedman move to dismiss the claim under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case pursuant to 28 U.S.C. 1404(a).

## DISCUSSION
### I. Standard of Review for Personal Jurisdiction

Defendants move to dismiss first based on lack of personal jurisdiction pursuant to Rule 12(b)(2). In a diversity case brought pursuant to 28 U.S.C. § 1332, personal jurisdiction is determined by the law of the forum state. *See, e.g., Omni Capitol Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 108, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *Savin v. Ranier,* 898 F.2d 304, 305 (2d Cir.1990); *Kulas v. Adachi,* 1997 WL 256957 at *2 (S.D.N.Y. May 16, 1997); *Mantello v. Hall,* 947 F.Supp. 92, 96 (S.D.N.Y.1996). Although the plaintiff bears the ultimate burden of proof, "until the evidentiary hearing is held, it need only make a prima facie showing by its pleadings and affidavits that jurisdiction exists." *CutCo Inds., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *see also Kulas,* 1997 WL 256957 at *2. Furthermore, as on any motion to dismiss, plaintiff is entitled to have its complaint and any affidavits interpreted, and doubts resolved, in the light most favorable to it. *See Cutco,* 806 F.2d at 365; *Landoil Resources Corp. v. Alexander and Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985); *Beacon Enterprises Inc. v. Menezies,* 715 F.2d 757, 763 (2d Cir.1983); *Editorial Musical Latino America, S.A. v. Mar Int'l Records, Inc.,* 829 F.Supp. 62, 64 (S.D.N.Y.1993).

The burden of proof required to establish a prima facie showing of jurisdiction may vary with the procedural posture of each case. Hence, " '[i]t is well settled that in considering jurisdictional motions, the Court may consider evidence outside of the pleadings in reaching its decision without necessitating the use of Rule 56." ' *Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 178 & n. 2 (S.D.N.Y.1995) (quoting *American Centennial Ins. Co. v. Seguros La Republica,* 1991 WL 60378, at *3 (S.D.N.Y. April 8, 1991)). In the instant case, because both parties have submitted materials outside the pleadings, I will consider these materials in addition to the original pleadings. However, because defendants challenge only the legal sufficiency of the plaintiff's jurisdictional pleadings, I note that plaintiff need only establish that its allegations constitute a prima facie showing of jurisdiction. *See Pilates,* 891 F.Supp. at 178 & n. 2; *see also Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

### II. Jurisdiction

#### A. *General Jurisdiction*

*3 Traditionally, the requirements of general jurisdiction are satisfied where the defendant has substantial contact with the forum state. *See Landoil,* 918 F.2d at 1043. Also, where defendant has substantial contact, the claim for which jurisdiction is sought need not necessarily arise out of a defendant's contact with the forum state. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In a diversity case, jurisdictional statutes of the forum state define the parameters of the substantial contact required to exercise jurisdiction. *See Savin,* 898 F.2d at 306. In New York, the requirements of general personal jurisdiction are codified by § 301 of the New York Civil Practice Law and Rules ("CPLR"). N.Y.C.P.L.R. § 301 (McKinney 1997). Section 301 permits a court to exercise jurisdiction over a foreign corporation if the defendant corporation is " 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its presence in this jurisdiction." ' *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981) (quoting *Simonson v. Int'l Bank,* 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427 (1964)); *accord, Hoffritz,* 763 F.2d at 58. In assessing the requirements of general jurisdiction, courts have generally focused upon traditional indicia of doing business: the existence of an office in New York, the solicitation of business in New York, the presence of bank accounts or other property in New York, and the presence of employees or agents in New York. *Landoil,* 918 F.Supp. at 1043; *Hoffritz,* 763 F.Supp.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

at 58.

Plaintiff does not dispute the asserted domicile of defendant Friedman or the corporate headquarters and principal places of business of GSF or United Aerial. Nor does plaintiff claim defendants have offices or bank accounts in New York. Instead, relying on *Laufer,* plaintiff claims that the aggregate and continuity of the defendants' corporate activities in the State of New York are such that they are present in the state within the meaning of § 301 and, thus, are doing in business in the state. *Laufer v. Ostrow,* 55 N.Y.2d 305, 311, 449 N.Y.S.2d 456, 459, 434 N.E.2d 692 (1982) (holding that regular or continuous corporate activity in New York, through solicitation in the state, was sufficient for general jurisdiction). I disagree.

The evidence does not show that Friedman's, GSF's, or United Aerial's contacts with New York are sufficient to subject them to general jurisdiction in New York. Plaintiff presented flight logs that document the decedent's flight hours and training records. (Gabriele Aff., Ex. C). However, the specific location of all these flights cannot be inferred from the exhibit. Also, the flight logs do not indicate what portion of the flights listed in plaintiff's affidavits account for what percentage of the defendants' business in the forum state. *See Landoil,* 918 F.2d at 1045-6 ("transactions must be considered not in isolation, but against ... a much larger business of which these transactions were but a small part."). Thus, under a traditional § 301 analysis, defendants' contacts with the forum state are not sufficient to constitute doing business in New York.

*4 Section 301 is not the only statute under New York law upon which a plaintiff may rely to establish general personal jurisdiction. Under the New York General Business Law:
> [T]he use or operation by a non-resident of an aircraft within or above this state or the use or operation of an aircraft within or above this state in the business of a non-resident ... shall be deemed equivalent to an appointment by such nonresident of the secretary of state as his true and lawful attorney upon whom may be served the summons in any action against him, growing out of any accident or collision in which such aircraft may be involved ... [and] shall be of the same legal force and validity as if served on him personally within the state and within the territorial jurisdiction of this court from which the summons issues ....

N.Y. Gen. Bus. L. § 250 (McKinney's 1997).

Because the decedent was operating "an aircraft within or above this state in the business of a non-resident," within the meaning of section 250 of the New York General Business Law, defendants are subject to general jurisdiction under § 250. *See Hayes v. Aeronaves de Mexico, S.A.,* 17 A.D.2d 630, 230 N.Y.S.2d 291 (1962) (holding that a pilot whose behavior properly fell within section 250 of the New York General Business Law was amenable to jurisdiction and service of process as a non-resident in the manner therein provided); *see also Kochenthal v. Kochenthal,* 52 Misc.2d 437, 275 N.Y.S.2d 951, 955-56 (Nassau Co., Nov. 21, 1966) ("legislatures in this and other states have found sufficient reason for the exercise of jurisdiction over those outside the state at the time of service in the special hazards to the public ... or aviator ....") ( *citing* N.Y. Gen. Bus. L. § 250). GSF owned the aircraft involved in this accident and leased the aircraft to United Aerial, who in turn employed the decedent. (Tucker Compl., ¶ 13). Friedman was the president of both GSF and United Aerial at the time of the incident. (Gabriele Aff., ¶ 5). Further, there is no evidence that defendants object to plaintiff's service of defendants. Therefore, under § 250, the use or operation of an aircraft in this circumstance subjects non-resident defendants to general jurisdiction; defendants have thus consented to jurisdiction in New York for the instant litigation.

B. *Due Process*

A finding of general jurisdiction under the laws of the forum state is only the first step of a complete jurisdictional inquiry. Any assertion of personal jurisdiction must also satisfy the due process clause of the Constitution. The exercise of general jurisdiction must be based upon the defendant's minimum contacts with the state and must comport with "traditional notions of fair play and justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Miliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

Random or sporadic contacts are insufficient to

support long-arm jurisdiction. Based upon the flight logs and specific business transacted by the defendants, defendants' contacts with New York may not be perceived as "random" or "attenuated." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 480, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). In addition, the minimum contacts must be generated from "some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *Burger King,* 471 U.S. at 475). Through operation and ownership of an aircraft in New York airspace, defendants availed themselves of the technological and safety benefits of an airport in New York. Thus, exercising general jurisdiction in this case is consistent with due process concerns. Therefore, defendants' motion to dismiss based upon lack of personal jurisdiction is denied.

III. Defendants' Challenge to Venue

*5 Defendants also move to dismiss based upon improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Venue is governed by 28 U.S.C. § 1391. The statute provides in pertinent part: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred .... " 28 U.S.C. § 1391(b). Where venue is challenged by a defendant, plaintiff bears the burden of proving that venue is proper in the forum state. *See Saferstein v. Paul, Mardinly, Durham, James,* 927 F.Supp. 731, 735 (S.D.N.Y.1996) (quoting *Jordache Enterprises, Inc. v. Brobeck, Phelger & Harrison,* 1994 WL 74860, at *3 (S.D.N.Y. Mar.7, 1994)).

I find that plaintiff AVEMCO has properly asserted venue in the Southern District of New York. The declaratory judgment sought in the instant case was triggered by an insurance claim arising exclusively from the aircraft accident in New York. (Compl., ¶¶ 17, 18, 26). Defendants allege that the insurance contract was negotiated through correspondence in New Jersey and, hence, venue may only be exercised in that alternative forum. (Bury Aff., ¶¶ 14-16). However, this allegation does not preclude the suitability of the present forum. *See Constitution Reinsurance Corp. v. Stonewall Insurance Co.,* 872 F.Supp. 1247, 1249 (S.D.N.Y.1995) (venue may be proper in more than one district). Therefore, the motion to dismiss for improper venue is denied.

IV. Transfer

Defendants also seek to transfer this action, under 28 U.S.C. § 1404(a), to the District Court of New Jersey in Newark. Section § 1404(a) states that, "[f]or the convenience of parties, and witnesses, and the interest of justice, a district court may transfer any civil action to any division or district where it might have been brought." 28 U.S.C. § 1404(a).

The decision to transfer an action "lies within the sound discretion of the district court." *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir.1993) (cited by *Friedman v. Revenue Management of New York,* 38 F.3d 668, 672 (2d Cir.1994)); *accord Stewart Org. Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (noting, in the context of Section 1404, that "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis"); *Lykes Bros. S.S. Co., Inc. v. Sugarman,* 272 F.2d 679, 680 (2d Cir.1959) (stating that this decision is "peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation").

Notwithstanding this discretion, a district court must adhere to certain limitations. A court may transfer an action only if 1) the plaintiff could have brought the case initially in the proposed transferee forum; and 2) the transfer would promote the convenience of the parties and witnesses and would be in the interest of justice. *Baker v. Bennet,* 942 F.Supp. 171, 175-76 (S.D.N.Y.1996); *see also Joint Stock Society "Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court" v. Heublein,* 936 F.Supp. 177, 185 (D.Del.1996) (citations omitted). As the Supreme Court of the United States has held, "the power of a District Court under § 1404(a) to transfer action is made not upon the wish or waiver of the defendant

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1997 WL 566149                                                                                                                    Page 23
(Cite as: 1997 WL 566149, *5 (S.D.N.Y.))

but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343-44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

**\*6** Defendant Friedman resides in New Jersey, and defendant United Aerial conducts substantial business in New Jersey, enabling the District Court of New Jersey to exercise personal jurisdiction over the defendants. (Friedman Aff., ¶¶ 3, 7). Thus, this action could originally have been brought in that district. Having found the first prerequisite satisfied, I must consider whether the transfer would promote the convenience of the parties and the witnesses.

This second limitation on a court's discretion is governed by the statutory standard applicable to a motion to transfer. Section 1404(a) requires the moving party to satisfy a heavy burden. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978) (holding, in the context of Section 1404(a), that "[t]here can be no doubt that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum"), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Joint Stock Soc.*, 936 F.Supp. at 185 (same); *Anglo American Insurance Group, P.L.C. v. Calfed Inc.*, 916 F.Supp. 1324, 1327 (S.D.N.Y.1996). The moving party may meet its burden by applying the following established factors to guide the court's discretion:
> (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access to the source of proof; (5) the availability of the process to compel the attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interest of justice.

*Baker*, 942 F.Supp. at 176 (citing *Dahl v. HEM Pharmaceuticals Corp.*, 867 F.Supp. 194, 195 (S.D.N.Y.1995)); *D'Anton*, 937 F.Supp. at 323; *see also Constitution Reinsurance Corp.*, 872 F.Supp. at 1250-51.

1. *Locus of the Operative Facts*

"To determine the locus of operative facts, a court must look to the 'site of the events from which the claim arises.' " *800-Flowers v. Intercontinental Florists, Inc.*, 860 F.Supp. 128, 134 (S.D.N.Y.1994). The pivotal issue in this declaratory judgment action is the interpretation of an insurance policy between the defendants and AVEMCO. The insurance policy was issued as a result of telephone conversations made in New Jersey and correspondence both sent and received in New Jersey. (Bury Aff., ¶ 9). This action presents insurance coverage issues that would likely have to be decided under New Jersey contract law. (Reply Affidavit of Steven Bury, sworn to on Jan. 27, 1997 ("Bury Reply Aff."), ¶¶ 6, 8). Therefore, because New Jersey is the locus of operative facts, this factor favors transfer of this action.

2. *Plaintiff's Choice of Forum*

"A plaintiff's choice of forum is generally given substantial weight." *Joint Stock Soc.*, 936 F.Supp. at 1986 ("A plaintiff's choice of forum is a paramount consideration in any determination of a transfer request and the court should not disturb the plaintiff's choice lightly."); *Seagoing Uniform Corp. v. Texaco*, 705 F.Supp. 918, 936 (S.D.N.Y.1989). The weight normally accorded to the plaintiff's choice of forum, however, is substantially diminished when plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose. *See 800-Flowers*, 860 F.Supp. at 135 (*citing Mobile Video Services, Ltd v. Nat'l Ass'n of Broadcast Employees and Technicians*, AFL-CIO, 574 F.Supp. 668, 671 (S.D.N.Y.1983) (*quoting Credit Alliance Corp. v. Nationwide Mutual Ins. Co.*, 433 F.Supp. 688, 689 (S.D.N.Y.1977) (noting that the plaintiff's choice of forum is accorded less weight when " 'the operative facts of [the] case have no material connection within this district.' "))). AVEMCO maintains its corporate headquarters in Frederick, Maryland, and the insurance contract was executed by a New Jersey resident. Neither of these facts has any material connection to the plaintiff's forum choice. Thus, plaintiff's choice of forum does not tip the balancing of factors against a transfer.

**\*7** The proximity between the Southern District of New York and the District Court of New Jersey also does not hinder efforts to transfer this action. While one court has found the distance between these two fora to be so small as to militate against transfer, *see Boronstein v. Sands Hotel, Casino & Country Club,*

Inc., 775 F.Supp. 657, 658 (S.D.N.Y.1991) (denying transfer motion from the plaintiff's chosen forum [S.D.N.Y.] to the defendant's forum choice [District Court of New Jersey]), many courts within this district have transferred cases to New Jersey. *See DeJesus v. National R.R. Passenger Corp.,* 725 F.Supp. 207 (S.D.N.Y.1989) (transferring an action from the Southern District of New York to New Jersey, even though plaintiff was found to be doing business in New York); *see also Eichenholtz v. Brennan,* 677 F.Supp. 198, 203 (S.D.N.Y.1988); *see generally Anadigics, Inc. v. Raytheon Co.,* 903 F.Supp. 615, 617-18 (S.D.N.Y.1995) (rejecting the theory that New York and New Jersey are interchangeable fora). Because AVEMCO's chosen forum is neither its home state nor the place out of which the cause of action arose, there is no reason not to disturb plaintiff's choice of forum. Thus, this factor favors transfer of the action.

3. *Convenience of Parties and Witnesses and Attendance of Witnesses*

"[T]he convenience of both party and non-party witnesses is probably the single most important factor in the analysis of whether a transfer should be granted." *Frasca v. Yaw,* 787 F.Supp. 327, 331 (E.D.N.Y.1992). Although defendants have failed to specify key outside witnesses to be called, *see generally Factors,* 579 F.2d at 218 (preventing defendants from relying upon the convenience of outside witnesses because they did not specifically provide a list of the witnesses), Friedman has identified himself as an essential witness in this proceeding. (Friedman Aff., ¶¶ 3, 4, 8). As director of GSF and United Aerial, he negotiated and purchased the insurance policy covering the airplane. (*Id.,* ¶ 8). This is a crucial factor in determining whether to transfer a dispute over contract interpretation. *See R. Siskind & Co., Inc. v. Ashworth, Inc.,* 1996 WL 167722 at \*4 (S.D.N.Y. April 10, 1996) (noting as significant, for the purposes of determining convenience in a motion to transfer, the location of individuals who negotiated and concluded a contract).

Plaintiff indicates that Suffolk County Police, ambulance, and fire personnel could be called as potential witnesses. (Gabriele Aff ., ¶ 17-18). While the convenience of parties and witnesses who investigated the airplane accident should be afforded some consideration, *see Copulsky v. Boruchow,* 545 F.Supp. 126 (E.D.N.Y.1982), their potential testimony would not be particularly relevant to the interpretation of the insurance contract. Plaintiff has also failed to present evidence that its witnesses are unwilling to testify in New Jersey.

\*8 Furthermore, "where a disparity exists between the means of the parties ... the court may consider the relative means of the parties in determining where a case should proceed." *See 800-Flowers,* 860 F.Supp. at 135 (*quoting Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 989 (E.D.N.Y.1991)). Plaintiff is a nationwide corporation with numerous regional offices (Gabriele Aff., Ex. B), with great economic resources at its disposal. Friedman maintains that New York is an inconvenient forum because the travel time necessary to litigate this action in New York would disrupt his small business and cause hardship. (Friedman Aff., 9). Both the disparity between the means of the parties and considerations of convenience for the defendants favor transfer of this action.

4. *Relative Ease of Access of Proof and Trial Efficiency*

Access of proof and trial efficiency also favor transfer of this action. Friedman is domiciled in New Jersey and the records kept by United Aerial relating to the insurance dispute are found in New Jersey, where it maintains its corporate presence. (Friedman Aff., ¶¶ 1, 5, 8). The declaratory judgment seeks the interpretation of an insurance agreement made through correspondence and telephone conversations in New Jersey. These sources of proof are crucial to the declaratory judgment sought by the plaintiff, because if the insurance contract did expressly exclude coverage for banner towing, plaintiff could not assert its claim. While some pertinent documents may be found within New York, such as airport flight logs and personnel, these materials are probably cumulative of information contained in the various defendants' files in New Jersey and, thus, the location of this information does not prevent plaintiff from litigating its case in an alternative forum. It would be inconvenient, however, to subject defendants to jurisdiction in New York. Therefore, trial efficiency and the ease and accessibility of proof support transfer of this action.

5. *Interests of Justice*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

The party seeking venue transfer in the "interests of justice" bears the significant burden of making a clear and convincing case that a case should be transferred. *See Exovir, Inc. v. Mandel,* 1995 WL 413256 (S.D.N.Y. July 12, 1995) (citing *Eskofot A/S v. E.I. du Pont de Nemours & Co.,* 872 F.Supp. 81, 95 (S.D.N.Y.1995)). Defendants have substantial contacts with the proposed forum. Plaintiff will not be significantly inconvenienced by the transfer of this action. In addition, trial efficiency, convenience, and the accessibility of proof all favor transfer of this action. Defendants have thus satisfied this burden. *See Riviera Trading Corp. v. Oakley, Inc.,* 944 F.Supp. 1150, 1159 (S.D.N.Y.1996) (favoring transfer of an action in the interests of justice when the moving party presents more substantial contacts in the proposed forum with the subject matter from which the claim arises). Thus, the interests of justice support transfer of this action.

*9 In light of the factors analyzed above, I find that the defendants have sustained the heavy burden of demonstrating that a transfer would promote the convenience of the parties and the interests of justice. *See* 28 U.S.C. 1404(a). Therefore, the motion to transfer this action is granted.

CONCLUSION

For the reasons set forth above, defendants' motion to dismiss for lack of jurisdiction is denied, and defendants' motion to transfer is granted. This action is transferred to the United States District Court for the District of New Jersey.

SO ORDERED:

Dated: New York, New York

September 5, 1997

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

CSY LIQUIDATING CORP., XFC Liquidating Corp., and Mariner Liquidating Holdings, Inc., Plaintiffs,
v.
TRINITY INDUSTRIES, Inc. and Harris Trust and Savings Bank, Defendants.

No. 95 Civ. 4860 (SHS).

Feb. 2, 1996.

OPINION

STEIN, District Judge.

*1 Plaintiffs CSY Liquidating Corp. ("CSY"), XFC Liquidating Corp. ("XFC") and Mariner Holdings, Inc. ("Mariner Holdings") brought this action in the Southern District of New York alleging federal antitrust and common law breach of fiduciary duty, tortious interference and breach of contract claims against defendants Trinity Industries, Inc. ("Trinity") and Harris Trust and Savings Bank ("Harris Bank"). Trinity and Harris Bank have each filed motions to transfer this action pursuant to 28 U.S.C. § 1404(a): Harris Bank seeks to transfer it to the Northern District of Illinois and Trinity seeks to transfer it to the Northern District of Texas, or, in the alternative, to the Northern District of Illinois. Oral argument was held on December 1, 1995. For the reasons that follow, defendants' motions to transfer are granted to the extent that the action is transferred to the Northern District of Illinois. Trinity's motion to transfer is denied to the extent that it sought to transfer this action to the Northern District of Texas.

I. *BACKGROUND*

Mariner Holdings owned and operated the predecessor corporations of CSY and XFC until May of 1992. (Levey Aff., ¶ 1.) All three were Delaware corporations. CSY manufactured and marketed inland waterway barges and XFC manufactured and marketed fabricated fiberglass barge covers. Both were located in St. Louis, Missouri. In May of 1992, Mariner Holdings sold CSY and XFC to St. Louis Ship Industries, Inc., a wholly owned subsidiary of St. Louis Ship Holdings, Inc. (collectively, "S.L. Ship"), for approximately $31 million, which included a promissory note in the sum of approximately $10 million and a pledge of approximately $13.7 million worth of S.L. Ship's stock. (Levey Aff., ¶¶ 5-6.)

After the sale, the president of Mariner Holdings, Hugh Levey, served as a consultant to S.L. Ship and chairman of its board of directors. Levey also personally guaranteed certain debt CSY owed to defendant Harris Bank. CSY owed Harris Bank $7.15 million pursuant to a term loan and a revolving line of credit, which was secured by CSY's assets. (Levey Aff., ¶¶ 7-8.) Harris Bank is an Illinois corporation with its principal place of business in Chicago, Illinois and all of CSY's banking activities were conducted between St. Louis and Chicago. CSY defaulted on its debt to Harris Bank, and while it was attempting to raise money to repay the debt and reorganize its finances, Harris Bank sold CSY's debt to defendant Trinity, which is a Delaware corporation with its principal place of business in Dallas, Texas. (Levey Aff., ¶¶ 9-10.)

Trinity was a direct competitor of CSY in the manufacture of inland waterway barges. (Complaint, ¶ 5.) Trinity also purchased certain debt XFC owed to Milwaukee Bulk Terminals, Inc. Trinity then began foreclosure proceedings and allegedly coerced S.L. Ship into selling the operating assets of CSY and XFC to Trinity. Mariner Holdings claims that this sale violated its contract with S.L. Ship. (Levey Aff., ¶¶ 11-13.)

*2 Mariner Holdings also claims that its agreements with S.L. Ship permitted Mariner Holdings to retake control of CSY and XFC after S.L. Ship defaulted on the agreement of sale, though nothing remained of the companies after the sale to Trinity except their names and this litigation. (Dresner Aff., ¶¶ 9-10.) In May of 1995, Mariner Holdings, CSY and XFC were all reincorporated in New York. Approximately one month later, plaintiffs brought this action.

II. *DISCUSSION*

The relevant statute governing change of venue, 28 U.S.C. § 1404(a), provides, "For the convenience

of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A motion to transfer requires the court to consider the availability of an alternative forum -- which is not at issue here because the parties agree that venue is proper in all three forums: the Southern District of New York, the Northern District of Texas and the Northern District of Illinois -- and the balance of private and public interests set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L.Ed. 1055 (1947) and *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 67 S. Ct. 828, 91 L.Ed. 1067 (1947). *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S. Ct. 544, 546, 99 L.Ed. 789 (1955); *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 212 (S.D.N.Y. 1995). While the moving party bears the burden of showing that an alternative forum is clearly more appropriate, *see Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) (citations omitted), *cert. denied*, 440 U.S. 908, 99 S. Ct. 1215, 59 L.Ed.2d 455 (1979); *Oil Basins Ltd. v. Broken Hill Proprietary Co.*, 613 F. Supp. 483, 489 (S.D.N.Y. 1985), the decision to grant or deny the motion to transfer is within the court's discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 252, 266, 70 L.Ed.2d 419 (1981).

As an initial matter, Trinity claims that, although a plaintiff's choice of forum is to be considered by the Court pursuant to *Gulf Oil*, after the enactment of 28 U.S.C. § 1404(a), it is simply one factor and it is not entitled to any more significance than any other factor considered. Although at least one court apparently agrees with Trinity, *see Bain v. Yuma Petroleum Co.*, No 95 Civ. 3240, 1995 WL 733454, at *3 (N.D. Ill. Dec. 8, 1995), in this district, the plaintiff's choice of forum is "entitled to substantial consideration." *Warrick v. General Electric Co.*, 70 F.3d 736, 741 (2d Cir. 1995) (quoting *A. Olinick & Sons v. Dempster Brothers, Inc.*, 365 F.2d 439, 444-45 (2d Cir. 1966)); *see also IDT Worldwide, Inc. v. Supreme Int'l Corp.*, No. 95 Civ. 4821, 1995 WL 702359, at *1 (S.D.N.Y. Nov. 28, 1995); *Creaciones Maternales de Mexico, S.A. DE C.V. v. Kiddie Prods., Inc.*, No. 94 Civ. 8007, 1995 WL 617188, at *3 (S.D.N.Y. Oct. 20, 1995); *Xpressions Footwear Corp. v. Peters*, 885 F. Supp. 630, 632-33 (S.D.N.Y. 1995); *Southland Terrace Associates v. Mellon Bank, N.A.*, 874 F. Supp. 69, 70 (S.D.N.Y. 1995); *accord Shutte v. Armco Steel Corp., Inc.*, 431 F.2d 22, 24 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S. Ct. 871, 27 L.Ed.2d 808 (1971).

*3 The emphasis on plaintiff's choice of forum, however, is lessened or does not apply when the chosen forum is not the plaintiff's home or lacks a material connection to the facts or the issues of the case. *Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (quoting *Bordega v. Directors Guild of Am.*, 159 F.R.D. 457, 462 (S.D.N.Y. 1995)); *New England Reinsurance Corp. v. Millers Mut. Fire Ins. Co. of Tex.*, No. 93 Civ. 8303, 1995 WL 617217, at *3 (S.D.N.Y. Oct. 20, 1995); *Arrow Elecs. Inc. v. Ducommon, Inc.*, 724 F. Supp. 264, 265 (S.D.N.Y. 1989). In this litigation, plaintiffs' connections to the Southern District of New York are minimal, and plaintiffs' allegations in the complaint have even less connection to this district.

Plaintiffs are non-operating corporations, with no assets other than this lawsuit, that were incorporated in New York just one month prior to commencing this action here. (Dresner Aff., ¶ 10.) Furthermore, although Mariner Holdings and S.L. Ship negotiated, at least in part, and executed agreements for the sale of CSY and XFC to S.L. Ship in New York, that agreement does not involve the defendants and is only tangentially related to this litigation. Thus, the Court will consider the *Gulf Oil* factors without according plaintiffs' choice of forum the "substantial consideration" it would otherwise receive.

The other public and private factors that guide consideration of a motion to transfer venue include: (1) the location of the operative facts; (2) the convenience of the parties and the witnesses, and the availability of compulsory process; (3) the location of the relevant documents and relative ease of access to sources of proof; (4) the relative means of the parties; (5) the forum's familiarity with the governing law; and (6) trial efficiency and the interests of justice. *Anadigics*, 903 F. Supp. at 617; *Xpressions Footwear Corp.*, 885 F. Supp. at 633; *JM Computer Servs. Inc. v. Schumberger Technologies Inc.*, 886 F. Supp. 358, 359 (S.D.N.Y. 1995).

As noted above, the operative facts in this case have little or no connection to the Southern District

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

of New York. With regard to plaintiffs' antitrust allegations, plaintiffs themselves define the relevant geographic market as along the Mississippi River inland waterway system (*see* Complaint, ¶ 8) and thus the alleged anticompetitive conduct occurred in no one jurisdiction. Defendants, however, argue that both Texas and Illinois are closer to the location of the operative facts and that the Northern District of Illinois is centrally located to the operative facts in the Midwestern region of the country.

Furthermore, most of the operative facts relating to plaintiffs' common law claims occurred in or between Chicago and Dallas and the negotiations between Harris Bank and CSY regarding CSY's default, as well as the negotiations leading to the origination of the loan, occurred between Chicago and St. Louis. CSY voluntarily chose to conduct business with a bank located in Chicago and all significant work related to CSY's debt was performed there. The negotiations for the sale of CSY's debt to Trinity occurred between Dallas and Chicago, with the most significant work being performed in Chicago. Trinity's purchase of XFC's debt from Milwaukee Bulk Terminals, Inc. took place in Milwaukee and Dallas. Defendants claim that since Milwaukee is located in the Midwest it will be convenient to a Chicago forum. Finally, the asset sale and purchase agreements Trinity entered into with CSY and XFC were negotiated and executed between Texas and Missouri. Although there is no one district in which all the operative facts occurred, both the Northern District of Illinois and the Northern District of Texas have more significant connections to the operative facts than does the Southern District of New York.

*4 The convenience of the parties and the witnesses is often the most important factor considered in a motion to transfer. *800-Flowers, Inc. v. International Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994); *Arrow Electronics*, 724 F. Supp. at 265. A transfer of venue via 28 U.S.C. § 1404(a) is not, however, available merely to shift the inconvenience of distant litigation from one party to another. *See Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1322 (S.D.N.Y. 1989). Furthermore, the ability to compel the attendance of nonparty witnesses when necessary is also an important consideration in a motion to transfer. *Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 694 (S.D.N.Y. 1994) (citing *Arrow Elecs.*, 724 F. Supp. at 266).

Needless to say, all parties argue that their selected forum would be the most convenient to them. Plaintiffs' argument, however, carries little weight because the owners and officers of plaintiffs (Joseph and Milton Dresner) are residents of Michigan and plaintiffs' lead counsel is from Minneapolis, Minnesota, Thus, plaintiffs will need to travel regardless of where this action is litigated.

In addition to its own employees located in Chicago, Harris Bank plans to call a former employee, Scott Krause, who was the workout officer handling CSY's account. (Adair Aff., ¶¶ 3-4.) Krause remains in the Chicago area and would be subject to the court's subpoena power in the Northern District of Illinois, but not here. Harris also plans to call other witnesses located in the Midwest such as Robert Coorod, the former president of CSY, Lyndell Johnson, the former chairman of CSY and Wendell Padgett, the former vice president of CSY. Trinity claims that it will have party witnesses from Dallas and Gulfport, Mississippi. It also anticipates calling witnesses with knowledge of the inland barge transportation industry, who are located along the relevant geographic market.

Plaintiffs claim that their current officers -- the Dresners -- and their past president, Hugh Levey, either are residents of, or "have residences in," New York. (Dresner Aff., ¶ 1; Levey Aff., ¶ 4.) The Dresners are residents of Michigan and while they have an interest in this litigation it is unclear whether they will provide any testimony that is relevant to this action. Plaintiffs also claim that the former owners of S.L. Ship -- Christopher Moe and Bruce Lev -- reside in New York, though Lev claims that he is a resident of Connecticut (Moe Aff., ¶ 2), and that plaintiffs will need this Court's subpoena power to compel Moe's and Lev's attendance. Moe and Lev controlled S.L. Ship and were responsible for its sale of CSY and XFC to Trinity. Defendants have also indicated that they intend to rely on the testimony of Moe and Lev, and Trinity submitted affidavits from them assuring this Court that they will voluntarily appear for their deposition and trial testimony in either Chicago or Dallas if this case were to be transferred. (Moe Aff., ¶ 7; Lev Aff., ¶ 6.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*5 Plaintiffs also claim that they will call a witness from Morgan Guaranty, which is located in New York, because plaintiffs believe that Morgan Guaranty was involved in the discussions regarding the sale to Trinity and also because Morgan Guaranty previously offered to purchase CSY's debt from Harris Bank and Harris Bank refused to sell it. Plaintiffs also claim that they intend to call an unidentified reporter from *Forbes* magazine as a witness because *Forbes* published an article in October 1994 quoting Trinity's chairman making allegedly anticompetitive statements. Plaintiffs claim that they may need to call the reporter as a witness to verify that the published statements were actually made if Trinity denies it. These witnesses are speculative and relatively insignificant and, if necessary, their testimony can be presented by deposition.

Accordingly, the convenience of the parties and witnesses strongly favors transferring this action to the Northern District of Illinois.

Furthermore, Trinity claims that all of its documents are located in Dallas and Mississippi, Harris Bank claims that all of its documents are in Chicago, and plaintiffs claim that all of their documents are in New York. Because most of the documents underlying this action were negotiated and created in Chicago, this factor too favors transferring this action to the Northern District of Illinois.

The relative means of the parties can also be considered when deciding a motion to transfer. *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995). Plaintiffs claim that this factor favors keeping this action in this district because they are three inactive companies with no operating assets or revenue while defendants are both fairly large corporations. Plaintiffs, however, fail to show that a transfer of this action to the Northern District of Illinois will significantly increase their costs in prosecuting these claims. Thus, this factor is not relevant to the analysis.

Plaintiffs' antitrust claims are based on federal law and thus no federal court will be any more or any less familiar with the governing law. *See H.L. Green Co. v. MacMahon*, 312 F.2d 650, 652 (2d Cir. 1962), *cert. denied*, 372 U.S. 928, 83 S. Ct. 876, 9 L.Ed.2d 736 (1963). The applicable law on the other claims, however, will be some combination of Illinois, Wisconsin, Texas and Missouri law. Although no one forum will be fully versed in all of the applicable state law, the federal courts in Illinois or Texas will have more familiarity with the law of their states than this Court.

Finally, Trinity provides statistics showing that the Southern District of New York has more cases per judge (495) than either the Northern District of Texas (365) or the Northern District of Illinois (329) for the twelve months ending September 30, 1994. However, the median time from the filing of an action until the beginning of trial was identical in the Southern District of New York and the Northern District of Illinois; namely 22 months. *See Federal Court Management Statistics*, Administrative Office of the United States Courts (1994). Accordingly, the alleged congestion in this district is not significant in the calculus of determining whether or not to transfer this action.

*6 Accordingly, because this action has little connection to this district and plaintiffs will not be significantly inconvenienced by transferring this action to the Northern District of Illinois, this action should be so transferred "for the convenience of parties and witnesses, in the interest of justice." *See* 28 U.S.C. § 1404(a).

### III. CONCLUSION

For the reasons stated above, defendants' motions to transfer this action are granted to the extent that this action is hereby transferred to the Northern District of Illinois. Defendant Trinity's motion to transfer is denied only to the extent it sought transfer to the Northern District of Texas.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1992 WL 170896
(Cite as: 1992 WL 170896 (W.D.N.Y.))

Page 4

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

DELAWARE CREDIT CORPORATION (U.S.A.),
f/k/a Marine Midland Realty Credit
Corporation, Plaintiff,
v.
Arnold Y. ARONOFF, Janet Aronoff and Airidge
Associates Limited Partnership,
Defendants/Counter-Plaintiffs,
and
Arnold Y. ARONOFF, Janet Aronoff and Airidge
Associates Limited Partnership,
Third-Party Plaintiffs,
v.
MARINE MIDLAND REALTY CREDIT
CORPORATION, Third-Party Defendant.

No. 92-CV-135S.

July 10, 1992.

David J. McNamara, Phillips, Lytle, Blaine & Huber, Buffalo, N.Y., for plaintiff.

Michael Everett Ferdman, Hiscock & Barclay, Buffalo, N.Y. for defendants/counter-plaintiffs.

DECISION AND ORDER

SKRETNY, District Judge.

*1 Now before this Court is defendants' motion to transfer this action to the United States District Court for the Middle District of Florida ("Middle District of Florida") pursuant to 28 U.S.C. § 1404(a). [FN1]

This lawsuit stems from plaintiff's attempt to hold defendants jointly and severally liable as guarantors of a loan made to a third party for the purchase and development of land in Florida. The complaint, filed on February 25, 1992, and amended on April 8, 1992 ("Am. Complaint"), alleges that defendants signed agreements to jointly and severally guarantee payment of a loan made by plaintiff to a now dissolved partnership which has defaulted on the loan. Plaintiff seeks to hold defendants liable as guarantors.

Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff, Delaware Credit Corporation (U.S.A.) f/k/a Marine Midland Realty Credit Corporation ("Delaware Credit") is a Delaware Corporation with its principal place of business in Buffalo, New York. Defendants Arnold Aronoff and Janet Aronoff are residents of Florida, but also maintain a house in Michigan. Defendant Airidge Associates Limited Partnership ("Airidge") [FN2] is a Michigan partnership. (Def. Reply, Exh. A1 ¶ 3).

Plaintiff contends that transfer of this case is unnecessary because summary judgment in its favor is appropriate. Alternatively, plaintiff asserts that transfer is inappropriate because the Guaranties contain a forum selection clause which allows plaintiff to sue in this district and, even in the absence of such a clause, defendants have failed to make a clear-cut showing that the interests of justice and of the parties require transfer.

Defendants contend that summary judgment is not appropriate at this time and that the forum selection clause is permissive rather than mandatory and therefore not controlling. In addition, Defendants assert that the convenience of the parties and judicial efficiency and economy would be best enhanced by change of venue.

Defendants submit a Brief in Support of Motion for Change of Venue, with exhibits ("Def. Memo"), a Reply Brief in Support of Motion to Change Venue, with exhibits ("Def. Reply"), a declaration of Arnold Aronoff and an affidavit of Margaret O. Steinbeck ("Steinbeck Aff."). In opposition to the motion, plaintiff submits a Memorandum of Law ("Pl. Memo") and an affidavit of Robert J. Lennartz annexed to its notice of cross-motion ("Lennartz Aff.").

After reviewing the parties' submissions and hearing oral argument on June 5, 1992, this Court for the reasons discussed *infra*, Grants defendants' motion to change venue.

FACTS
*The Underlying Transaction*

On April 4, 1988, Delaware Credit loaned Naples Associates ("Naples"), a general partnership made

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

up of Campeau Corporation ("Campeau") and defendant Airidge, approximately $19,500,000 (the "Loan"). [FN3] (Lennartz Aff. ¶ 2). In exchange, Naples executed and delivered a promissory note. (Am. Complaint, Exh. B). On March 8, 1988, Mr. Aronoff, Mrs. Aronoff and Airidge each executed a separate Guaranty (collectively, the "Guaranties") to ensure payment of the Loan. (Am. Complaint, Exhs. C,D,E; Lennartz Aff. ¶ 8).

*2 Because Campeau was experiencing much publicized financial difficulty, Naples was reorganized in September of 1990 into Naples Associates Limited Partnership ("Naples L.P."), [FN4] and Naples L.P. assumed Naples' indebtedness to Delaware Credit. (Lennartz Aff. ¶¶ 4-5). As part of the reorganization, Naples L.P. and Delaware Credit executed a written amendment to and reaffirmation of the Loan Agreement ("Amendment and Reaffirmation"), which, *inter alia,* modified the maximum principal amount available under the Loan Agreement and payable on the note, and reaffirmed defendants' execution and delivery of the Guaranties. (*Id.* ¶ 5; Am. Complaint, ¶ 11).

The Guaranties provided that defendants jointly and severally guarantee "the full and prompt payment ... of all indebtedness and liability" under the Loan Agreement. (Am. Complaint, Exhs. C,D,E; Lennartz Aff. ¶ 8). In addition to providing for guarantee of payment on the loan, the Guaranties also contained a choice of law clause agreeing that New York law would govern and a clause stating that any action or proceeding arising from the Guaranties "may be commenced in the Superior Court of Delaware in the county, or in the District Court of the United States in the district, in which [Delaware Credit] has an office." (Am. Complaint, Exhs. C,D,E, ¶¶ 13-14).

*Pending Litigation*

On February 26, 1991, Naples L.P. and CCP sued Delaware Credit's affiliate, Marine Midland, in Florida county court on numerous causes of action sounding in contract and tort, including allegations of fraud, misrepresentation and bad faith in connection with the negotiation and execution of the loan and the Amendment and Reaffirmation. (Def. Memo, Exh. F). Thereafter, the action was removed to the Middle District of Florida in April 1991. (Def. Memo at 4).

On February 25, 1992, Delaware Credit initiated the present action in this district based on the Guaranties. In response, defendants made the motion to transfer presently before this Court, then filed their answers with affirmative defenses and counterclaims. The defenses and counterclaims, also listed as third-party claims against Marine Midland, are nearly identical to the claims in Naples L.P. and CCP's complaint in the Florida action.

On April 7, 1992, Delaware Credit initiated an action against Naples L.P., Airidge and CCP in Florida state court to foreclose on the property in Florida which secures the Loan. [FN5] (Def. Memo, Exh. G). The foreclosure action also was removed to the Middle District of Florida. [FN6]

Thus, two actions arising from the same transaction currently are pending in the Middle District of Florida. To date, the cases have not been consolidated. In connection with the two Florida actions, discovery has been ongoing for approximately one year wherein twenty-five witnesses, including defendant Mr. Aronoff, his son and several of plaintiff's past and present employees, already have been deposed and over three thousand documents have been produced. (Steinbeck Aff. ¶¶ 6, 8; Def. Memo, Exh. K ¶¶ 5-7).

*DISCUSSION*
*Defendants' Motion to Transfer*

*3 Plaintiff bases its primary argument on the forum selection clause contained in the Guaranty. The clause essentially allows suit to be brought in a Delaware court or in the United States District Court for the district in which the lender has an office. Plaintiff argues that the clause should be enforced unless obtained fraudulently. (Pl. Memo at 18). In addition, plaintiff argues that defendants' consent to the forum selection clause precludes it from claiming a more convenient district. (*Id.* at 20).

Even absent a forum selection clause, plaintiff argues that its choice of forum should not be disturbed unless the balance of factors strongly favors defendant. In this regard, plaintiff maintains that defendant must make a clear-cut showing that

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the interests of justice and of the parties require transfer. It contends that defendants have failed to do so. (Pl. Memo at 19). In support thereof, plaintiff points out that defendant Mr. Aronoff has represented that he is worth approximately $60 million and owns a private plane. Therefore, he would not be inconvenienced by having to travel to Buffalo. Plaintiff also asserts that the Aronoffs own valuable property and conduct much of their affairs in Michigan. It argues that such facts make this district much more convenient and desirable than the Middle District of Florida. (*Id.* at 20-21).

Moreover, plaintiff insists that little documentary proof is necessary for it to prevail on its claim on the Guaranties. It asserts that the business records, to the extent that they are necessary, are in Buffalo. Plaintiff notes that defendants have neither specified the nature and volume of the documents they deem necessary nor made any showing that deposition testimony would not suffice in the event of transfer. Further, plaintiff argues that even if large volumes of files were needed, modern technology is such that getting the documents to this district would not be unduly burdensome. (*Id.* at 23).

In addition, plaintiff contends that the actions pending in the Middle District of Florida involve neither the same parties nor the same issues. As to the parties, the Florida actions involve Naples L.P., CCP and Marine Midland, while the case at bar involves Delaware Credit, Airidge and the Aronoffs. As to the issues, plaintiff argues that the Guaranties are immaterial to the Florida actions, and exclusively material to the action in this district. Moreover, none of the contract and tort claims in the Florida suits, so plaintiff claims, bear on enforcement of the Guaranties. Specifically, plaintiff argues that the Guaranty is "unconditional and absolute," and bars the defendants from asserting any defenses and counterclaims, therefore, their defenses and counterclaims must be dismissed. (*Id.* at 11-12). In the alternative, if defendants have valid claims they should not constitute defenses or counterclaims in the present case, and should be transferred to the Middle District of Florida after plaintiff is granted summary judgment on the Guaranties. (*Id.* at 2, 24).

*4 Finally, plaintiff asserts that because the action in this district concerns only the Guaranties and the parties to the Guaranties agreed that New York law would govern, the case should be decided by a district court sitting in New York since it presumably has greater familiarity and knowledge of New York law than does a Florida court.

On the other hand, defendants agree that the forum selection clause is important, but argue that it should not control. They assert that the clause is permissive as it allows a party to bring suit in a particular district but does not mandate it. Defendants use the permissive language of the clause to distinguish it from the mandatory language contained in the cases cited by plaintiff. (*Id.*)

Defendants also argue that the transaction out of which the entire dispute arises is a real estate development project in Florida. Thus, the people of the state of Florida have the greatest interest in the outcome of the litigation since it involves Florida real estate. Moreover, defendants point out that the pending litigation already has resulted in over three thousand documents having been produced and 25 witnesses having been deposed in Florida. Remaining in this district, therefore, would be a waste of this Court's resources.

Finally, defendants contend that they are not precluded from asserting defenses and counter claims because the language in the Guaranties is not an absolute and unconditional guarantee of payment. The attendant issues are complex, similar to those before the court in the Middle District of Florida, and not appropriate for summary judgment here.

*Legal Standard*

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action "for the convenience of the parties and witnesses, in the interest of justice [to] ... any other district ... where it might have been brought." [FN7] For purposes of a motion to change venue pursuant to this section, the district court has very broad discretion, *see Red Bull Associates v. Best Western Int'l., Inc.,* 862 F.2d 963 (2nd Cir.1988), and must treat such motions on an "individualized case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Furthermore, the moving party bears the burden of proving that, under the circumstances, the interests of justice and of the parties will be better served by transfer. *Austin v. Int'l Brotherhood of Teamsters Airline Div. 2747,* 739 F.Supp. 206, 208 (S.D.N.Y.1990); *see also, Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314 (S.D.N.Y.1989). However, a motion to transfer venue does not dispose of the case and thus, the burden on the moving party is less stringent than for a motion to dismiss for improper venue, a Rule 12(b)(6) motion, or a summary judgment motion. In addition, it is not necessary to make all inferences in favor of the nonmoving party. *See e.g., Coats Co., Inc. v. Vulcan Equipment Co., Ltd.,* 459 F.Supp. 654 (N.D.Ill.1978).

*5 The factors generally considered by the district court in deciding whether to transfer include (1) convenience of the parties, (2) convenience of witnesses, (3) location of books, records or other tangible evidence, and (4) judicial efficiency and economy. This list is by no means exclusive, and "all other factors that make trial easy, expeditious, and inexpensive" should carry weight. *See Calavo Growers of California v. Generali Belgium,* 632 F.2d 963, 966 (2d Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

Before engaging in discussing these factors, this Court must determine whether or not the forum selection clause contained in the Guaranties herein prohibits the transfer of this case. The clause provided that the defendants would consent to personal jurisdiction and service of process, but remained silent as to venue. Consent to personal jurisdiction, however, implies consent to venue. *See Alexander Proudfoot Co. Headquarters L.P. v. Thayer,* 877 F.2d 912 (11th Cir.1989). Such consent permits plaintiff to bring suit in a particular forum but does not mandate that it do so.

Plaintiff urges this Court to find the forum selection clause dispositive and relies on *Jones v. Weibrecht,* 901 F.2d 17 (2d Cir.1990), which states that a forum selection clause should be enforced unless fraudulently obtained. This Court declines to find the forum selection clause controlling based on *Jones* because *Jones* differs factually from the case at bar in two important respects. Firstly, the plaintiff in *Jones* brought suit in federal court, and the defendant sought enforcement of the agreement and moved to remand to state court. The court in *Jones* clearly distinguished a motion to transfer from a motion to remand and noted that an interest of justice and convenience of the parties analysis was "not appropriate where ... a party seeks to have an action dismissed or remanded to state court, rather than transferred, on the basis of a forum selection clause that purports to preclude litigation from a venue other than a state court." *Id.* at 19. Secondly, the clause in *Jones* mandated that suit be brought in state court. Plaintiff ignores the fact that because the clause was mandatory, the Second Circuit declined to balance the interests of justice and of the parties under a broad discretionary standard.

Plaintiff also relies on *Credit Alliance Corp. v. David O. Crump Sand & Fill Co.,* 470 F.Supp. 489 (S.D.N.Y.1979), in support of its argument that the forum selection clause herein is controlling. In *Credit Alliance,* the parties specifically agreed to venue and when plaintiff brought suit in the particular venue, defendant objected and argued that the forum selection clause should be ignored because it was unconscionable. The district court refused to accept the defendant's argument, finding the pertinent language to be simple and unambiguous. Significantly, the *Credit Alliance* court did not ultimately decide defendant's motion to transfer. In granting plaintiff's summary judgment motion, that court declined to decide transfer of venue.

*6 This Court does not find *Credit Alliance* supportive of plaintiff's argument for additional reasons. Defendants here do not claim unconscionability nor do they ask this Court to ignore the clause. To the contrary, defendants readily agree that the clause should constitute a factor in the balancing of interests. Significantly, the clause in *Credit Alliance* stated that the parties "agreed to venue," whereas in the case at bar, the clause stated that any claim may be brought in this district, leaving both parties various possibilities as to venue. Finally, the *Credit Alliance* defendant's claim against a third party, which survived the grant of summary judgment in favor of the plaintiff, was transferred to a more appropriate venue.

The strength of plaintiff's argument, herein, is further diminished by the United States Supreme

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works