Court's holding in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), which concluded that a forum selection clause should "figure centrally" in determining whether to transfer. The district court must neither ignore nor give dispositive weight to such a clause. Rather, this type of clause "is only one relevant factor." *Id.* 487 U.S. at 32, 108 S.Ct. at 2245.

Consequently, this Court finds that the forum selection clause is not itself determinative and therefore, that it must consider the clause along with the convenience of the parties, the location of the witnesses and documents and the interest of justice in determining whether or not to transfer this case to the Middle District of Florida.

Plaintiff contends that the convenience of the parties weighs in favor of staying in this district and cites *General Electric Credit Corp. v. Toups*, 644 F.Supp 11 (S.D.N.Y.1985) in support of its position. The court in *Toups* held that even a merely permissive forum selection clause, though not ultimately controlling, required a finding that the convenience of the parties was sufficiently served in the venue from which the movant sought transfer. The *Toups* court reasoned that once a defendant has signed an agreement that an action may only be brought in a given forum, he cannot be heard to say that another forum is more convenient. *Id.* at 15. The court in *Toups* denied the motion to transfer, despite the fact that four named witnesses in the proposed transferee district would have been unable to testify as a result of the transfer, and only one witness in the transferor venue would have been lost due to the transfer.

The reasoning of *Toups* is sound, but some vast differences distinguish it from the present case. Most important, unlike the parties in *Toups*, plaintiff is already involved in two suits pending in the proposed transferee district. Despite plaintiff's assertion to the contrary, the parties in the Middle District of Florida are nearly identical to the ones here. Delaware Credit listed itself as "f/k/a Marine Midland Realty Credit Corp." in the caption of its Complaint in the present lawsuit. Plaintiff's contention that Marine Midland and Delaware Credit are separate entities is clearly untenable. Naples L.P., a party to the Florida actions, is owned 50% by defendant Airidge, in which defendant Mrs.

Aronoff is the general partner. Two of the three defendants in the present case are parties to the other actions, and the third is Mrs. Aronoff's husband, whose interest in the outcome of the litigation is effectively the same as Mrs. Aronoff's.

*7 Not only are the parties nearly identical, the facts and issues in the Florida suits are closely tied with the facts and issues in the case at bar, as all suits involve the same underlying loan agreement, the same negotiations regarding that agreement, the same Guaranties and common witnesses. A change of venue from this District would provide the parties with an opportunity to present all factual and legal arguments before one court. Moreover, in light of the common factual and legal issues, consolidation with the other cases pursuant to Fed.R.Civ.P. 42(a) might even be appropriate. [FN8] Upon transfer, should the Middle District of Florida court consider consolidation pursuant to Rule 42(a), it need only find one common question of law or fact to consolidate the actions. The capability of joining parties in the proposed transferee district, if absent in the transferor, is an important consideration. *See e.g. Vassallo v. Niedermeyer*, 495 F.Supp. 757 (S.D.N.Y.1980).

Recognizing that the application of Rule 42(a) is not an issue in this motion, however, this Court nevertheless is of the opinion that transfer is the best way to avoid unnecessary costs and delays, and to ensure the most efficient use of judicial resources. Notably, the fact that plaintiff alternatively wants to sever defendants' counterclaims and transfer them to the Middle District of Florida can be viewed as an admission of convenience and propriety of venue and a concession that the parties, witnesses, facts and issues are nearly identical. Plaintiff's inconvenience in litigating in Florida is negligible, if not absent, as opposed to defendants' inconvenience in litigating the matter in this district. The Aronoffs make their home in Florida. The Aronoff's business is primarily in real estate, and, although plaintiff disputes that they conduct the majority of their business in Florida, it has offered no evidence to support its allegation that Mr. Aronoff conducts business elsewhere. Mr. Aronoff has already been deposed in connection with the Florida actions, as have his son and several of plaintiff's past and present employees. Having to travel to Buffalo for additional pretrial proceedings and trial apparently would seriously

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1992 WL 170896
(Cite as: 1992 WL 170896, *7 (W.D.N.Y.))

interfere with defendants' day-to-day business operations. *See Trans-United Indus. Inc. v. Renard Linoleum & Rug Co.,* 212 F.Supp. 373 (E.D.Pa.1962) (Prolonged absence of defendant's key executives, where plaintiff did not face same hardship, was sufficient alone to require transfer). [FN9] Defendants and plaintiff already have Florida counsel. [FN10] It readily appears, then, that by continuing litigation in Buffalo, defendants and plaintiff would be forced to incur multiple costs, including duplicative attorneys fees, for proceedings regarding the same issues. [FN11] Most likely, the transfer of this case would not compel either party to incur additional costs, and would in fact economize resources for both parties.

**\*8** This Court, thus, is convinced that the convenience of the parties clearly weighs in favor of transferring to the Middle District of Florida and that the parties would be served best by transferring this case to the Middle District of Florida.

Another factor this Court must consider is the location of the witnesses and the documents. The district court in *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314 (S.D.N.Y.1989), found that in order for a defendant to argue inconvenience of witnesses, it must name the witnesses who would be unable to testify absent transfer, and describe the testimony which would thus be left out. Defendants have listed as many as twenty-five supposedly inconvenienced non-party witnesses as already having been deposed in Florida, without describing the nature of the testimony that would be left out in the event of non-transfer. Plaintiff also fails to explain how its own witnesses would be inconvenienced by the transfer since, presumably, its witnesses will be present in Florida because it does not argue that any of its witnesses will be unable to testify in Florida. Without the aforementioned information this Court is unable to determine which venue better serves the convenience of the non-party witnesses. However, a factor which comes out evenly should weigh in favor of the party opposing transfer. *See, e.g., Austin v. Int'l Brotherhood of Teamsters Airline Div. 2747,* 739 F.Supp. 206, 208 (S.D.N.Y.1990); *see also, Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314 (S.D.N.Y.1989).

Similarly, this Court has not been apprised of the relevance of the three thousand documents produced

during discovery in the actions pending in Florida, it cannot decide whether such documents are indeed relevant to litigation in this district. It would be most convenient for the Middle District of Florida to make this determination as to their relevance.

The final factor for this Court to consider is the interests of justice. The interest of judicial efficiency and economy unquestionably weighs in favor of changing venue. Regardless of the need for documents and witnesses, the loan which the Guaranties secure is the basis for the claims pending in the Middle District of Florida and in this district. If this case is transferred, every claim arising out of the same transaction will be in the same district. Depositions, other discovery, pretrial motions and hearings, and trial would all be streamlined and conducted much more efficiently, without causing hardship or harm to either party or to either party's witnesses.

Again, this Court duly notes plaintiff's motion to dismiss defendants' counterclaims, or in the alternative, to have them severed and transferred to the Middle District of Florida. That plaintiff can strenuously urge upon this Court that its claim should not be transferred, and then argue that defendants' counterclaims should be, seems rather anomalous. If plaintiff is prepared to argue that those claims should be severed and transferred, it must, in view of this Court's broad discretion to transfer, concede the propriety, if not the desirability, of changing venue to the Middle District of Florida. Certainly, considering all the factors, trial in the Middle District of Florida would be easier, more expeditious and less expensive.

**\*9** For the reasons articulated above, this Court finds that the balance of all the factors dictates transferring this case to the Middle District of Florida.

*Plaintiff's Summary Judgment Argument*

As alluded to above, plaintiff puts forth the proposition that this Court should not even reach the venue issue because it should grant plaintiff's motion for summary judgment. This Court has declined to consider summary judgment until it reaches a decision on defendants' motion to transfer.

In light of the totality of the circumstances and the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1992 WL 170896
(Cite as: 1992 WL 170896, *9 (W.D.N.Y.))

various pending actions discussed above, the Middle District of Florida is the more appropriate venue for all actions and correspondingly, to determine all motions including plaintiff's summary judgment motion.

### CONCLUSION

On the basis of the foregoing analysis, this Court finds the interests of justice and the convenience of the parties to be best served by transfer of this action to the Middle District of Florida. Defendants' motion is therefore granted.

This Decision and Order shall not be construed as a ruling upon any other motion, and shall not prejudice any motion properly brought before the United States District Court for the Middle District of Florida.

### ORDER

IT HEREBY IS ORDERED, that defendants' motion to transfer venue to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a) is Granted.

SO ORDERED.

> FN1. Also before this Court are plaintiff's motions to strike defendants' affirmative defenses and counterclaims, or in the alternative, to sever them and transfer them to the Middle District of Florida, and for summary judgment. However, this Decision and Order addresses only defendants' motion to change venue.

> FN2. Defendants Mrs. Aronoff is general partner of Airidge. (Lennarz Aff. ¶ 3).

> FN3. The actual agreement was executed by Marine Midland Realty Credit Corporation ("Marine Midland"), to which Delaware Credit refers as an affiliate.

FN4. Naples L.P. is a Michigan limited partnership made up of 50% Campeau Corporation Partners (CCP) and 50% Airidge. (Lennartz Aff. ¶ 4).

> FN5. Florida law allows for separate suits on the guaranty and on the foreclosure of the property securing the debt.

FN6. Delaware Credit has a motion pending before the Middle District of Florida to remand the foreclosure action back to the Florida state court.

FN7. Defendants concede that before reaching the issue of whether to transfer to another venue, they must show the transferee venue to be appropriate. The general provision for venue in the district courts, 28 U.S.C. § 1391(a), states:
A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in

* * *

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or
(3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.
Defendants reside, and are therefore subject to personal jurisdiction, in Florida. Because subject matter jurisdiction is based solely on diversity, the Middle District of Florida is an appropriate venue under § 1391(a)(3).

FN8. Fed.R.Civ.P. 42(a) states:
When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FN9. Notably, plaintiff is a large corporation with many employees in contrast to defendants who are small business owners. Thus, the transfer would not so severely disrupt plaintiff's business as would the litigation of the suit in this district disrupt defendants' business.

FN10. Defendants' argue that its Buffalo counsel would be unduly burdened, however, inconvenience to counsel is unpersuasive and not a factor. *See Hernandez v. Graebel Van Lines,* 761 F.Supp. 983 (E.D.N.Y.1991).

FN11. Defendants' Buffalo counsel heretofore has played a minor role by signing and serving papers filed in Buffalo. Motions, briefs, etc. have been prepared by defendants' Michigan counsel.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1992 WL 170896
**(Cite as: 1992 WL 170896, \*9 (W.D.N.Y.))**

1992 WL 170896, 1992 WL 170896 (W.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

EQUIPOS NUCLEARES, S.A., and Empresa
Nacional de Ingenieria Y Technologia,
S.A., Plaintiffs,
v.
FAIRFIELD ENERGY VENTURE, L.P., a
Delaware limited partnership, Defendant.

No. 88 CIV. 7543 (MBM).

Jan. 23, 1989.

Douglas H. Meal, Joni L. Walser, Seth W.
Brewster, Ropes & Gray, Boston, Massachusetts,
Bertrand C. Sellier, Edwin M. Baum, Stein,
Zauderer, Ellenhorn, Frischer & Sharp, New York
City, for plaintiffs

Harvey Kurzweil, Jack A. Gordon, Theodore M.
Cooperstein, Dewey, Ballantine, Bushby, Palmer &
Wood, New York City, for defendant.

OPINION AND ORDER

MUKASEY, District Judge.

*1 Plaintiffs, Equipos Nucleares, S.A. and
Empresa Nacional de Ingenieria Y Technologia,
S.A. ("Equipos"), filed this breach of contract
lawsuit on October 24, 1988 against defendant
Fairfield Energy Venture, L.P. ("Fairfield"),
concerning construction of an electrical generating
facility in Fort Fairfield, Maine.    Defendant, a
Delaware limited partnership with offices in
Washington, D.C., contracted with Cianbro Corp.,
a Pittsfield, Maine general contractor, who in turn
subcontracted with plaintiffs, both Spanish
corporations, for architectural, design and
engineering assistance.    Defendant now moves,
inter alia, to transfer this action to the United States
District Court for the District of Maine, pursuant to
28 U.S.C. § 1404(a) (1982).    As I find that transfer
would be far more convenient for both parties and
witnesses and, most importantly, would be in the
interests of justice, I do not reach defendant's
arguments to stay or dismiss the action.

I.

In order to understand why transfer to Maine is
appropriate, a brief explanation of the welter of
lawsuits generated by both sides is necessary.
Beginning in late 1987, Cianbro disputed Equipos'
performance on the project and sought to stop
payment to Equipos. (Kurzweil Aff. I. at ¶ 7) In
December 1987, Equipos filed a demand for
arbitration naming Cianbro and Fairfield as
respondents.    Equipos agreed to dismiss Fairfield
from the action because it had no direct contract
with Equipos. (Kurzweil Aff. I at ¶¶ 8 & 9) In
February, 1988, however, Equipos commenced a
lawsuit against both Cianbro and Fairfield in a
Maine federal court.    The complaint sought
payment for "unpaid invoices, unpaid retainage, and
unpaid extra labor, material and services."
(Kurzweil Aff. I. at ¶ 10) Equipos, however,
requested the court to stay the lawsuit pending
arbitration.    That court has not yet decided the
question. (Meal Aff. at ¶ 6) The claims in that
action essentially parallel counts I and III of this
lawsuit's complaint in which Equipos demands
approximately $6.6 million for unpaid work on the
project.

Cianbro completed the project in October 1988.
The contract required that, once the facility was
completed, Fairfield pay approximately $1 million it
had withheld from earlier periodic payments.
(Kurzweil Aff. at ¶ 13) Both Cianbro and Equipos
assert exclusive right to this sum.    On October 21,
1988, Harvey Kurzweil, counsel for defendant, and
Douglas Meal, counsel for plaintiffs, discussed
possible resolution of this dispute.    Although some
statements made during this telephone conversation
are disputed (compare Meal Aff. at ¶¶ 11, 12 with
Kurzweil Aff. II at ¶¶ 3, 4, 5, 6), Kurzweil clearly
notified Meal that, if Equipos were unwilling to
indemnify Fairfield against claims by Cianbro to the
sum, Fairfield would interplead with respect to that
amount in Maine federal court. (Kurzweil Aff. II at
¶ 4;  Meal Aff. at ¶ 12).    The very next working
day, Equipos filed the instant lawsuit, demanding,
inter alia, the disputed sum (denominated as "Count
II" in the complaint).    Four days later, Fairfield
filed the promised interpleader action in Maine
federal court, naming both Cianbro and Equipo as
claimants. (Kurzweil Aff. I. at ¶ 14)

*2 Closing the circle, Cianbro has apparently filed

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

a lien on Fairfield's plant and is apparently considering filing a lawsuit in Maine on the same issues. (Kurzweil, Aff. at ¶ 18)

## II.

A district court may transfer a civil action to any district where it might have been originally brought "[f]or the convenience of parties and witness, in the interest of justice." 28 U.S.C. § 1404(a). Courts generally consider several factors in making this determination: (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the cost of obtaining witnesses' presence; (6) the location of records and documents; and (7) the interests of justice. *See, e.g., NCC Sunday Inserts, Inc. v. World Color Press, Inc.,* 666 F.Supp. 47, 49 (S.D.N.Y.1987); *Designs By Glory, Ltd. v. Manhattan Creative Jewelers, Inc.,* 657 F.Supp. 1257, 1258-59 (S.D.N.Y.1987). This determination is left to the sound discretion of the district court. *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.,* No. 87-7647, slip op. 7291, 7307 (2d Cir. January 12, 1989); *Carlenstope v. Merck & Co., Inc.,* 819 F.2d 33, 35 (2d Cir.1987) (forum non conveniens); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218-19 (2d Cir.1978), *cert. denied,* 440 U.S. 908 (1979).

I find that defendant has met the heavy burden required to transfer a case. *See, e.g., Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1060 (S.D.N.Y.1987). Most importantly, the prevention of "duplicitous litigation and inconsistent results" mandates transfer in this instance. *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd.,* 537 F.Supp. 1241, 1243 (S.D.N.Y.1982) (Pollack, J.) (quoting *Nat'l Super Spuds, Inc. v. New York Mercantile Exchange,* 425 F.Supp. 665, 667 (S.D.N.Y.1977)). There are now two lawsuits in the Maine federal courts concerning this contract dispute. In one, Equipos asserted essentially the same claims present here against both Fairfield and Cianbro. Two arbitration proceedings involving Cianbro and Equipos are also in progress in Maine, in one of which defendant was originally named, but subsequently dismissed at the behest of Equipos. These Maine actions concern by far the bulk of the claims asserted by plaintiffs

here-- namely, $6 million due for work on the project. As the first filed, the Maine actions have priority. *See Rolls-Royce Motors,* 657 F.Supp. at 1060; *see also Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir.1974).

Furthermore, Fairfield has recently interpleaded what amounts to the rest of this case--$1 million in retained payments--in Maine federal court. Plaintiffs, however, contend that transfer is improper because this lawsuit was filed four days before the Maine interpleader action and, thus, that the "first-to-file" rule bars transfer. That doctrine, however, should not be applied in a mechanical fashion, but rather is intended as a preference that a district with earlier jurisdiction over a case handle all aspects of the dispute. *Rolls-Royce Motors,* 657 F.Supp. at 1060 & n. 14; *Nat'l Patent Dev. Corp. v. American Hosp. Supply Corp.,* 616 F.Supp. 114, 118 (S.D.N.Y.1984) (Weinfeld, J.). Thus, it does not operate where the initial filing "evidence[d] a race to the courthouse." *Dow Jones & Co. v. Bd. of Trade,* 539 F.Supp. 190, 193 (S.D.N.Y.1982). This is particularly true where the first to file gained the advantage because the opposing party notified it of the imminent suit in an attempt to settle. *See, e.g., Columbia Pictures Indus., Inc. v. Schneider,* 435 F.Supp. 742, 747 (S.D.N.Y.1977), *aff'd without opinion,* 573 F.2d 1288 (2d Cir.1978). Here, the instant lawsuit was filed one day after defendant's counsel, in an attempt to settle the case, informed plaintiffs' counsel of the imminent filing of an interpleader action in Maine. Additionally, given that Equipos has stated its impatience with the Maine arbitration's slow progress (Meal Aff. at ¶ 4), this lawsuit may well be designed to circumvent arbitration and the Maine courts and thus smacks of forum-shopping. In sum, the interests of justice favor transfer to Maine.

*3 Other factors also support a transfer to Maine. The contracts here all call for construction and interpretation in accordance with Maine law, further supporting transfer. *See Filmline (Cross-Country) Prods.,* slip op. at 7308; *see also Van Dusen v. Barrack,* 376 U.S. 612, 645 (1964). This factor, although not dispositive where legal issues are simple, *see Nat'l Patent Dev.,* 616 F.Supp. at 119; *but see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947) (stressing the "appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1989 WL 6628
(Cite as: 1989 WL 6628, *3 (S.D.N.Y.))

case"), shows that the parties intended Maine to be the forum for any litigation.

Moreover, the bulk of the evidence is in Maine: the project was built there and all the parties performed their work there. Although the parties dispute whether some negotiations took place in New York (Compare Mielgro Aff. at ¶¶ 11, 12, 13 with Phelps Supp.Aff. at ¶ 4), no one can dispute that this lawsuit ultimately concerns the parties' performance (or, as the case may be, non-performance) of the contracts. Plaintiffs' argument that this case solely revolves around contract formation is without merit. Although the issue of whether Fairfield or Cianbro owes Equipos for its performance turns on issues of the parties' intent in contract negotiations and thus some documents are here, the threshold issue--fundamental to this action--is whether Equipos properly performed its end of the bargain. Thus, most of the relevant evidence will be in Maine where the project was built.

It follows that most of the material witnesses, namely Cianbro employees at the Maine construction site, are outside this jurisdiction, and outside the subpoena power of this court. (Phelps Aff. at ¶¶ 4, 5) Defendant has specifically indicated the necessary out-of-state witnesses, see Phelps Aff. at ¶¶ 3, 4, and thus has met its burden in this regard. See Factors Etc., 579 F.2d at 218. Accordingly, even though a few witnesses may reside in New York, a transfer to Maine will aid in the production of both evidence and witnesses. See, e.g., Troyer v. Karcagi, 488 F.Supp. 1200, 1207 (S.D.N.Y.1980) (where material events and circumstances underlying transaction occurred in Ohio, transfer to Ohio is ordered despite presence of two witnesses for plaintiff in New York).

Finally, plaintiffs are aliens, and their connection to the forum is, at best, tenuous. Thus, their choice of forum is afforded little weight. See, e.g., Societe Commerciale de Transports Transatlantiques (S.C.T.T.) v. S.S. "African Mercury", 366 F.Supp. 1347, 1350 (S.D.N.Y.1973). Although plaintiffs assert they have a New York place of business, significantly that office is plaintiffs' parent company's offices, and thus does not automatically change the calculus. Cf. Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth., 442 F.Supp. 1201, 1206-07 (S.D.N.Y.1978) (presence of parent company does not automatically mean its subsidiaries are present for venue purposes). Plaintiffs concede that they are Spanish corporations and that their principal places of business are in Spain. (Mielgro Aff. at ¶ 6, 7) Thus, plaintiffs will not be inconvenienced any more by a transfer to Maine because, no matter what the decision here, they will be forced to litigate in a foreign jurisdiction. Indeed, plaintiffs' protestations to the contrary are belied by the fact that every lawsuit and demand for arbitration they have initiated was filed in Maine. [FN1] Certainly, up until now, plaintiffs have found Maine quite convenient.

*4 In sum, Maine is the locus of this dispute. This lawsuit represents more an exercise in forum-shopping than a sincere effort to resolve the legal disputes that have racked this project. Both justice and convenience require that this case be transferred to Maine where all the parties are present and amenable to suit. The Clerk of the Court is directed to transfer this lawsuit to Maine federal court.

> FN1. The only other lawsuit filed in New York concerned a minor dispute over a letter of credit involving two New York banks. The parties agreed to dismiss the lawsuit with prejudice soon after it was filed.

1989 WL 6628, 1989 WL 6628 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1996 WL 537825
(Cite as: 1996 WL 537825 (E.D.N.Y.))
C

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Norman JACOBS, Plaintiff,
v.
HAPPINESS EXPRESS, INC., Joseph A. Sutton,
Isaac A. Sutton, and Michael A.
Goldberg, Defendants.
Robert KARBAN, Jr., Plaintiff,
v.
HAPPINESS EXPRESS, INC., et al., Defendants.
William Ray JAMIESON, Plaintiff,
v.
HAPPINESS EXPRESS, INC., et al., Defendants.
James JUDSON, Plaintiff,
v.
HAPPINESS EXPRESS, INC. et al., Defendants.

No. CV 96 2552 (RJD), CV 96 3190 (RJD), CV 96
3727 (RJD), CV 96 3726 (RJD).

Sept. 16, 1996.

*MEMORANDUM & ORDER*

DEARIE, District Judge.

*1  Defendants Happiness Express, Inc.
("Happiness"), Joseph A. Sutton, and Isaac A.
Sutton move to transfer the above-captioned action
to Southern District of New York pursuant to 28
U.S.C. § 1404(a) where related actions are pending.
For the reasons stated below, the Court grants
defendants' motion.

Plaintiffs in these consolidated cases ("the Eastern
District Action") allege violations of sections 10(b)
and 20(a) of the Securities Exchange Act of 1934
and Rule 10b-5. The complaint alleges that
Happiness and three of its present and former
officers artificially inflated the price of Happiness's
stock by filing quarterly reports with the Securities
Exchange Commission that included material
misrepresentations and omissions about the financial
condition of the company. The named plaintiff in
each action purports to sue on behalf of a class of all
persons who bought common stock of Happiness
between October 26, 1995 and May 8, 1996. Three
suits against the same defendants have been filed in
the Southern District of New York, and these cases

have been consolidated before Judge Patterson. *In
Re Happiness Express Securities Litigation,* 95 CV
7731 (RPP) ("the Southern District action"). The
class period alleged in the Southern District action is
March 7, 1995 to September 6, 1995.

Section 1404(a) provides that "[f]or the convenience
of the parties and witnesses, in the interest of
justice, a district court may transfer any civil action
to any other district or division where it might have
been brought." The determination of whether to
grant a motion to transfer under section 1404(a) is
within the broad discretion of the district court. *Red
Bull Assocs. v. Best Western Int'l, Inc.,* 862 F.2d
963, 967 (2d Cir. 1988). The party seeking the
transfer bears the burden of establishing the
propriety of a section 1404(a) transfer. *Barr
Laboratories, Inc. v. Quantum Pharmics, Inc.,* 827
F. Supp. 111, 113 (E.D.N.Y. 1993).

It is well established that "[t]ransfer is particularly
appropriate where there is a prior lawsuit pending in
the transferee district involving the same facts,
transactions, or occurrences." *Levitt v. State of
Maryland Deposit Ins. Fund Corp.,* 643 F. Supp.
1485, 1493 (E.D.N.Y. 1986), *see also, Nieves v.
American Airlines,* 700 F. Supp. 769, 773
(S.D.N.Y. 1988). "To permit a situation in which
two cases involving the same issues are
simultaneously pending in different District Courts
leads to the wastefulness of time, energy and money
that § 1404 was designed to prevent." *Continental
Grain Co. v. The FBL-585,* 80 S. Ct. 1470 (1960).
Based on these principles, courts recognize that "as
a general proposition, cases should be transferred to
the district where related actions are pending."
*National Union Fire Ins. v. Turtur,* 743 F. Supp.
260, 263 (S.D.N.Y. 1990) (internal quotation marks
and citation omitted).

Plaintiffs oppose defendants' motion to transfer,
arguing that the two actions involve different class
periods, that discovery in the two actions can be
coordinated without a transfer, and that the Eastern
District action is governed by the Private Securities
Litigation Reform Act of 1995. None of these
arguments posited by plaintiffs overcomes the
undisputed fact that these two actions, pending in
different districts, involve the same allegations
against the same defendants. In a document request
dated July 5, 1995, plaintiffs in the Eastern District

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

action listed the relevant time period as "April 1, 1995 to present." As even plaintiffs concede, this request encompasses most of the Southern District class period. Nevertheless, plaintiffs argue that the discovery in the two actions can be coordinated without transferring the action. Although plaintiffs correctly observe that coordination of discovery is possible without transferring the case, this Court is convinced that the transfer of this action to the Southern District will expedite discovery and conserve judicial resources. In addition, the Court finds that the existence of different class periods in the two actions does not weigh against transferring this action. Both cases involve shareholders suing Happiness and three of its present and former officials, and both are based on alleged irregularities in Happiness' 1996 financial reports. Indeed, plaintiffs in both actions have indicated that they intend to file amended complaints after Happiness amends its financial reports for 1996. Finally, the Court finds that the differences between the Private Securities Litigation Reform Act of 1995 that applies to the Eastern District action and the Securities Act of 1934 that governs the Southern District action do not weigh against the transfer. In sum, the Court finds that, in the interests of justice, this action should be transferred to the Southern District.

*2 For the foregoing reasons, the Clerk of the Court is directed to transfer this action to the Southern District of New York.

SO ORDERED.

1996 WL 537825, 1996 WL 537825 (E.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 720536
(Cite as: 1998 WL 720536 (D.Conn.))
c

Page 15

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

LESCARE KITCHENS, INC. Plaintiff,
v.
HOME DEPOT U.S.A., INC., Defendant.

No. 3:98CV1354 (GLG).

Sept. 29, 1998.

Memorandum Decision

GOETTEL, D.J.

*1 This diversity case is brought by plaintiff
LesCare Kitchens, Inc ., for breach of contract,
intentional interference with business relations,
violation of Connecticut's Unfair Trade Practices
Act ("CUTPA"), and various state common-law
torts against defendant Home Depot U.S.A., Inc.
The dispute underlying this action arises out of a
vendor-vendee relationship between the parties for
the sale of kitchen and bathroom cabinetry, which
relationship existed from 1993 through 1997.

Defendant seeks to have this action transferred to
the United States District Court for the Northern
District of Georgia, Atlanta Division, pursuant to 28
U.S.C. § 1404(a), based upon a forum-selection
clause in the parties' Purchase Order Agreement.
Alternatively, defendant moves this Court to dismiss
this action pursuant to the doctrine of *forum non
conveniens.* Defendant also seeks an award of
attorney's fees in connection with the preparation of
this motion, pursuant to the terms of the Purchase
Order Agreement.

For the reasons set forth below, defendant's motion
to transfer will be granted. Accordingly, defendant's
alternative motion to dismiss will be denied as moot.

Background

Plaintiff manufactures and sells kitchen and
bathroom cabinetry through a nationwide network of
retail dealers. Plaintiff is a Connecticut corporation,
with its principal place of business in Waterbury,
Connecticut. Defendant Home Depot markets
building supply products on a nationwide basis

through its retail outlets and its Expo Design
Centers. Defendant is incorporated in Delaware and
has its principal place of business in Atlanta,
Georgia.

In 1993, plaintiff and defendant entered into a
Vendor Buying Agreement and Special Order
Addendum, for the purchase and sale of kitchen and
bath products. Both documents contain an
"Acknowledgement" which recites that plaintiff has
read the Purchase Order Agreement and that
plaintiff agrees to its terms. The Purchase Order
Agreement contains the following forum selection
clause:
  31. The Order shall be construed and enforced in
  accordance with the laws of the State of Georgia.
  The courts within the State of Georgia will have
  exclusive jurisdiction.

The parties operated under these agreements for
several years. However, in 1995 and 1996, their
relationship began to deteriorate. The complaint
describes in detail the problems that developed, the
specifics of which are not relevant here. Ultimately,
the parties terminated their relationship in 1997.

In 1998, plaintiff filed the instant suit in the
Superior Court for the Judicial District of Hartford/
New Britain at Hartford, Connecticut. Defendant
then removed this case to federal court pursuant to
28 U.S.C. § 1446(b), based upon the parties'
diversity of citizenship.

Discussion

Emphasizing that this is a private business dispute,
defendant relies primarily on the forum-selection
clause in the parties' contract in seeking a transfer
of this action to Georgia. It also argues that the
convenience of the parties and witnesses favor
Georgia as the forum for this dispute, since its
headquarters and, thus, many of its witnesses and
documents are located in Georgia. Defendant also
notes that plaintiff had a permanent, full-time
employee in Atlanta for purposes of the Home
Depot account. It further argues that the contracts
were signed by its representatives in Georgia, and
that many of the communications regarding the
contract originated form Atlanta.

*2 Plaintiff objects to a transfer of the case, arguing

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 720536
(Cite as: 1998 WL 720536, *2 (D.Conn.))

that great weight should be given to its choice of forum. Additionally, because its business is headquartered in Connecticut, most of its witnesses and documents are located here. Plaintiff states that the operative facts, including the negotiation of the contract and the injuries sustained by it occurred in Connecticut. Further, plaintiff states that many of the Home Depot witnesses with knowledge of the case are located throughout the United States and, thus, the interests of the parties and witnesses are not served by transferring this case to Georgia. Further, plaintiff argues that the interest of justice is best served by retaining jurisdiction in Connecticut because a Connecticut court has greater familiarity with and is the more appropriate forum to rule on its CUTPA and common-law tort claims.

In reply to this last argument, defendant cites to the choice-of-law provision in the contract that provides that the contract shall be construed and enforced in accordance with the laws of the State of Georgia.

The Supreme Court has held that federal law, specifically 28 U.S.C. § 1404(a), governs a district court's decision whether to transfer an action to another district based upon a forum-selection clause in a contract between the parties. [FN1] *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Section 1404(a) gives the district court discretion to adjudicate motions for transfer on an "individualized, case-by-case consideration of convenience and fairness." *Id.* at 29. Section 1404(a) provides:

> FN1. Defendant does not claim improper venue pursuant to 28 U.S.C. § 1406(a). Rather, defendant claims that because of the parties' forum- selection clause and for the convenience of the parties and in the interest of justice, the case should be transferred to Georgia. Defendant's Mem. in Support of its Motion to Transfer at 5.

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The moving party has the burden of establishing that there should be a change of venue. *O'Brien v. Okemo Mountain, Inc.*, No. CIV. A. 3-97-CV-0009, 1998 WL 514692, at *4

(D.Conn. July 21, 1998).

In diversity cases, the Second Circuit has held that federal common law applies to determine the enforceability of forum-selection clauses. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990). Forum-selection clauses are "prima facie valid." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). "The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." *Stewart Organization, Inc.*, 487 U.S. at 29. Such clauses have "the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). "The district court also must weigh in the balance the convenience of the witnesses and those public- interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.' ' *Stewart Organization, Inc.*, 487 U.S. at 30. Thus, in addition to the forum selection clause, other factors this Court must consider in deciding whether to transfer an action under section 1404(a) are: (1) the location of the events giving rise to the suit; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access of proof; (5) the availability of process for unwilling witnesses; (6) plaintiff's choice of forum; (7) a forum's familiarity with the governing law; (8) trial efficiency; and (9) the interest of justice. *O'Brien*, 1998 WL 514692, at *5.

*3 Although it is true that a plaintiff's choice of forum is generally entitled to great weight, in this case, the parties voluntarily entered into a contract with a forum-selection clause. The Corporate Vendor Buying Agreement [FN2] specifically incorporated the Purchase Order Agreement, containing the terms and conditions applicable to the Buying Agreement, including a concise statement that the courts within the State of Georgia are to have exclusive jurisdiction. Plaintiff does not allege that the clause itself was obtained by fraud, or that the result would be unjust if the clause were

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

enforced. *See Carnival Cruise Lines*, 499 U.S. at 593-95. Accordingly, we hold that the forum-selection clause is valid. This is a "significant" factor weighing in favor of transfer. However, our inquiry does not end here. The burden shifts to the plaintiff to show why the contractual provision should not be enforced based upon the relevant factors under section 1404(a). *K. Gronbach & Assoc., Inc. v. Champion Motor Leasing*, No. CIV 3:97CV13(AHN), 1997 WL 409523, at *3 (D.Conn. June 24, 1997).

> FN2. The Corporate Buying Agreement was a skeletal, one-page fill-in- the-blank document, indicating the vendor, payment terms, and "check-off" items concerning matters such as charges for pallets, displays, whether the vendor offers volume rebates, etc. At the bottom, just above the signature lines was the following Acknowledgement:
> I have read the NEW VENDOR INFORMATION PACKET and the PURCHASE ORDER AGREEMENT, including the terms of indemnification, and agree to the stated terms as a basis for future business with Home Depot U .S.A. Any terms not agreed upon as stated and negotiated satisfactorily with the appropriate Merchandiser are stated in writing signed by the Merchandiser and attached. *LesCare Kitchens, Inc. hereby agrees to market with the Home Depot Expo only. This agreement subject to geographic additions of new Expo stores.*
> The highlighted sentences were added by the parties to the standard acknowledgement.

Most of the factors affecting transfer are neutral for both parties. One party has its headquarters and corporate witnesses and documents in Connecticut; the other has them in Georgia. Negotiations for the contract took place in and between Georgia and Connecticut. Witnesses and documents are split between the two jurisdictions, with a number of witnesses located elsewhere at Home Depot retail outlets and Expo Centers throughout the United States. Finally, the interest of justice issue is neutral or tipped slightly in favor of Georgia. Certainly, the contract claims would be governed by Georgia law based on the choice-of-law provision in the contract. Whether each of the other claims will be governed by Georgia or Connecticut law will depend on a careful analysis of each claim under the forum's choice-of-law rules. However, none of the issues appear to be so complex or present such novel issues as to weigh in favor of one jurisdiction or the other.

*See Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)(noting the advantage of having the trial of a diversity case in a forum that is at home with the state law that will govern the case).

While most of the above cited factors are neutral, the forum-selection clause and the choice-of-law provision weigh heavily in favor of transferring this case to Georgia. The parties voluntarily agreed to these provisions. Consideration of these significant factors along with the relevant section 1404(a) factors leads the Court to conclude that justice would best be served if the motion to transfer is granted.

### Attorney's Fees

Defendant has also requested attorney's fees incurred in connection with bringing this motion to transfer based upon paragraph 29 of the Purchase Order Agreement, which provides:
> 29. Should the Home Depot use the services of an attorney to enforce any of its rights hereunder, or to collect any amounts due, Vendor shall pay the Home Depot for all costs and expenses incurred, including reasonable attorney's fees.

*4 Because this agreement gave defendant the right to insist upon this action being litigated in Georgia, which right it sought to enforce through the instant motion, the Court finds that reasonable attorney's fees are appropriate.

### Conclusion

Accordingly, Defendant's Motion to Transfer [Doc. # 3] is GRANTED. Defendant's Motion for Attorney's Fees is also GRANTED. The defendant is directed to submit an affidavit detailing its request for attorney's fees incurred solely in connection with this motion within ten (10) days of the date of this decision. The plaintiff shall then have seven (7) days to file any objection thereto.

Defendant's Motion, in the Alternative, to Dismiss is DENIED.

The Clerk is directed to transfer this action to the United States District Court for the Northern District of Georgia, Atlanta Division, following a ruling by this Court on the amount of attorney's fees

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 720536
**(Cite as: 1998 WL 720536, \*4 (D.Conn.))**

to be awarded defendant. SO ORDERED.

1998 WL 720536, 1998 WL 720536 (D.Conn.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via facsimile transmission and by U.S. Mail, first class, postage prepaid, on this date, to:

Richard P. Altschuler, Esq.
Altschuler & Altschuler
509 Campbell Ave.
P.O. Box 606
West Haven, CT 06516

Dated at Bridgeport, Connecticut on this 8th day of December, 2003.

Edward R. Scofield

r